1

2

3

4

5

6

7

8                **UNITED STATES DISTRICT COURT**
         **FOR THE WESTERN DISTRICT OF WASHINGTON**
9                          **AT SEATTLE**

10   WMI LIQUIDATING TRUST,

11                      Plaintiff,

12        v.

13
     FEDERAL DEPOSIT INSURANCE
14   CORPORATION, in its corporate capacity,

15

16   BOARD OF GOVERNORS OF THE
     FEDERAL RESERVE SYSTEM,
17

18   and,

19   SUSAN C. ALLISON, EDWARD F. BACH,          **AMENDED COMPLAINT**
     TODD H. BAKER, MELBA ANN
20   BARTELS, ROBERT N. BATT, DAVID
     BECK, SEAN BECKETTI, HENRY J.
21   BERENS, BRUCE W. BIVERT, ROBERT C.
     BJORKLUND, ROBERT C. BOXBERGER,
22   ANTHONY JOSEPH BOZZUTI, GARY P.
     BRADY, CAREY M. BRENNAN, ALFRED
23   BROOKS, CURT BROUWER, JOHN M.
     BROWNING, GREGORY G. CAMAS,
24   KIMBERLY A. CANNON, GREGORY
     ALAN CARLISLE, THOMAS W. CASEY,
25   GENNADIY DARAKHOVSKIY, DARYL D.
     DAVID, MARY BETH DAVIS, JAKE D.
26   DOMER, DUANE DUCK, ANDREW J.

AMENDED COMPLAINT

ESCHENBACH, CAMILLE EVERETT, WILLIAM FINZER, STEPHEN FORTUNATO, BRIAN T. FOSTER, PETER FREILINGER, KEITH FUKUI, MATTHEW GASPARD, MICHELE S. GRAU-IVERSEN, TAMMY HARRINGTON, ROBERT C. HILL, DEBORA D. HORVATH, JEFFREY JONES, RAJIV KAPOOR, KENNETH E. KIDO, SUZANNE R. LEHRBERGER, RONALD M. LOWERY, MARC MALONE, MICHELLE MCCARTHY, SUSAN MCCARTHY, JOHN P. MCMURRAY, RANDY MELBY, JOE ANTHONY MELO, ROBERT G. MERRITT, RACHELLE M. MILEUR, THOMAS E. MORGAN, JOHN H. MURPHY, CASEY NAULT, MICHAEL RAPAPORT, MICHAEL REYNOLDSON, PATRICIA ROBERTS, LAURA C. ROGERS RODRIGUES, LUIS P. RODRIGUEZ, STEPHEN J. ROTELLA, FOAD SAID, DAVID SCHNEIDER, JANQUELIN F. SCHRAG, PATRICIA SCHULTE, DANIEL SHANKS, CHANDAN SHARMA, SCOTT SHAW, GENEVIEVE SMITH, JACOB E. SORENSON, STEVEN KENNETH STEARNS, STEVEN F. STEIN, MITCHELL STEVENS, RICHARD STRAUCH, JANE SUCHAN, JOSE O. N. TAGUNICAR , CRAIG E. TALL, ANDREW TAUBER, RADHA THOMPSON, ANN TIERNEY, DAVID A. TOMLINSON, BENJAMIN TURK, ANTHONY F. VUOTO, JOHN WEBBER, BRUCE WEBER, JEFFREY P. WEINSTEIN, ROBERT J. WILLIAMS, JR., STEPHEN E. WHITTAKER, JOHN F. WOODS, WEIJIA WU, KATHY H. YEU, MICHAEL R. ZARRO

     Defendants.

     Plaintiff WMI Liquidating Trust ("WMILT"), as successor in interest to

Washington Mutual, Inc. ("WMI"), a multiple savings and loan holding company that owned

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA 98101
Tel. 206-516-3880

Washington Mutual Bank ("WMB"), and WMI Investment Corp. (together with WMI, the "Debtors"), by and through its undersigned counsel, alleges as follows:

## NATURE OF ACTION

1.      WMILT brings this action to obtain a declaratory judgment that, as has already been determined by the Federal Deposit Insurance Corporation (the "FDIC") as to certain payments, various "golden parachute" payments sought by the individual defendants are prohibited by federal regulations, absent regulatory approval.  As directed by the Honorable Mary F. Walrath, United States Bankruptcy Judge, of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), who is presiding over the chapter 11 cases of the parent holding company of the largest bank to fail in United States history, WMILT brings this action against the following Defendants:  (i) ninety-one (91) claimants in the underlying claims litigation, each of whom is a former employee and/or officer of WMI or WMB, as the case may be, seeking payment of the prohibited severance and other employment-related benefits from the bankruptcy estates (the "Individual Defendants"); (ii) the FDIC; and (iii) the Board of Governors of the Federal Reserve System (the "FRB").  The Individual Defendants include some of WMI's most senior executives and members of its Executive Committee.  These same Individual Defendants seek to profit as a result of the bank failure and recover from WMILT pursuant to contracts or plans providing for large – and now prohibited – "golden parachute" payments.  In their proofs of claim filed in the Debtors' bankruptcy cases in the Bankruptcy Court, the Individual Defendants have alleged that the failure of WMB and the related sale of WMB's assets to JPMorgan Chase Bank, N.A. ("JPMC") triggered the extraordinary payouts that they are now claiming at the expense of other creditors in the Debtors' bankruptcy estates.  On August 23, 2013, the Bankruptcy Court directed WMILT to file this "declaratory judgment action (naming the FDIC, FRB, and all claimants [in the underlying litigation in the Bankruptcy Court]) seeking

AMENDED COMPLAINT                        3

a determination [as to] whether WMILT is precluded [by certain federal regulations] from paying any of the claimants if their claims are allowed."  *See* Order, dated Aug. 23, 2013, a copy of which is annexed hereto as **Exhibit A** (the "Bankruptcy Order").

        2.      To prevent, among other things, the distorted incentives and inequities that would result if employees and executives were rewarded when a bank or bank holding company (for which they were responsible) fails, Defendant FDIC has promulgated regulations, pursuant to the Federal Deposit Insurance Act (the "FDIA"), 12 U.S.C. §§ 1811 *et seq.*, that prohibit precisely the types of payments that the Individual Defendants are seeking.  *See* 12 U.S.C. § 1828(k).  One such regulation, 12 C.F.R. § 359, *et seq.* (the "Golden Parachute Regulations"), provides that, absent regulatory approval, insured depository institutions, like WMB, and depository institution holding companies, like WMI, are prohibited from making certain payments to an "institution affiliated party" upon or after the termination of that party's employment or affiliation with the depository institution or holding company, where the requirement to make such payments is triggered by or contingent on the termination and such entity is in financial distress at the time of termination.[1]  In fact, in response to a May 30, 2013 letter from WMILT, the FDIC has expressly advised WMILT that the Individual Defendants' claims arising from certain of the contracts and plans at issue are indeed "golden parachute payments" prohibited by the Golden Parachute Regulations.  *See* Ltr. from the FDIC to Brian S. Rosen, dated July 16,

---

[1] The Golden Parachute Regulations provide that "[n]o insured depository institution or depository institution holding company shall make or agree to make any golden parachute payment" as such term is defined by the Golden Parachute Regulations.  12 C.F.R. § 359.2.  Section 359.1(f) generally defines a golden parachute payment as "any payment (or any agreement to make any payment) in the nature of compensation by any insured depository institution [such as WMB] or an affiliated depository institution holding company [such as WMI] for the benefit of any current or former [institution affiliated party ('IAP')]," such as the Individual Defendants, which obligation is contingent on, or by its terms is payable on or after, the termination of such party's primary employment or affiliation with the institution or holding company, and is received on or after, or is made in contemplation of, among other things, the insolvency of the insured depository institution or depository institution holding company or the appointment of a receiver.  *See* 12 C.F.R. § 359.1(f); *see also* 12 U.S.C. § 1828(k).

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

2013, a copy of which is annexed hereto as **Exhibit B** (the "FDIC Determination"). Accordingly, the FDIC has advised WMILT that WMILT is prohibited by federal law from making any payments pursuant to those contracts and plans without prior regulatory approval by the FDIC and FRB, and that making such payments could be punishable by the imposition of civil monetary penalties. *See id.* at 3.

   3. WMILT also seeks a declaration regarding 12 C.F.R. § 163.39 (formerly 12 C.F.R. § 563.39) (the "Automatic Termination Regulation," and together with the Golden Parachute Regulations, the "Federal Regulations"), which regulation requires that an employment contract between a savings association, such as WMB, and its officers and other employees must provide that, "[i]f the savings association is in default,[2] all obligations under the contract shall terminate as of the date of default." 12 C.F.R. § 163.39(b)(4) (emphasis added). Indeed, if the relevant contract does not contain such an automatic termination clause, one will be deemed incorporated and read into the agreement. *See Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011) (a copy of which is annexed hereto as **Exhibit C**). In fact, in *Williams*, the FDIC obtained a judgment from this Court declaring that certain of the same contracts and plans involving certain of the Individual Defendants here are unenforceable as a result of the Automatic Termination Regulation. *See id.* This decision was affirmed on appeal to the United States Court of Appeals for the Ninth Circuit. *See Williams v. FDIC*, 492 Fed. App'x 796 (9th Cir. 2012). In plain disregard of this Court's prior determination that certain of the contracts and plans are unenforceable under the Automatic Termination Regulation, several of the Individual Defendants who brought suit against the FDIC are now seeking to enforce those same contracts and plans against WMILT.

---

[2] Section 3(x)(1) of the FDIA defines default as "any adjudication or other financial determination by any court of competent jurisdiction, the appropriate Federal banking agency, or other public authority pursuant to which a conservator, receiver, or other legal custodian is appointed for an insured depository institution . . . ." 12 U.S.C. § 1813(x)(1).

AMENDED COMPLAINT     5

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA 98101
Tel. 206-516-3880

4.     As discussed more fully below, over the last four years, the Debtors, and later, WMILT, as successor in interest to the Debtors, have filed objections to proofs of claim asserted by numerous former employees of WMI and WMB, as the case may be, in the Debtors' bankruptcy cases, including the proofs of claims asserted by the Individual Defendants (the "Employee Claims").   The Debtors and WMILT have objected to the Employee Claims on a variety of bases, and, in February 2013, filed a motion seeking permission from the Bankruptcy Court to amend these objections to assert the Federal Regulations as additional defenses to the Employee Claims.   Despite the FDIC's determination that any payments made pursuant to certain agreements discussed herein are prohibited by the Golden Parachute Regulations absent regulatory approval and the FDIC's explicit warning to WMILT that "any current or future settlements of golden parachute payments would result in a violation of Part 359 and potential civil money penalties," the Bankruptcy Court denied WMILT's Motion to Amend (as defined below) its claims objections to assert the Federal Regulations as a defense to the Employee Claims on grounds that, *inter alia*, the "amendment would be futile because any decision on the legal issue would not be binding on the FDIC and FRB because they are not parties to the Omnibus Objections."  *See* Bankruptcy Order at 2.

5.     While the Bankruptcy Court declined to grant WMILT's Motion to Amend, it recognized the merits of the proposed objections by expressly acknowledging that the Bankruptcy Court has no authority to direct payment on account of the Employee Claims without either the prior written approval of the FDIC and FRB or the entry of an order declaring that the Golden Parachute Regulations and the Automatic Termination Regulation do not preclude payment on account of the Employee Claims.  In order to resolve the issue, the Bankruptcy Court simultaneously ordered WMILT to file this declaratory judgment action against the FDIC, FRB and the Individual Defendants.  *See* Bankruptcy Order at 2.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

6. Accordingly, WMILT brings this action to obtain a declaratory judgment from this Court that any payments made pursuant to certain employment contracts and benefits plans entered into between WMI or WMB, as applicable, and its respective former employees are prohibited by the Golden Parachute Regulations and, as a result, WMILT may not make such payments, unless there is prior regulatory approval from the FDIC and FRB. WMILT further seeks a declaratory judgment that certain agreements entered into between the Individual Defendants and WMB were automatically terminated pursuant to the Automatic Termination Regulation upon the seizure of WMB by the Office of Thrift Supervision ("OTS"). In addition, WMILT seeks a declaratory judgment that those Individual Defendants who previously litigated the applicability of the Automatic Termination Regulation with respect to certain contracts and plans are barred by the doctrines of *res judicata* and collateral estoppel from litigating the same issue against WMILT. To avoid further expensive and protracted litigation, and to resolve the impasse faced by the Bankruptcy Court in accord with its express order, WMILT respectfully requests a declaratory judgment be entered as soon as is practicable.

## PARTIES

### I. PLAINTIFF WMILT

7. WMILT is the successor in interest to WMI and WMI Investment Corp., formerly debtors and debtors in possession. WMILT was formed in accordance with Section 27.1 of the Seventh Amended Plan, as defined below, and was established in accordance with Treas. Reg. § 301.7701-4(d) (1996) for the purpose of resolving claims and liquidating and distributing the Debtors' assets. The principal offices of WMILT are located at 1201 Third Ave., Suite 3000, Seattle, Washington 98101.

8. WMI was a multiple savings and loan holding company that owned WMB, a federal savings bank chartered pursuant to the Home Owners' Loan Act, 12 U.S.C. §§ 1461-70. WMI was incorporated in the State of Washington. WMI Investment Corp. was

AMENDED COMPLAINT 7

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA 98101
Tel. 206-516-3880

a non-banking subsidiary of WMI.  At all times, WMI, WMI Investment Corp. and WMB had their principal place of business in Seattle, Washington.

## II.    DEFENDANTS

The following Defendants are all named pursuant to the Bankruptcy Order.

### A.    FDIC & FRB

9.    The FDIC is an agency of the United States with its principal office in Washington D.C. and with a field office in Seattle, Washington.  The FDIC is charged by law with, among other duties, administering the FDIA, as amended, and the federal deposit insurance system.  *See* 12 U.S.C. § 1811(a).  Pursuant to the FDIA, the FDIC promulgated the Federal Regulations.  The FDIC is sued in its corporate capacity.  Under FDIC regulations, 12 C.F.R. § 303.244(a)(1), the FRB must provide approval of "golden parachute payments," as such term is defined in the Golden Parachute Regulations, before such payments can be made.

10.    The FRB is an agency of the United States with its principal office in Washington, D.C. and with a branch in Seattle, Washington.  The FRB is the federal agency responsible for the operation of the Federal Reserve System and the regulation and supervision of certain banking institutions, including depository institution holding companies.  *See* 12 U.S.C. § 243.  The FRB "may act in its own name and through its own attorneys in enforcing any provision of this title, regulations promulgated thereunder, or any other law or regulation, in any action, suit, or proceeding to which the [FRB] is a party and which involves the [FRB's] regulation or supervision of any bank, bank holding company, . . . or the administration of its operations."  12 U.S.C. § 248(p).

### B.    WMI Employees

11.    Defendant Todd H. Baker is a resident of the State of California and was last known to reside at 45 El Camino Real, Berkeley, CA  94705.  Defendant Baker was an employee of WMI and an officer of both WMI and WMB on and for some time before the

AMENDED COMPLAINT                    8

Director of the OTS, by order number 2008-36, appointed the FDIC as receiver for WMB (the "<u>FDIC Receiver</u>"), and advised that the FDIC Receiver was immediately taking possession of WMB's assets (collectively, the "<u>Bank Seizure</u>"). During such period of employment, Defendant Baker's principal place of employment with WMI was Seattle, Washington. Defendant Baker has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure and WMI's bankruptcy petition, Defendant Baker's employment relationship with WMI and affiliation with WMB were terminated.

       12.    Defendant Alfred Brooks is a resident of the State of California and was last known to reside at 19421 Foxdale Circle, Huntington Beach, CA 92648. Defendant Brooks was an employee of WMI and an officer of both WMI and WMB on and for some time before the Bank Seizure. During such period of employment, Defendant Brooks' principal place of employment with WMI was Seattle, Washington. Defendant Brooks has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure and WMI's bankruptcy petition, Defendant Brooks' employment relationship with WMI and affiliation with WMB were terminated.

       13.    Defendant Thomas W. Casey is a resident of the State of Texas and was last known to reside at 512 Terrell Rd., San Antonio, TX 78209. Defendant Casey was an employee of WMI and an officer of both WMI and WMB on and for some time before the Bank Seizure. During such period of employment, Defendant Casey's principal place of employment with WMI was Seattle, Washington. Defendant Casey has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure and WMI's bankruptcy petition, Defendant Casey's employment relationship with WMI and affiliation with WMB were terminated.

AMENDED COMPLAINT          9

14.     Defendant Daryl D. David is a resident of the State of Washington and was last known to reside at 561 Fortune Creek Lane, Cle Elum, WA 98922. Defendant David was an employee of WMI and an officer of both WMI and WMB on and for some time before the Bank Seizure. During such period of employment, Defendant David's principal place of employment with WMI was Seattle, Washington. Defendant David has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure and WMI's bankruptcy petition, Defendant David's employment relationship with WMI and affiliation with WMB were terminated.

15.     Defendant Debora D. Horvath is a resident of the State of Washington and was last known to reside at 18302 Ridgefield Rd. NW, Shoreline, WA 98177-3244. Defendant Horvath was an employee of WMI and an officer of both WMI and WMB on and for some time before the Bank Seizure. During such period of employment, Defendant Horvath's principal place of employment with WMI was Seattle, Washington. Defendant Horvath has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure and WMI's bankruptcy petition, Defendant Horvath's employment relationship with WMI and affiliation with WMB were terminated.

16.     Defendant John P. McMurray is a resident of the State of Washington and was last known to reside at 6929 SE 34th St., Mercer Island, WA 98040. Defendant McMurray was an employee of WMI and an officer of both WMI and WMB on and for some time before the Bank Seizure. During such period of employment, Defendant McMurray's principal place of employment with WMI was Seattle, Washington. Defendant McMurray has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure and WMI's

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA 98101
Tel. 206-516-3880

1   bankruptcy petition, Defendant McMurray's employment relationship with WMI and

2   affiliation with WMB were terminated.

3          17.    Defendant Stephen J. Rotella is a resident of the State of New York

4   and was last known to reside at 101 Central Park W., Apt. 16G, New York, NY  10023.

5   Defendant Rotella was an employee of WMI and an officer of both WMI and WMB on and

6   for some time before the Bank Seizure.  During such period of employment, Defendant

7   Rotella's principal place of employment with WMI was Seattle, Washington.  Defendant

8   Rotella has entered into one or more of the agreements or plans at issue that specify that

9   Washington law shall govern those agreements or plans.  In connection with the Bank

10  Seizure and WMI's bankruptcy petition, Defendant Rotella's employment relationship with

11  WMI and affiliation with WMB were terminated.

12         18.    Defendant David Schneider is a resident of the State of New Jersey

13  and last known to reside at 417 Herrontown Rd., Princeton, NJ  08540.  Defendant

14  Schneider was an employee of WMI and an officer of both WMI and WMB on and for some

15  time before the Bank Seizure.  During such period of employment, Defendant Schneider's

16  principal place of employment with WMI was Seattle, Washington.  Defendant Schneider

17  has entered into one or more of the agreements or plans at issue that specify that Washington

18  law shall govern those agreements or plans.  In connection with the Bank Seizure and WMI's

19  bankruptcy petition, Defendant Schneider's employment relationship with WMI and

20  affiliation with WMB were terminated.

21         19.    Defendant Craig E. Tall is a resident of the State of Washington and

22  was last known to reside at 2005 Fabien Drive, Mercer Island, WA  98040.  Defendant Tall

23  was an employee of WMI and an officer of both WMI and WMB on and for some time

24  before the Bank Seizure.  During such period of employment, Defendant Tall's principal

25  place of employment with WMI was Seattle, Washington.  Defendant Tall has entered into

26  one or more of the agreements or plans at issue that specify that Washington law shall govern

AMENDED COMPLAINT                           11

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

those agreements or plans.  In connection with the Bank Seizure and WMI's bankruptcy petition, Defendant Tall's employment relationship with WMI and affiliation with WMB were terminated.

20.     Defendant Anthony F. Vuoto is a resident of the State of California and was last known to reside at 1597 Via Di Salerno, Pleasanton, CA 94566-2222.  As of, and for some time before, the Bank Seizure, Defendant Vuoto was an officer of both WMI and WMB.  Defendant Vuoto entered into an employment contract with WMI, but, upon information and belief, he was on the payroll of, and his compensation was paid by, WMB, rather than WMI.  Defendant Vuoto has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure and WMI's bankruptcy petition, Defendant Vuoto's employment relationship with WMI and affiliation with WMB were terminated.

21.     Defendant Robert J. Williams, Jr. is a resident of the State of California and was last known to reside at 2601 Cordelia Rd., Los Angeles, CA 90049.  As of, and for some time before, the Bank Seizure, Defendant Williams was an officer of both WMI and WMB.  Defendant Williams entered into an employment contract with WMI, but, upon information and belief, he was on the payroll of, and his compensation was paid by, WMB, rather than WMI.  During such period of employment, Defendant Williams' principal place of employment was Seattle, Washington.  Defendant Williams has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure and WMI's bankruptcy petition, Defendant Williams' employment relationship with WMI and affiliation with WMB were terminated.  Following the Bank Seizure, Defendant Williams was hired by WMI and served as President of WMI through March 19, 2012.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA 98101
Tel. 206-516-3880

## C.    <u>WMB Employees</u>

22.    Defendant Susan C. Allison is a resident of the State of California and was last known to reside at 4627 Longview Drive, Rocklin, CA  95677-4467.  Defendant Allison was an employee of WMB on and for some time before the Bank Seizure.  During such period of employment, Defendant Allison's principal place of employment with WMB was Seattle, Washington.  Defendant Allison has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Allison's employment relationship with WMB was terminated.  Defendant Allison was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

23.    Defendant Edward F. Bach is a resident of the State of Florida and was last known to reside at 1140 W. Kesley Lane, Jacksonville, FL  32259.  Defendant Bach was an employee of WMB on and for some time before the Bank Seizure.  Defendant Bach has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Bach's employment relationship with WMB was terminated.

24.    Defendant Melba Ann Bartels is a resident of the State of New York and was last known to reside at 2 Roxbury Rd., Garden City, NY  11530.  Defendant Bartels was an employee of WMB on and for some time before the Bank Seizure.  During such period of employment, Defendant Bartels' principal place of employment with WMB was Seattle, Washington.  Defendant Bartels has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Bartels' employment relationship with WMB was terminated.

25.    Defendant Robert N. Batt is a resident of the State of Washington and was last known to reside at 4668 175th Ave. SE, Bellevue, WA  98006.  Defendant Batt was

AMENDED COMPLAINT            13

an employee of WMB on and for some time before the Bank Seizure.  During such period of employment, Defendant Batt's principal place of employment with WMB was Seattle, Washington.  Defendant Batt has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Batt's employment relationship with WMB was terminated.  Defendant Batt was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

26.     Defendant David Beck is a resident of the State of Connecticut and was last known to reside at 71 Wahackme Rd., New Canaan, CT  06840.  Defendant Beck was an employee of WMB on and for some time before the Bank Seizure.  Defendant Beck has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Beck's employment relationship with WMB was terminated.

27.     Defendant Sean Becketti is a resident of the District of Columbia and was last known to reside at 3279 Van Hazen St., NW, Washington, DC  20015.  Defendant Becketti was an employee of WMB on and for some time before the Bank Seizure.  During such period of employment, Defendant Becketti's principal place of employment with WMB was Seattle, Washington.  Defendant Becketti has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Becketti's employment relationship with WMB was terminated.  Defendant Becketti was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

28.     Defendant Henry J. Berens is a resident of the State of California and was last known to reside at 3005 Stafford Rd., Westlake Village, CA  91361.  Defendant Berens was an employee of WMB on and for some time before the Bank Seizure.  Defendant Berens has entered into one or more of the agreements or plans at issue that specify that

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Berens' employment relationship with WMB was terminated.

29. Defendant Bruce W. Bivert is a resident of the State of Pennsylvania and was last known to reside at 1 Trimont Lane 460D, Pittsburgh, PA 15211. Defendant Bivert was an employee of WMB on and for some time before the Bank Seizure. Defendant Bivert has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Bivert's employment relationship with WMB was terminated.

30. Defendant Robert C. Bjorklund is a resident of the State of Washington and was last known to reside at 1710 N. Fife St., Tacoma, WA 98406. Defendant Bjorklund was an employee of WMB on and for some time before the Bank Seizure. During such period of employment, Defendant Bjorklund's principal place of employment with WMB was Seattle, Washington. Defendant Bjorklund has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Bjorklund's employment relationship with WMB was terminated. Defendant Bjorklund was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

31. Defendant Robert C. Boxberger is a resident of the State of California and last known to reside at 1520 Via Di Salerno, Pleasanton, CA 94556. Defendant Boxberger was an employee of WMB for some time before the Bank Seizure. Defendant Boxberger's employment relationship with WMB was terminated on January 31, 2008.

32. Defendant Anthony Joseph Bozzuti is a resident of the State of Washington and was last known to reside at 3832 48th Ave. NE, Seattle, WA 98105.

AMENDED COMPLAINT                          15

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA 98101
Tel. 206-516-3880

Defendant Bozzuti was an employee of WMB on and for some time before the Bank Seizure. During such period of employment, Defendant Bozzuti's principal place of employment with WMB was Seattle, Washington. Defendant Bozzuti has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Bozzuti's employment relationship with WMB was terminated.

33. Defendant Gary P. Brady is a resident of the State of Washington and was last known to reside at 8410 NE 27th Place, Clyde Hill, WA 98004. Defendant Brady was an employee of WMB on and for some time before the Bank Seizure. During such period of employment, Defendant Brady's principal place of employment with WMB was Seattle, Washington. Defendant Brady has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Brady's employment relationship with WMB was terminated. Since the Bank Seizure, Defendant Brady has been employed by JPMC.

34. Defendant Carey M. Brennan is a resident of the State of Washington and was last known to reside at 10205 NE 60th St., Kirkland, WA 98033. Defendant Brennan was an employee of WMB on and for some time before the Bank Seizure. During such period of employment, Defendant Brennan's principal place of employment with WMB was Seattle, Washington. Defendant Brennan has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Brennan's employment relationship with WMB was terminated.

35. Defendant Curt Brouwer is a resident of the State of Washington and was last known to reside at 23933 W. Woodway Lane, Woodway, WA 98020. Defendant Brouwer was an employee of WMB on and for some time before the Bank Seizure. During

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA 98101
Tel. 206-516-3880

such period of employment, Defendant Brouwer's principal place of employment with WMB was Seattle, Washington. Defendant Brouwer has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Brouwer's employment relationship with WMB was terminated.

36. Defendant John M. Browning is a resident of the State of Washington and was last known to reside at 8145 Eleanor Place, Bainbridge Island, WA 98110. Defendant Browning was an employee of WMB on and for some time before the Bank Seizure. During such period of employment, Defendant Browning's principal place of employment with WMB was Seattle, Washington. Defendant Browning has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Browning's employment relationship with WMB was terminated.

37. Defendant Gregory G. Camas is a resident of the State of New Jersey and was last known to reside at 205 Hudson St., No. 1410, Hoboken, NJ 07030. Defendant Camas was an employee of WMB on and for some time before the Bank Seizure. Defendant Camas has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Camas' employment relationship with WMB was terminated. Upon information and belief, since the Bank Seizure, Defendant Brady has been and is currently employed by JPMC.

38. Defendant Kimberly A. Cannon is a resident of the State of Washington and was last known to reside at 3907 El Cimo Lane NE, Bainbridge Island, WA 98110. Defendant Cannon was an employee of WMB on and for some time before the Bank Seizure. During such period of employment, Defendant Cannon's principal place of employment with WMB was Seattle, Washington. Defendant Cannon has entered into one

AMENDED COMPLAINT                    17

or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Cannon's employment relationship with WMB was terminated.

39.     Defendant Gregory Alan Carlisle is a resident of the State of Pennsylvania and was last known to reside at 8816 Ridge Ave. No. 4, Philadelphia, PA 19103.  Defendant Carlisle was an employee of WMB on and for some time before the Bank Seizure.  During such period of employment, Defendant Carlisle entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.   In connection with the Bank Seizure on September 25, 2008, Defendant Carlisle's employment relationship with WMB was terminated.

40.     Defendant Gennadiy Darakhovskiy is a resident of the State of Washington and was last known to reside at 24463 SE 46th Place, Issaquah, WA  98029.  Defendant Darakhovskiy was an employee of WMB for some time before the Bank Seizure.  During such period of employment, Defendant Darakhovskiy's principal place of employment with WMB was Seattle, Washington.  Defendant Darakhovskiy's employment relationship with WMB was terminated on August 15, 2008.

41.     Defendant Mary Beth Davis is a resident of the State of California and was last known to reside at 349 Merrilee Place, Danville, CA  94526.  Defendant Davis was an employee of WMB on and for some time before the Bank Seizure.  Defendant Davis has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Davis' employment relationship with WMB was terminated.  Defendant Davis was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

42.     Defendant Jake D. Domer is a resident of the State of Washington and was last known to reside at 622 9th Ave. South, Kirkland, WA  98033.  Defendant Domer was an employee of WMB on and for some time before the Bank Seizure.  During such

AMENDED COMPLAINT                         18

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

period of employment, Defendant Domer's principal place of employment with WMB was Seattle, Washington. Defendant Domer has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Domer's employment relationship with WMB was terminated. Defendant Domer was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

43.   Defendant Duane Duck is a resident of the State of California and was last known to reside at 60 Rose Ave., Mill Valley, CA 94941. Defendant Duck was an employee of WMB on and for some time before the Bank Seizure. During such period of employment, Defendant Duck's principal place of employment with WMB was Seattle, Washington. Defendant Duck has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Duck's employment relationship with WMB was terminated.

44.   Defendant Andrew J. Eschenbach is a resident of the State of Wisconsin and was last known to reside at 1402 E. 10th St., Merrill, WI 54452. Defendant Eschenbach was an employee of WMB on and for some time before the Bank Seizure. During such period of employment, Defendant Eschenbach's principal place of employment with WMB was Seattle, Washington. Defendant Eschenbach has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Eschenbach's employment relationship with WMB was terminated.

45.   Defendant Camille Everett is a resident of the State of California and was last known to reside at 12306 Clover Ave., Los Angeles, CA 90066. Defendant Everett was an employee of WMB on and for some time before the Bank Seizure. Defendant Everett has entered into one or more of the agreements or plans at issue that specify that Washington

AMENDED COMPLAINT                    19

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA 98101
Tel. 206-516-3880

law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Everett's employment relationship with WMB was terminated.  Defendant Everett was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

46.  Defendant William Finzer is a resident of the State of Washington and was last known to reside at 9220 SE 59th St., Seattle, WA  98040.  Defendant Finzer was an employee of WMB on and for some time before the Bank Seizure.  During such period of employment, Defendant Finzer's principal place of employment with WMB was Seattle, Washington.  Defendant Finzer has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Finzer's employment relationship with WMB was terminated.

47.  Defendant Stephen Fortunato is a resident of the State of New Jersey and was last known to reside at 31 Governors Lane, Princeton, NJ  08540.  Defendant Fortunato was an employee of WMB on and for some time before the Bank Seizure.  Defendant Fortunato has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Fortunato's employment relationship with WMB was terminated.

48.  Defendant Brian T. Foster is a resident of the State of Washington and was last known to reside at 563 Park Ave. NE, Bainbridge Island, WA  98110.  Defendant Foster was an employee of WMB on and for some time before the Bank Seizure.  During such period of employment, Defendant Foster's principal place of employment with WMB was Seattle, Washington.  Defendant Foster has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Foster's employment

AMENDED COMPLAINT                    20

relationship with WMB was terminated. Defendant Foster was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

49. Defendant Peter Freilinger is a resident of the United Kingdom and was last known to reside at 9 Circus St., Greenwich, UK  SE10 8SG. Defendant Freilinger was an employee of WMB on and for some time before the Bank Seizure. During such period of employment, Defendant Freilinger's principal place of employment with WMB was Seattle, Washington. Defendant Freilinger has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Freilinger's employment relationship with WMB was terminated. Defendant Freilinger was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

50. Defendant Keith Fukui is a resident of the State of California and was last known to reside at 2317 Winged Foot Rd., Half Moon Bay, CA  94019. Defendant Fukui was an employee of WMB on and for some time before the Bank Seizure. Defendant Fukui has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Fukui's employment relationship with WMB was terminated. Defendant Fukui was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

51. Defendant Matthew Gaspard is a resident of the State of Washington and was last known to reside at 13719 Agate Beach Rd., Anderson Island, WA  98303. Defendant Gaspard was an employee of WMB on and for some time before the Bank Seizure. During such period of employment, Defendant Gaspard's principal place of employment with WMB was Seattle, Washington. Defendant Gaspard has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern

AMENDED COMPLAINT                    21

those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Gaspard's employment relationship with WMB was terminated.

52. Defendant Michele S. Grau-Iversen is a resident of the State of Nevada and was last known to reside at 796 Tyner Way, Incline Village, NV  89451.  Defendant Grau-Iversen was an employee of WMB on and for some time before the Bank Seizure. Defendant Grau-Iversen has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Grau-Iversen's employment relationship with WMB was terminated.  Defendant Grau-Iversen was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

53. Defendant Tammy Harrington is a resident of the State of Georgia and was last known to reside at 405 Squire Drive, Ellenwood, GA  30294.  Defendant Harrington was an employee of WMB on and for some time before the Bank Seizure.  Defendant Harrington has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Harrington's employment relationship with WMB was terminated.

54. Defendant Robert C. Hill is a resident of the State of Texas and was last known to reside at 7602 Lincoln Court, Colleyville, TX  76034.  Defendant Hill was an employee of WMB on and for some time before the Bank Seizure.  Defendant Hill has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Hill's employment relationship with WMB was terminated.  Defendant Hill was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

55. Defendant Jeffrey Jones is a resident of the State of California and was last known to reside at 5798 Snake Rd., Oakland, CA  94611.  Defendant Jones was an

AMENDED COMPLAINT                    22

employee of WMB on and for some time before the Bank Seizure. Defendant Jones has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Jones' employment relationship with WMB was terminated.

56. Defendant Rajiv Kapoor is a resident of the State of California and was last known to reside at 1424 Allanmere Drive, San Ramon, CA 94582. Defendant Kapoor was an employee of WMB on and for some time before the Bank Seizure. Defendant Kapoor has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Kapoor's employment relationship with WMB was terminated. Defendant Kapoor was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

57. Defendant Kenneth E. Kido is a resident of the State of Maryland and was last known to reside at 5208 Carlton St., Bethesda, MD 20816. Defendant Kido was an employee of WMB on and for some time before the Bank Seizure. During such period of employment, Defendant Kido's principal place of employment with WMB was Seattle, Washington. Defendant Kido has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Kido's employment relationship with WMB was terminated. Defendant Kido was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

58. Defendant Suzanne R. Lehrberger is a resident of the State of Texas and was last known to reside at 303 Robin Hood Court, Irving, TX 75061. Defendant Lehrberger was an employee of WMB on and for some time before the Bank Seizure. Defendant Lehrberger has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the

AMENDED COMPLAINT                            23

Bank Seizure on September 25, 2008, Defendant Lehrberger's employment relationship with WMB was terminated.

59.     Defendant Ronald M. Lowery is a resident of the State of Texas and was last known to reside at 28007 Carmel Valley, Boerne, TX 78015. Defendant Lowery was an employee of WMB on and for some time before the Bank Seizure. During such period of employment, Defendant Lowery's principal place of employment with WMB was Seattle, Washington. Defendant Lowery has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Lowery's employment relationship with WMB was terminated. Defendant Lowery was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

60.     Defendant Marc Malone is a resident of the State of Washington and was last known to reside at 7510 34th Ave. NE, Seattle, WA 98115. Defendant Malone was an employee of WMB on and for some time before the Bank Seizure. During such period of employment, Defendant Malone's principal place of employment with WMB was Seattle, Washington. Defendant Malone has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Malone's employment relationship with WMB was terminated.

61.     Defendant Michelle McCarthy is a resident of the State of Illinois and was last known to reside at 2550 N. Lakeview Ave., Apt. N406, Chicago, IL 60614. Defendant Michelle McCarthy was an employee of WMB on and for some time before the Bank Seizure. During such period of employment, Defendant Michelle McCarthy's principal place of employment with WMB was Seattle, Washington. Defendant Michelle McCarthy has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on

AMENDED COMPLAINT                    24

September 25, 2008, Defendant Michelle McCarthy's employment relationship with WMB was terminated. Defendant Michelle McCarthy was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

62. Defendant Susan McCarthy is a resident of the State of South Carolina and was last known to reside at 102 Iroquois St., Darlington, SC 29532. Defendant Susan McCarthy was an employee of WMB on and for some time before the Bank Seizure. During such period of employment, Defendant Susan McCarthy's principal place of employment with WMB was Seattle, Washington. Defendant Susan McCarthy has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Susan McCarthy's employment relationship with WMB was terminated.

63. Defendant Randy Melby is a resident of the State of Washington and was last known to reside at 5802 W. Mercer Way, Mercer Island, WA 98040. Defendant Melby was an employee of WMB on and for some time before the Bank Seizure. During such period of employment, Defendant Melby's principal place of employment with WMB was Seattle, Washington. Defendant Melby has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Melby's employment relationship with WMB was terminated. Defendant Melby was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

64. Defendant Joe Anthony Melo is a resident of the State of California and was last known to reside at 818 Devoto St., Mountain View, CA 94041. Defendant Melo was an employee of WMB on and for some time before the Bank Seizure. In connection with the Bank Seizure on September 25, 2008, Defendant Melo's employment relationship with WMB was terminated.

AMENDED COMPLAINT                    25

65. Defendant Robert G. Merritt is a resident of the State of California and was last known to reside at 1040 Galvin St., Oakland, CA 94602. Defendant Merritt was an employee of WMB for some time before the Bank Seizure. Defendant Merritt's employment relationship with WMB was terminated on October 3, 2005.

66. Defendant Rachelle M. Mileur is a resident of the State of Washington and was last known to reside at 624 14th Ave. East, Seattle, WA 98112. Defendant Mileur was an employee of WMB on and for some time before the Bank Seizure. During such period of employment, Defendant Mileur's principal place of employment with WMB was Seattle, Washington. Defendant Mileur has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Mileur's employment relationship with WMB was terminated.

67. Defendant Thomas E. Morgan is a resident of the State of California and was last known to reside at 20340 Big Rock Drive, Malibu, CA 90265. Defendant Morgan was an employee of WMB on and for some time before the Bank Seizure. During such period of employment, Defendant Morgan's principal place of employment with WMB was Seattle, Washington. Defendant Morgan has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Morgan's employment relationship with WMB was terminated.

68. Defendant John H. Murphy is a resident of the State of Texas and was last known to reside at 10043 Bordley, Houston, TX 77042. Defendant Murphy was an employee of WMB on and for some time before the Bank Seizure. Defendant Murphy has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Murphy's employment relationship with WMB was terminated.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA 98101
Tel. 206-516-3880

Defendant Murphy was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

69.     Defendant Casey Nault is a resident of the State of Illinois and was last known to reside at 619 S. Sunnyside Ave., Elmhurst, IL 60126. Defendant Nault was an employee of WMB on and for some time before the Bank Seizure. During such period of employment, Defendant Nault's principal place of employment with WMB was Seattle, Washington. Defendant Nault has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Nault's employment relationship with WMB was terminated.

70.     Defendant Michael Rapaport is a resident of the State of California and was last known to reside at 744 Duncan St., San Francisco, CA 94131. Defendant Rapaport was an employee of WMB for some time before the Bank Seizure. Defendant Rapaport's employment relationship with WMB was terminated on June 2, 2008.

71.     Defendant Michael Reynoldson is a resident of the State of Washington and was last known to reside at 4421 51st Ave. NE, Seattle, WA 98105. Defendant Reynoldson was an employee of WMB on and for some time before the Bank Seizure. During such period of employment, Defendant Reynoldson's principal place of employment with WMB was Seattle, Washington. Defendant Reynoldson has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Reynoldson's employment relationship with WMB was terminated.

72.     Defendant Patricia Roberts is a resident of the State of Texas and was last known to reside at 8 Staff Post Rd., Fort Sam Houston, TX 78234. Defendant Roberts was an employee of WMB on and for some time before the Bank Seizure. Defendant Roberts has entered into one or more of the agreements or plans at issue that specify that

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA 98101
Tel. 206-516-3880

Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Roberts' employment relationship with WMB was terminated.

73.     Defendant Laura C. Rogers Rodrigues is a resident of the State of California and was last known to reside at 210 Summerford Circle, San Ramon, CA  94583-4400.  Defendant Rodrigues was an employee of WMB on and for some time before the Bank Seizure.  Defendant Rodrigues has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Rodrigues' employment relationship with WMB was terminated.

74.     Upon information and belief, Defendant Luis P. Rodriguez is a resident of the State of California and resides at 315 Wilde Ave., San Francisco, CA  94134-2251.  Defendant Rodriguez was an employee of WMB on and for some time before the Bank Seizure.  Defendant Rodriguez has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Rodriguez's employment relationship with WMB was terminated.

75.     Defendant Foad Said is a resident of the State of New Jersey and was last known to reside at 6 Prospect Ave., Cliffside Park, NJ  07010.  Defendant Said was an employee of WMB on and for some time before the Bank Seizure.  Defendant Said has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Said's employment relationship with WMB was terminated.

76.     Defendant Janquelin F. Schrag is a resident of the State of Washington and was last known to reside at 23400 39th Ave. W., Brier, WA  98036.  Defendant Schrag was an employee of WMB on and for some time before the Bank Seizure.  During such

AMENDED COMPLAINT                    28

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

period of employment, Defendant Schrag's principal place of employment with WMB was Seattle, Washington.  Defendant Schrag has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Schrag's employment relationship with WMB was terminated.  Defendant Schrag was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

77.    Defendant Patricia Schulte is a resident of the State of California and was last known to reside at 5501 Golden Gate Ave., Oakland, CA  94618.  Defendant Schulte was an employee of WMB on and for some time before the Bank Seizure.  During such period of employment, Defendant Schulte's principal place of employment with WMB was Seattle, Washington.  Defendant Schulte has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Schulte's employment relationship with WMB was terminated.

78.    Defendant Daniel Shanks is a resident of the State of California and was last known to reside at 123 Mission St., San Francisco, CA  94105.  Defendant Shanks was an employee of WMB for some time before the Bank Seizure.  Defendant Shanks' employment relationship with WMB was terminated on October 1, 2005.

79.    Defendant Chandan Sharma is a resident of the State of Washington and was last known to reside at 5876 NW Lac Leman Drive, Issaquah, WA  98027.  Defendant Sharma was an employee of WMB on and for some time before the Bank Seizure.  During such period of employment, Defendant Sharma's principal place of employment with WMB was Seattle, Washington.  Defendant Sharma has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Sharma's employment relationship with WMB was terminated.

AMENDED COMPLAINT                    29

80.     Defendant Scott Shaw is a resident of the State of Washington and was last known to reside at 29826 NE 178th Place, Duvall, WA 98019.  Defendant Shaw was an employee of WMB on and for some time before the Bank Seizure.  During such period of employment, Defendant Shaw's principal place of employment with WMB was Seattle, Washington.  Defendant Shaw has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Shaw's employment relationship with WMB was terminated.  Defendant Shaw was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

81.     Defendant Genevieve Smith is a resident of the State of California and was last known to reside at 4465 Ten Mile House TRL, Chico, CA  95928.  Defendant Smith was an employee of WMB on and for some time before the Bank Seizure.  During such period of employment, Defendant Smith's principal place of employment with WMB was Seattle, Washington.  Defendant Smith has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Smith's employment relationship with WMB was terminated.

82.     Defendant Jacob E. Sorenson is a resident of the State of California and was last known to reside at 1281 Vallejo St., No. 4, San Francisco, CA  94109.  Defendant Sorenson was an employee of WMB on and for some time before the Bank Seizure.  Defendant Sorenson has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Sorenson's employment relationship with WMB was terminated.  Defendant Sorensen was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

83.     Defendant Steven Kenneth Stearns is a resident of the United Kingdom and was last known to reside at 106 110 Hallam St., London, UK W1W SHG. Defendant Stearns was an employee of WMB on and for some time before the Bank Seizure. During such period of employment, Defendant Stearns' principal place of employment with WMB was Seattle, Washington.  Defendant Stearns has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Stearns' employment relationship with WMB was terminated.

84.     Defendant Steven F. Stein is a resident of the State of California and was last known to reside at 14121 Recuerdo Drive, Del Mar, CA  92014.  Defendant Stein was an employee of WMB on and for some time before the Bank Seizure.  During such period of employment, Defendant Stein's principal place of employment with WMB was Seattle, Washington.  Defendant Stein has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Stein's employment relationship with WMB was terminated.

85.     Defendant Mitchell Stevens is a resident of the State of Virginia and was last known to reside at 4611 37th St. N., Arlington, VA  22207.  Defendant Stevens was an employee of WMB on and for some time before the Bank Seizure.  Defendant Stevens has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Stevens's employment relationship with WMB was terminated. Defendant Stevens was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

86.     Defendant Richard Strauch is a resident of the State of California and was last known to reside at 1446 Nighthawk Place, Santa Rosa, CA  95409.  Defendant

AMENDED COMPLAINT                                 31

Strauch was an employee of WMB on and for some time before the Bank Seizure. Defendant Strauch has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Strauch's employment relationship with WMB was terminated.

87.     Defendant Jane Suchan is a resident of the State of Washington and was last known to reside at 6012 34th Ave. NE, Seattle, WA 98115. Defendant Suchan was an employee of WMB on and for some time before the Bank Seizure. During such period of employment, Defendant Suchan's principal place of employment with WMB was Seattle, Washington. Defendant Suchan has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Suchan's employment relationship with WMB was terminated. Defendant Suchan was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

88.     Defendant Jose O. N. Tagunicar is a resident of the State of California and was last known to reside at 123 Mission St., San Francisco, CA 94105. Defendant Tagunicar was an employee of WMB for some time before the Bank Seizure. Defendant Tagunicar's employment relationship with WMB was terminated on May 15, 2006.

89.     Defendant Andrew Tauber is a resident of the State of Pennsylvania and was last known to reside at 600 Winfield Way, Chester Springs, PA 19425. Defendant Tauber was an employee of WMB on and for some time before the Bank Seizure. Defendant Tauber has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Tauber's employment relationship with WMB was terminated. Defendant Tauber was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

AMENDED COMPLAINT     32

90.     Defendant Radha Thompson is a resident of the State of Texas and was last known to reside at 4848 Lemmon Ave., Suite 100, Highland Park, TX  75219. Defendant Thompson was an employee of WMB on and for some time before the Bank Seizure.  During such period of employment, Defendant Thompson's principal place of employment with WMB was Seattle, Washington.  Defendant Thompson has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Thompson's employment relationship with WMB was terminated.  Defendant Thompson was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

91.     Defendant Ann Tierney is a resident of the State of Washington and was last known to reside at 1814 27th Ave. W, Seattle, WA  98199.  Defendant Tierney was an employee of WMB on and for some time before the Bank Seizure.  During such period of employment, Defendant Tierney's principal place of employment with WMB was Seattle, Washington.  Defendant Tierney has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Tierney's employment relationship with WMB was terminated.  Defendant Tierney was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

92.     Defendant David A. Tomlinson is a resident of the State of California and was last known to reside at 65 Alpine Terrace, San Francisco, CA  94117.  Defendant Tomlinson was an employee of WMB on and for some time before the Bank Seizure. Defendant Tomlinson has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Tomlinson's employment relationship with WMB was terminated.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

93.     Defendant Benjamin Turk is a resident of the State of Texas and was last known to reside at 29 Wimberley Court, Dallas, TX 75229. Defendant Turk was an employee of WMB on and for some time before the Bank Seizure. Defendant Turk has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Turk's employment relationship with WMB was terminated.

94.     Defendant John Webber is a resident of the State of Pennsylvania and was last known to reside at 603 W. Rosedale Ave., West Chester, PA 19382. Defendant Webber was an employee of WMB for some time before the Bank Seizure. Defendant Webber's employment relationship with WMB was terminated on June 30, 2006.

95.     Defendant Bruce Weber is a resident of the State of Washington and was last known to reside at 23245 Stottlemeyer Rd. NE, Poulsbo, WA 98370. Defendant Weber was an employee of WMB on and for some time before the Bank Seizure. During such period of employment, Defendant Weber's principal place of employment with WMB was Seattle, Washington. Defendant Weber has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Weber's employment relationship with WMB was terminated. Defendant Weber was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

96.     Defendant Jeffrey P. Weinstein is a resident of the State of New York and was last known to reside at 180 West 20th St., Apt. 14E, New York, NY 10011. Defendant Weinstein was an employee of WMB on and for some time before the Bank Seizure. In connection with the Bank Seizure on September 25, 2008, Defendant Weinstein's employment relationship with WMB was terminated. Defendant Weinstein was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA 98101
Tel. 206-516-3880

97.     Defendant Stephen E. Whittaker is a resident of the State of California and was last known to reside at 115 Crane Terrace, Orinda, CA  94563.  Defendant Whittaker was an employee of WMB on and for some time before the Bank Seizure.  Defendant Whittaker has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Whittaker's employment relationship with WMB was terminated.  Defendant Whittaker was a plaintiff in *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

98.     Defendant John F. Woods is a resident of the State of California and was last known to reside at 655 Sausalito Boulevard, Sausalito, CA  94965.  Defendant Woods was an employee of WMB on and for some time before the Bank Seizure.  During such period of employment, Defendant Woods' principal place of employment with WMB was Seattle, Washington.  Defendant Woods has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Woods' employment relationship with WMB was terminated.

99.     Defendant Weijia Wu is a resident of the State of Washington and was last known to reside at 8927 192nd St. SW, Edmonds, WA  98026.  Defendant Wu was an employee of WMB on and for some time before the Bank Seizure.  During such period of employment, Defendant Wu's principal place of employment with WMB was Seattle, Washington.  Defendant Wu has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans.  In connection with the Bank Seizure on September 25, 2008, Defendant Wu's employment relationship with WMB was terminated.  Subsequent to Defendant Wu's termination from WMB, Defendant Wu was hired by WMI and subsequently by WMI Holdings Corporation.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

100.    Defendant Kathy H. Yeu is a resident of the State of New York and was last known to reside at 115 E. 90th St., Apt. 7A, New York, NY 10128. Defendant Yeu was an employee of WMB for some time before the Bank Seizure. Defendant Yeu's employment relationship with WMB was terminated on January 31, 2008.

101.    Defendant Michael R. Zarro is a resident of the State of Virginia and was last known to reside at 2216 Logan St., Richmond, VA 23235. Defendant Zarro was an employee of WMB on and for some time before the Bank Seizure. During such period of employment, Defendant Zarro's principal place of employment with WMB was Seattle, Washington. Defendant Zarro has entered into one or more of the agreements or plans at issue that specify that Washington law shall govern those agreements or plans. In connection with the Bank Seizure on September 25, 2008, Defendant Zarro's employment relationship with WMB was terminated.

## JURISDICTION AND VENUE

102.    This action arises under the laws of the United States, including the FDIA and the Federal Regulations. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because there are federal questions regarding interpretation of the FDIA and the Federal Regulations. This Court also has subject matter jurisdiction pursuant to 12 U.S.C. § 1819(b)(2)(A), which provides that "all suits of a civil nature at common law or in equity to which the [Federal Deposit Insurance] Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States." Under sections 702 and 703 of the Administrative Procedure Act, the sovereign immunity of the FDIC and FRB is waived in "[a]n action in a court of the United States seeking relief other than money damages," such as an action for declaratory judgment. 5 U.S.C. §§ 702-03. In addition, the FDIC has explicitly waived sovereign immunity. *See* 12 U.S.C. § 1819 ("[T]he Corporation shall become a body corporate and as such shall have power . . . [t]o sue and be

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA 98101
Tel. 206-516-3880

1  sued, and complain and defend, by and through its own attorneys, in any court of law or

2  equity, State or Federal.").

3         103.    Venue is proper in the Western District of Washington under 28

4  U.S.C. § 1391(e), which provides that a "civil action in which a defendant is an officer or

5  employee of the United States or any agency thereof acting in his official capacity or under

6  color of legal authority, or an agency of the United States, or the United States, may, except

7  as otherwise provided by law, be brought in any judicial district in which (A) a defendant in

8  the action resides, (B) a substantial part of the events or omissions giving rise to the claim

9  occurred, or (C) the plaintiff resides if no real property is involved in the action."  This Court

10 has personal jurisdiction over Defendants FDIC and FRB under 28 U.S.C. § 1391(e) and

11 because each has offices in Seattle, Washington.

12         104.    This Court has personal jurisdiction over Individual Defendants Robert

13 Batt, Robert C. Bjorklund, Anthony Joseph Bozzuti, Gary P. Brady, Carey M. Brennan, Curt

14 Brouwer, John M. Browning, Kimberly A. Cannon, Gennadiy Darakhovskiy, Jake D. Domer,

15 William Finzer, Brian T. Foster, Matthew Gaspard, Debora D. Horvath, Marc Malone, John

16 P. McMurray, Randy Melby, Rachelle M. Mileur, Michael Reynoldson, Janquelin F. Schrag,

17 Chandan Sharma, Scott Shaw, Jane Suchan, Craig E. Tall, Ann Tierney, Bruce Weber, and

18 Weijia Wu because they each reside in the Western District of Washington.  *See* Wash. Rev.

19 Code § 1.48.185 (2003).

20         105.    This Court has personal jurisdiction over Individual Defendants Susan

21 Allison, Robert N. Batt, Sean Becketti, Robert C. Bjorklund, Mary Beth Davis, Jake Domer,

22 Camille Everett, Brian T. Foster, Peter Freilinger, Keith O. Fukui, Michelle S. Grau-Iversen,

23 Robert C. Hill, Rajiv Kapoor, Kenneth E. Kido, Ronald M. Lowery, Randy Melby, Michelle

24 McCarthy, John H. Murphy, Janquelin F. Schrag, Scott Shaw, Jacob E. Sorensen, Mitchell

25 Stevens, Jane Suchan, Andrew Tauber, Radha Thompson, Ann Tierney, Bruce Weber,

26 Jeffrey P. Weinstein, and Stephen E. Whittaker because they each have purposefully availed

AMENDED COMPLAINT                           37

themselves of the privileges of conducting activities in the Western District of Washington by previously filing a related suit therein. *See* Wash. Rev. Code § 1.48.185 (2003); *Williams v. FDIC*, 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011).

106. This Court has personal jurisdiction over Individual Defendants Susan C. Allison, Todd H. Baker, Melba Ann Bartels, Robert Batt, Sean Becketti, Robert C. Bjorklund, Anthony Joseph Bozzuti, Gary P. Brady, Carey M. Brennan, Alfred Brooks, Curt Brouwer, John M. Browning, Kimberly A. Cannon, Thomas W. Casey, Gennadiy Darakhovskiy, Daryl D. David, Jake D. Domer, Duane Duck, Andrew J. Eschenbach, William Finzer, Brian T. Foster, Peter Freilinger, Matthew Gaspard, Debora D. Horvath, Kenneth Kido, Ronald M. Lowery, Marc Malone, Michelle McCarthy, Susan McCarthy, John P. McMurray, Randy Melby, Rachelle M. Mileur, Thomas E. Morgan, Casey M. Nault, Michael Reynoldson, Stephen J. Rotella, David Schneider, Janquelin F. Schrag, Patricia Schulte, Chandan Sharma, Scott Shaw, Genevieve Smith, Steven Kenneth Stearns, Steven F. Stein, Jane Suchan, Craig E. Tall, Radha Thompson, Ann Tierney, Bruce Weber, Robert J. Williams, Jr., John F. Woods, Weijia Wu, and Michael R. Zarro because they each lived and/or worked in Washington State when the events described herein took place and/or when the payments at issue allegedly accrued.

107. This Court has personal jurisdiction over Individual Defendants Susan C. Allison, Edward F. Bach, Todd H. Baker, Melba Ann Bartels, Robert N. Batt, David Beck, Sean Becketti, Henry J. Berens, Bruce W. Bivert, Robert C. Bjorklund, Anthony Joseph Bozzuti, Gary P. Brady, Carey M. Brennan, Alfred Brooks, Curt Brouwer, John M. Browning, Gregory G. Camas, Kimberly A. Cannon, Gregory Alan Carlisle, Thomas W. Casey, Daryl D. David, Mary Beth Davis, Jake D. Domer, Duane Duck, Andrew J. Eschenbach, Camille Everett, William Finzer, Stephen Fortunato, Brian T. Foster, Peter Freilinger, Keith Fukui, Matthew Gaspard, Michele S. Grau-Iversen, Tammy Harrington, Robert C. Hill, Debora D. Horvath, Jeffrey Jones, Rajiv Kapoor, Kenneth E. Kido, Suzanne

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA 98101
Tel. 206-516-3880

R. Lehrberger, Ronald M. Lowery, Marc Malone, Michelle McCarthy, Susan McCarthy, John P. McMurray, Randy Melby, Joe Anthony Melo, Rachelle M. Mileur, Thomas E. Morgan, John H. Murphy, Casey Nault, Michael Reynoldson, Patricia Roberts, Laura C. Rogers Rodrigues, Luis P. Rodriguez, Stephen J. Rotella, Foad Said, David Schneider, Janquelin F. Schrag, Patricia Schulte, Chandan Sharma, Scott Shaw, Genevieve Smith, Jacob E. Sorenson, Steven Kenneth Stearns, Steven F. Stein, Mitchell Stevens, Richard Strauch, Jane Suchan, Craig E. Tall, Andrew Tauber, Radha Thompson, Ann Tierney, David A. Tomlinson, Benjamin Turk, Anthony F. Vuoto, Bruce Weber, Stephen E. Whittaker, Robert J. Williams, Jr., John F. Woods, Weijia Wu, and Michael R. Zarro for the additional reason that each of them has purposefully availed themselves of the laws of the State of Washington by entering into one or more of the agreements or plans at issue in this case that provide that the laws of the State of Washington shall govern all issues arising therefrom.

108.    This Court has personal jurisdiction over all ninety-one (91) Individual Defendants because they each purposefully interjected themselves into Washington affairs by having chosen to maintain an employer-employee relationship with a Washington based corporation such as WMI and/or WMB, as applicable, at the time of the events underlying the claims at issue.

109.    Each of the Individual Defendants is named as a defendant in this action pursuant to the Bankruptcy Order.  *See* Bankruptcy Order at 2 (directing WMILT to file a declaratory judgment action "naming the FDIC, the FRB, and all claimants").  In addition to the bases for personal jurisdiction detailed at paragraphs 104-108 herein, this Court also has personal jurisdiction over each Individual Defendant pursuant to and to the extent necessary to effectuate the Bankruptcy Order.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

**BACKGROUND**

## I.   THE DOWNGRADE, SEIZURE, AND THE DEBTORS' BANKRUPTCY FILINGS

110.   On September 7, 2008, each of WMI and WMB entered into a Memorandum of Understanding (each an "MOU") with the OTS to address certain supervisory issues identified by the OTS during its examination of WMI and WMB (as the case may be), which examination was completed on June 30, 2008.   WMB's MOU addressed, among other things, WMB's compliance with minimum regulatory capital requirements and the need to review and significantly improve its overall risk management structures and controls.

111.   On or around September 18, 2008, the FDIC assigned WMB a composite regulatory CAMELS Rating of 4.[3]

112.   Shortly thereafter, on September 25, 2008, in what is the largest bank failure in United States history, the Director of the OTS, by order number 2008-36, appointed the FDIC Receiver, and advised that the FDIC Receiver was immediately taking possession of WMB's assets.

113.   Immediately after its appointment as receiver, the FDIC Receiver sold substantially all of the assets of WMB (the "JPMC Transaction") to JPMC pursuant to that certain Purchase and Assumption Agreement, Whole Bank, dated as of September 25, 2008 (the "Purchase and Assumption Agreement").

114.   The following day, on September 26, 2008, each of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code, as

---

[3] The CAMELS Rating System is a bank rating system where bank supervisory authorities rate institutions according to the following six factors: capital adequacy; asset quality; management quality; earnings; liquidity; and sensitivity to market risk.  A rank of 1 is best and 5 is worst.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

amended, in the Bankruptcy Court.  As of that date, and until March 16, 2012, WMI owned all of the outstanding equity of WMB.

115.    On December 12, 2011, the Debtors filed their *Seventh Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code* (as modified, the "Seventh Amended Plan").  By order, dated February 23, 2012, the Bankruptcy Court confirmed the Seventh Amended Plan (the "Confirmation Order") and, upon satisfaction or waiver of the conditions described in the Seventh Amended Plan, the transactions contemplated by the Seventh Amended Plan were consummated on March 19, 2012.  Pursuant to the Seventh Amended Plan, the Confirmation Order and that certain related WMI Liquidating Trust Agreement, effective March 6, 2012, the administration of the Debtors' chapter 11 cases and the responsibility to reconcile and litigate remaining disputed proofs of claim, among other things, were transferred to WMILT.

116.    Upon information and belief, in connection with, and upon consummation of, the JPMC Transaction, all employees of WMI (other than one employee) and WMB, as the case may be, who were active employees as of September 25, 2008 were transferred to, and became employees of, JPMC.

117.    The Purchase and Assumption Agreement expressly provided that JPMC would not assume certain liabilities, including, among other things, liabilities related to "all employee benefit plans sponsored by the holding company of [WMB]" and "[a]ll management, employment, change-in-control, severance, unfunded deferred compensation and individual consulting agreements or plans (i) between [WMB] and its employees or (ii) maintained by [WMB] on behalf of its employees."  *See* Purchase and Assumption Agreement at 34.[4]

---

[4]    A copy of the Purchase and Assumption Agreement is publicly available at http://www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf.

AMENDED COMPLAINT                          41

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

## II.     THE EMPLOYEE CLAIMS

118.    Many former employees of WMB, and certain former employees of WMI, filed proofs of claim against WMI's chapter 11 estate, seeking payment pursuant to the various agreements and plans at issue.

119.    Many former employees of WMB, some of whom are Individual Defendants in this action, also filed claims against the FDIC Receiver seeking payments pursuant to employment contracts between such former employees and WMB.  The FDIC Receiver denied the employees' claims for severance and other benefits, and certain employees appealed such denial to the United States District Court for the Western District of Washington.  *See Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011), *aff'd*, 492 Fed. App'x 796 (9th Cir. 2012).  In such litigation, the FDIC Receiver asserted that the Automatic Termination Regulation, 12 C.F.R. § 163.39 (formerly § 563.39), rendered the various employment contracts at issue unenforceable against the FDIC Receiver.  The former employees of WMB argued that the rights to payment under the employment contracts at issue vested at execution and, therefore, 12 C.F.R. § 163.39 did not operate to automatically terminate them.  [Dkt. # 114 at pp 9-10].  Relying on "binding Ninth Circuit authority" that "squarely contradicted" the former WMB employees' argument to the contrary, this Court held that the rights to payment pursuant to the employment contracts did not fully vest at execution.  *Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011), at 8-9 ("Because the Plaintiffs are not entitled to payment under employment agreements until there is a change in control or the occurrence of some other triggering event(s), the court rejects Plaintiffs' contention that rights to payment vested upon execution.").  Accordingly, this Court granted the FDIC Receiver's motion to dismiss, finding that the Automatic Termination Regulation applied and that the employment contracts were unenforceable.  *Id.* Such decision was affirmed on appeal to the United States Court of Appeals for the Ninth Circuit.  492 Fed. App'x 796 (9th Cir. 2012).

AMENDED COMPLAINT                    42

120.    In the Employee Claims, the Individual Defendants seek payments pursuant to various employment contracts and employee benefit plans, including:

A.    individual contracts between either WMI or WMB and the respective employee entitled "Change in Control Agreement" or "Employment Agreement";

B.    individual contracts between either WMI or WMB and the respective employee regarding a "special bonus opportunity";

C.    individual contracts between WMI and the respective employee entitled "Cash Long Term Incentive Award";

D.    the WaMu Severance Plan (as defined below);

E.    the Equity Incentive Plan (as defined below);

F.    the Washington Mutual, Inc. Executive Target Retirement Income Plan (effective as of January 1, 2004);

G.    the WaMu Executive Officer Severance Plan (effective as of April 1, 2008);

H.    a "Confidential Executive Separation Agreement"; and

I.    individual "Change in Control Employment Agreements" between Providian Financial Corporation and its respective former employee, who ultimately became an employee of WMB.

**A.    <u>Change in Control Agreements</u>**

121.    Defendants Susan C. Allison, Edward F. Bach, Melba Ann Bartels, Robert N. Batt, Sean Becketti, Henry J. Berens, Bruce W. Bivert, Anthony Joseph Bozzuti, Curt Brouwer, John M. Browning, Gregory G. Camas, Kimberly A. Cannon, Gregory Alan Carlisle, Gennadiy Darakhovskiy, Mary Beth Davis, Andrew J. Eschenbach, William Finzer, Stephen Fortunato, Brian T. Foster, Keith O. Fukui, Matthew Gaspard, Michele S. Grau-Iversen, Robert C. Hill, Jeffrey Jones, Rajiv Kapoor, Kenneth E. Kido, Suzanne R. Lehrberger, Ronald M. Lowery, Marc Malone, Michelle McCarthy, Randy Melby, Rachelle M. Mileur, Thomas E. Morgan, John H. Murphy, Michael Reynoldson, Laura C. Rogers

AMENDED COMPLAINT                    43

Rodrigues, Luis P. Rodriguez, Janquelin F. Schrag, Patricia Schulte, Chandan Sharma, Genevieve Smith, Jacob E. Sorenson, Steven Kenneth Stearns, Mitchell Stevens, Richard Strauch, Jane Suchan, Andrew Tauber, Radha Thompson, Ann Tierney, David A. Tomlinson, Bruce Weber, Jeffrey P. Weinstein, Stephen E. Whittaker, and Michael R. Zarro have asserted claims pursuant to individual agreements with WMB entitled "Employment Agreement" or "Change in Control Agreement" (each a "WMB CIC Agreement," and, collectively, the "WMB CIC Agreements").[5]

122.    Defendants Todd H. Baker, Alfred Brooks, Thomas W. Casey, Daryl D. David, Debora D. Horvath, John P. McMurray, Stephen J. Rotella, David Schneider, Craig E. Tall, Anthony F. Vuoto, and Robert J. Williams, Jr. have asserted claims pursuant to individual agreements with WMI entitled "Employment Agreement" or "Change in Control Agreement" (each a "WMI CIC Agreement" and, collectively, the "WMI CIC Agreements," and, together with the WMB CIC Agreements, the "CIC Agreements").[6]

123.    The CIC Agreements set forth the terms and conditions of employment and provide for extraordinary payments in the form of a "change in control" payment.  With certain limited exceptions, employees of WMI entered into a CIC Agreement with WMI, and employees of WMB entered into a CIC Agreement with WMB.  Although the WMI CIC Agreements contain certain provisions that are different from the WMB CIC Agreements, each CIC Agreement generally provides for "change in control" payments to be paid to the employee if, upon or within 2 or 3 years after a "change in control" occurs, either (a) the employee's employment is terminated without "cause," or (b) the employee resigns for "good reason" and no reason exists for either WMI or WMB, as applicable, to terminate the employee for "cause."

---

[5] A sample WMB CIC Agreement is annexed hereto as **Exhibit D**.

[6] A sample WMI CIC Agreement is annexed hereto as **Exhibit E**.

AMENDED COMPLAINT                          44

124.     Both forms of CIC Agreement contain the same definition of "change in control."  *See* Sample WMB CIC Agreement §§ 5(g)(3), (5), a copy of which is annexed hereto as **Exhibit D**; Sample WMI CIC Agreement §§ 11(c), (e), a copy of which is annexed hereto as **Exhibit E**.  The Individual Defendants have previously alleged that their "change in control" benefits were triggered as a result of the Bank Seizure and/or JPMC Transaction, pursuant to one or both of the following definitions of "change in control" in their respective agreements:

(c)  The good-faith determination by the Board that any Person[7] or group (other than a Subsidiary or any employee benefit plan of Washington Mutual or a Subsidiary) has acquired direct or indirect possession of the power to direct or cause to direct the management or policies of Washington Mutual, whether through the ability to exercise voting power, by contract or otherwise; or

(e)  The sale or transfer (in one transaction or a series of related transactions) of all or substantially all of Washington Mutual's assets to another Person (other than a Subsidiary) whether assisted or unassisted, voluntary or involuntary.

*See* Sample WMI CIC Agreement § 11(c), (e).

125.     Pursuant to the CIC Agreements, to the extent (a) a "change in control" occurs and (b) either of the termination or resignation conditions have been satisfied, then the employee is entitled to receive "within five business days after the effective date of such termination or resignation . . . , a lump sum equal to [two or] three times employee's annual compensation" subject to certain offsets.  *See* Sample WMI CIC Agreement § 6(c); Sample WMB CIC Agreement § 5(c).

---

[7]  Pursuant to the CIC Agreements, "Person" means "any individual, corporation, company, voluntary association, partnership, limited liability company, joint venture, trust, unincorporated organization of government (or any agency, instrumentality or political subdivision thereof)."  Sample WMI CIC Agreement § 11(f); Sample WMB CIC Agreement § 5(h)(1).

AMENDED COMPLAINT                    45

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

### B. Alternate or Contingent Claim for Severance Pursuant to Rotella CIC Agreement

126.  One Individual Defendant, Stephen J. Rotella, also has asserted an alternate or contingent claim for severance payments pursuant to the non-"change in control" terms of Defendant Rotella's WMI CIC Agreement (the "Rotella CIC Agreement").[8] Whereas the "change in control" provisions of the Rotella CIC Agreement provide for a change in control payment equal to three times Defendant Rotella's annual compensation, the base severance provisions provide for severance in the amount of two times Defendant Rotella's annual compensation for termination without "cause" unrelated to a "change in control."  *See* Rotella CIC Agreement § 6(h).  Thus, Defendant Rotella has asserted an alternate or contingent claim for severance pursuant to the base severance provisions of the Rotella CIC Agreement to the extent the Bankruptcy Court determines that he is not entitled to the "change of control" payment pursuant thereto.

### C. Claim for Deferred Signing Bonus Pursuant to Brady Offer Letter

127.  One Individual Defendant, Gary P. Brady, has also asserted a claim for payment of a deferred signing bonus pursuant to the "change in control" terms set forth in Defendant Brady's offer letter, dated May 13, 2008 (the "Brady Offer Letter").[9][10] Specifically, the letter states that, if Defendant Brady's "position is eliminated in connection with a change in control as defined in [his] change in control agreement, [he] is entitled to full payment of the deferred signing bonus."  Brady Offer Letter at 2.  As discussed *supra* in

---

[8] The Rotella CIC Agreement is annexed hereto as **Exhibit F**.

[9] Mr. Brady's proof of claim, which contains the Brady Offer Letter, is annexed hereto as **Exhibit G.**

[10] Although Individual Defendant Brady has asserted that he is "no longer seeking payment of the deferred signing bonus," he has not formally withdrawn this claim and, accordingly, WMILT is including Defendant Brady's claim pursuant to his deferred signing bonus in this action.  *See In re Washington Mutual, Inc.*, No.: 08-12229 (MFW), *Gary P. Brady's Response To WMILT's Eighty-Second Omnibus (Substantive) Objection To Change In Control* (Bankr. D. Del. Sept. 7, 2012) [Dkt. 10608].

AMENDED COMPLAINT                  46

paragraph 124, the Individual Defendants have previously alleged that the Bank Seizure and/or JPMC Transaction triggered their "change in control" benefits.

**D.** **Retention Bonus Agreements**

128.     Defendants Edward F. Bach, Melba Ann Bartels, Henry J. Berens, Bruce W. Bivert, Robert C. Bjorklund, Anthony Joseph Bozzuti, Carey M. Brennan, Curt Brouwer, Kimberly A. Cannon, Mary Beth Davis, Jake D. Domer, William Finzer, Brian T. Foster, Peter Freilinger, Michele S. Grau-Iversen, Robert C. Hill, Jeffrey Jones, Kenneth E. Kido, Michelle McCarthy, Susan McCarthy, Rachelle M. Mileur, Thomas E. Morgan, Casey Nault, Michael Reynoldson, Patricia Roberts, Chandan Sharma, Genevieve Smith, Jacob E. Sorenson, Steven F. Stein, Richard Strauch, Jane Suchan, David A. Tomlinson, Bruce Weber, Jeffrey P. Weinstein, Stephen E. Whittaker, John F. Woods, Weijia Wu, and Michael R. Zarro have asserted claims pursuant to individual memo agreements with WMB providing for a "special bonus opportunity" (each a "WMB Retention Bonus Agreement," and, collectively, the "WMB Retention Bonus Agreements").[11]

129.     Defendants Todd H. Baker, Daryl D. David, Debora D. Horvath, John P. McMurray, David Schneider, Anthony F. Vuoto, and Robert J. Williams, Jr., have asserted claims pursuant to individual memo agreements with WMI providing for a "special bonus opportunity" (each a "WMI Retention Bonus Agreement," and, collectively, the "WMI Retention Bonus Agreements," and, together with the WMB Retention Bonus Agreements, the "Retention Bonus Agreements").[12]

130.     The Retention Bonus Agreements were issued by either WMI or WMB, as applicable, to their respective employees, and offered a bonus payment for the employee's continued employment through a date certain.  The Retention Bonus Agreements

---

[11] A sample WMB Retention Bonus Agreement is annexed hereto as **Exhibit H**.

[12] A sample WMI Retention Bonus Agreement is annexed hereto as **Exhibit I**.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

vary in form and language, but each requires the employee to remain employed for a certain period of time, after which the employee is eligible to receive the bonus payment.  In many of the Retention Bonus Agreements, the employment requirement is waived upon the occurrence of certain conditions, including in the event of a "change in control," as defined in the employee's applicable CIC Agreement.

**E.**  **Cash Long Term Incentive Agreements**

131.  Defendants Susan C. Allison, Gennadiy Darakhovskiy, Marc Malone, Michelle McCarthy, John P. McMurray, Chandan Sharma, Mitchell Stevens, Richard Strauch, Andrew Tauber, Radha Thompson, and Ann Tierney have asserted claims pursuant to memo notices that provided for a "Cash Long-Term Incentive Award" (the "Cash LTI Agreements").[13]

132.  The Cash LTI Agreements were issued by WMI and have identical substantive provisions and vesting dates, but provide for varying payments.  The payments vest over a period of three years, with an installment payment becoming due at each anniversary date, and provide, in relevant part, that an employee must be employed on each applicable anniversary date in order to receive each portion of the payment.

133.  The Cash LTI Agreements further provide that the vesting and payments would be accelerated upon the occurrence of a "change in control," as defined in the employee's respective CIC Agreement.

**F.**  **WaMu Severance Plan**

134.  Defendants Susan C. Allison, Sean Becketti, Henry J. Berens, Robert C. Bjorklund, Anthony Joseph Bozzuti, Gary P. Brady, Kimberly A. Cannon, Mary Beth Davis, Duane Duck, Camille Everett, Michele S. Grau-Iversen, Robert C. Hill, Rajiv Kapoor, Marc Malone, Thomas E. Morgan, John H. Murphy, Casey Nault, Michael Reynoldson,

---

[13] A sample Cash LTI Agreement is annexed hereto as **Exhibit J**.

AMENDED COMPLAINT                                48

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

Laura C. Rogers Rodrigues, Luis P. Rodriguez, Chandan Sharma, Scott Shaw, Genevieve Smith, Richard Strauch, Radha Thompson, Ann Tierney, David A. Tomlinson, Stephen E. Whittaker, Weijia Wu, and Michael R. Zarro have asserted claims and, in some cases, alternate or contingent claims, pursuant to the WaMu Severance Plan (Amended and Restated Effective January 1, 2008) (as terminated effective September 25, 2008) (the "WaMu Severance Plan"),[14] which provides payments to eligible employees "of Washington Mutual, Inc. and its Affiliates," in the event of a "job elimination," as defined therein.

135.    In general, the WaMu Severance Plan provided that, in the event of a job elimination (as defined therein), participants who met the requirements under the WaMu Severance Plan were eligible to receive certain defined severance payments.  *See* WaMu Severance Plan § 3.2.

136.    In particular, the WaMu Severance Plan provides for two types of severance payments:  (1) "change in control" severance benefits, for Level 6 employees only, which are triggered upon termination of employment following the occurrence of a "change in control;" and (2) standard or base severance benefits based on the employee's length of service with the applicable entity, which benefits are triggered only if the employee's position was eliminated "because of corporate restructuring, downsizing, or a reduction in force." *See id.*

G.    **Equity Incentive Plan**

137.    Defendants Susan C. Allison, Edward F. Bach, Todd H. Baker, Melba Ann Bartels, Robert N. Batt, David Beck, Sean Becketti, Henry J. Berens, Bruce W. Bivert, Robert C. Bjorklund, Anthony Joseph Bozzuti, Carey M. Brennan, Alfred Brooks, Curt Brouwer, John M. Browning, Gregory G. Camas, Kimberly A. Cannon, Gregory Alan Carlisle, Thomas W. Casey, Daryl D. David, Mary Beth Davis, Jake D. Domer, Duane Duck,

---

[14] A copy of the WaMu Severance Plan is annexed hereto as **Exhibit K**.

Andrew J. Eschenbach, Camille Everett, William Finzer, Stephen Fortunato, Brian T. Foster, Peter Freilinger, Keith O. Fukui, Matthew Gaspard, Michele S. Grau-Iversen, Tammy Harrington,[15]  Robert C. Hill, Debora D. Horvath, Jeffrey Jones, Rajiv Kapoor, Kenneth E. Kido, Suzanne R. Lehrberger, Ronald M. Lowery, Marc Malone, Michelle McCarthy, Susan McCarthy, John P. McMurray, Randy Melby, Joe Anthony Melo, Rachelle M. Mileur, Thomas E. Morgan, John H. Murphy, Michael Reynoldson, Patricia Roberts, Laura C. Rogers Rodrigues, Luis P. Rodriguez, Stephen J. Rotella, Foad Said, David Schneider, Janquelin F. Schrag, Patricia Schulte, Sharma Chandan, Scott Shaw, Genevieve Smith, Jacob E. Sorenson, Steven Kenneth Stearns, Steven F. Stein, Mitchell Stevens, Richard Strauch, Jane Suchan, Andrew Tauber, Radha Thompson, Ann Tierney, David A. Tomlinson, Benjamin Turk, Anthony F. Vuoto, Bruce Weber, Stephen E. Whittaker, Robert J. Williams, Jr., John F. Woods, Weijia Wu, and Michael R. Zarro have asserted claims pursuant to the Washington Mutual, Inc. Amended and Restated 2003 Equity Incentive Plan (the "Equity Incentive Plan"),[16] pursuant to which certain employees received, among other things, awards of common stock subject to various restrictions or conditions (the "Restricted Stock").[17]

---

[15] Three (3) of the Individual Defendants (Tammy Harrington, Benjamin Turk and Foad Said) did not file proofs of claim in the Debtors' bankruptcy cases.  These Individual Defendants hold disputed equity interests in the Debtors' estates relating to restricted stock awards received pursuant to the Equity Incentive Plan.  Because such individuals would have been equity holders in WMI, they were not required to file proofs of equity interests in the chapter 11 cases.  The Trust objected to the disputed equity interests of these Individual Defendants, along with approximately three thousand (3,000) other individuals, in the *WMI Liquidating Trust's Eighty-Eighth Omnibus Objection to Disputed Equity Interests* (the "Eighty-Eighth Omnibus Objection").  Individuals listed therein were deemed to have objected to the Eighty-Eighth Omnibus Objection and were not required to respond to such objection unless they wanted to participate actively in the litigation.  Individual Defendants Harrington, Turk and Said filed responses to the Eighty-Eighth Omnibus Objection, indicating a desire to participate in the bankruptcy litigation and, accordingly, are named herein pursuant to the Bankruptcy Order.

[16] A copy of the Equity Incentive Plan is annexed hereto as **Exhibit L**.

[17] Jacqueline Ferguson filed a proof of claim solely with respect to the Equity Incentive Plan, but as she was terminated on April 30, 2008 she is not named as an Individual Defendant.

AMENDED COMPLAINT                            50

138.    The Equity Incentive Plan contains an automatic vesting provision which provides that, upon the occurrence of a "Company Transaction," certain stock benefits would automatically vest in their holder.  *See* Equity Incentive Plan §§ 15.3.1, 15.3.2.  The term "Company Transaction" is defined in the Equity Incentive Plan as "(a) a merger or consolidation of the Company with or into any other company or other entity or (b) a sale, lease, exchange or other transfer in one transaction or a series of related transactions undertaken with a common purpose of all or substantially all of the Company's then outstanding securities or all or substantially all of the Company's assets . . . ."  *Id.* § 2.  The Equity Incentive Plan further provides that, to the extent a participant has a CIC Agreement, "Company Transaction" shall have the same definition of "change in control" as contained in the respective CIC Agreement.  *Id.*

**H.    Washington Mutual, Inc. Executive Target Retirement Income Plan**

139.    Defendants Alfred Brooks, Thomas W. Casey, Daryl D. David, Debora D. Horvath, John P. McMurray, Stephen J. Rotella, David Schneider, Craig E. Tall, and Anthony F. Vuoto have asserted claims pursuant to the Washington Mutual, Inc. Executive Target Retirement Income Plan (the "ETRIP"),[18] an unfunded plan designed primarily to provide deferred compensation payments to a select group of management and highly compensated employees.

140.    The ETRIP provides that, upon a "change in control," as defined in the employee's respective CIC Agreement, the eligible employee is automatically credited with additional years of seniority for purposes of vesting benefits.  *See* ETRIP § 3.5.  Thus, to the extent a "change in control" is deemed to have occurred, such event would accelerate the vesting of an employee's final payment pursuant to the ETRIP.  *Id.*

---

[18] A copy of the ETRIP is annexed hereto as **Exhibit M**.

AMENDED COMPLAINT                           51

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

## I.  WaMu Executive Officer Severance Plan

141.   Defendants Todd H. Baker, Alfred Brooks, Thomas W. Casey, Daryl D. David, Debora D. Horvath, John P. McMurray, Stephen J. Rotella, David Schneider, Anthony F. Vuoto, and Robert J. Williams, Jr., who were all former employees of WMI, have asserted alternate or contingent claims pursuant to the WaMu Executive Officer Severance Plan (effective as of April 1, 2008) (the "Executive Officer Severance Plan" or "EOSP").[19]  An executive's entitlement to payments pursuant to the EOSP is mutually exclusive with an entitlement to payments pursuant to the executive's WMI CIC Agreement. Therefore, the alternate claims allege that, in the event the Bankruptcy Court finds that the executives are not entitled to their "change in control" payment pursuant to the terms of their respective individual WMI CIC Agreements, the executives are entitled to recover severance benefits pursuant to the terms of the EOSP.  *See* EOSP § 2.

142.   The EOSP provides that an "Eligible Executive" shall be paid a cash severance equal to one and one-half times the sum of the executive's annual base salary plus certain additional benefits, as set forth therein.  *See* EOSP § 3.1.

## J.  Confidential Executive Separation Agreement

143.   One Defendant, John Michael Browning, has asserted a claim pursuant to an agreement entitled "Confidential Executive Separation Agreement."[20]  Mr. Browning has alleged that he entered into this agreement in anticipation of the termination of his employment as a result of a reduction in force of the company.

144.   Pursuant to the agreement, in exchange for Mr. Browning granting certain releases, Mr. Browning would be entitled to receive a separation payment composed

---

[19] A copy of the Executive Officer Severance Plan is annexed hereto as **Exhibit N**.

[20] Mr. Browning's proof of claim, which contains the related contracts, is annexed hereto as **Exhibit O**.

AMENDED COMPLAINT                              52

1   of the equivalent of twenty-four (24) weeks of regular salary, plus a combined leadership and

2   retention bonus.

3   **K.   Providian Agreements**

4   145.   Defendants Robert C. Boxberger, Mary Beth Davis, Michele S. Grau-

5   Iversen, Robert C. Hill, Robert G. Merritt, Michael Rapaport, Laura C. Rogers Rodrigues,

6   Luis P. Rodriguez, Daniel Shanks, Richard Strauch, Jose O. N. Tagunicar, David A.

7   Tomlinson, John Webber, Stephen E. Whittaker, and Kathy H. Yeu were former employees

8   of Providian Financial Corporation ("PFC") and/or one of its subsidiaries prior to October 1,

9   2005 (collectively, the "Providian Defendants").

10   146.   On or around October 1, 2005, New American Capital, Inc. ("NACI"),

11   a former subsidiary of WMI, acquired PFC.  Prior to the acquisition of PFC, PFC owned all

12   of the stock of Providian National Bank ("PNB").   As a result of the acquisition, NACI

13   owned all of the stock of PNB and, immediately after NACI acquired PFC, PNB merged

14   with and into WMB.   After the October 2005 transactions (collectively, the "Providian

15   Merger"), the Providian Defendants became employees of WMB and worked in WMB's

16   California offices in the business division referred to as "Card Services."

17   147.   Prior to the Providian Merger, the Providian Defendants entered into

18   certain employment contracts entitled "Change of Control Employment Agreement" with

19   PFC (each, a "Providian Agreement" and, collectively, the "Providian Agreements").[21]   The

20   Providian Agreements were for purposes of ensuring that, upon a "change of control" at PFC,

21   the Providian employees would be entitled to certain payments.  The "Effective Date" of the

22   Providian Agreements is the first day on which a "Change in Control" at PFC occurs.  *See*

23   Sample Providian Agreement §§ 1(a), 2.

24

25

26   _____
[21] A sample Providian Agreement is annexed hereto as **Exhibit P**.

148.     The Providian Defendants assert that WMI (and, therefore, WMILT) is liable for certain payments pursuant to the Providian Agreements because, among other things, WMI assumed the Providian Agreements as part of the Providian Merger or, alternatively, WMI guaranteed payments pursuant to the Providian Agreements according to the terms thereof.

## III.     THE DEBTORS' OBJECTIONS

149.     Beginning in June 2009, the Debtors objected to certain of the Employee Claims in the *Debtors' Fifth Omnibus (Substantive) Objection to Claims* (the "Fifth Omnibus Objection") and the *Debtors' Sixth Omnibus (Substantive) Objection to Claims* (the "Sixth Omnibus Objection").  The Fifth and Sixth Omnibus Objections assert that WMI is not liable for agreements entered into by and between WMB and employees of WMB and, even if WMI were liable, no "change in control" had occurred to trigger WMI's alleged obligation to make the payments claimed.

150.     On August 15, 2012, WMILT filed the *WMI Liquidating Trust's Seventy-Ninth Omnibus (Substantive) Objection to Claims* (the "Seventy-Ninth Omnibus Objection"), *WMI Liquidating Trust's Eightieth Omnibus (Substantive) Objection to Claims* (the "Eightieth Omnibus Objection"), *WMI Liquidating Trust's Eighty-First Omnibus (Substantive) Objection to Claims* (the "Eighty-First Omnibus Objection"), and *WMI Liquidating Trust's Eighty-Second Omnibus (Substantive) Objection to Change in Control Claims* (the "Eighty-Second Omnibus Objection").  The Seventy-Ninth, Eightieth, Eighty-First and Eighty-Second Omnibus Objections assert, among other things, that WMI is not liable for agreements entered into by and between WMB and employees of WMB and, even if WMI were liable, no "change in control" had occurred to trigger WMI's alleged obligation to make the payments claimed.

151.     On September 17, 2012, WMILT filed the *WMI Liquidating Trust's Eighty-Fourth Omnibus (Substantive) Objection to, Among Others, Change in Control*

AMENDED COMPLAINT                              54

*Claims* (the "Eighty-Fourth Omnibus Objection"), *WMI Liquidating Trust's Eighty-Fifth Omnibus (Substantive) Objection to Change in Control Claims* (the "Eighty-Fifth Omnibus Objection") and *WMI Liquidating Trust's Eighty-Eighth Omnibus (Substantive) Objection to Disputed Equity Interests* (the "Eighty-Eighth Omnibus Objection" and, together with the Fifth Omnibus Objection, Sixth Omnibus Objection, Seventy-Ninth Omnibus Objection, Eightieth Omnibus Objection, Eighty-First Omnibus Objection, Eighty-Second Omnibus Objection, Eighty-Fourth Omnibus Objection and Eighty-Fifth Omnibus Objection, the "Omnibus Objections"). The Eighty-Fourth and Eighty-Fifth Omnibus Objections objected to the applicable claims on the basis that, among other things, no "change in control" had occurred to trigger the payments sought.

152. Approximately ninety-one (91) former employees filed responses to the Omnibus Objections. On October 15, 2012, the Bankruptcy Court entered the *Agreed Order Establishing Procedures and Deadlines Concerning Hearing on Employee Claims and Discovery in Connection Therewith*, which provided for, among other things, the consolidation of the litigation with respect to all of the Omnibus Objections, and set forth procedures with respect to a consolidated hearing or series of hearings to consider the relief requested in the Omnibus Objections.

153. On February 19, 2013, WMILT filed the *WMI Liquidating Trust's Motion for Leave to Amend the Fifth, Sixth, Seventy-Ninth, Eightieth, Eighty-First, Eighty-Second, Eighty-Fourth, Eighty-Fifth, and Eighty-Eighth Omnibus Objections to Claims* (the "Motion to Amend"). The Motion to Amend sought to amend the Omnibus Objections to assert, among other things, that WMILT is not liable for the Employee Claims because such claims seek payments that constitute impermissible "golden parachute payments" pursuant to the Golden Parachute Regulations and are unenforceable pursuant to the Automatic Termination Regulation, as discussed in greater detail below.

AMENDED COMPLAINT                        55

154. In their opposition to the Motion to Amend and contrary to the subsequent FDIC Determination, certain Individual Defendants claimed that the Golden Parachute Regulations did not apply to the agreements and plans at issue. *See Joint Objection to WMI Liquidating Trust's Motion to Amend Fifth, Sixth, Seventy-Ninth, Eightieth, Eighty-First, Eighty-Second, Eighty-Fourth, Eighty-Fifth, and Eighty-Eighth Omnibus Objections to Claims* (the "Claimants' Joint Objection"). Specifically, these Individual Defendants claimed the Golden Parachute Regulations do not "provide WMILT with standing to enforce the federal statutory and regulatory law prohibiting golden parachute payments." Claimants' Joint Objection at 10. Moreover, they claimed that, as of the time of the Bank Seizure, WMI ceased to be covered by the Golden Parachute Regulations and, therefore, WMILT is not prohibited from making payments pursuant to the agreements and plans at issue. *Id.* at 10-11.

155. On August 23, 2013, the Bankruptcy Court denied WMILT's Motion to Amend on the grounds that, *inter alia*, the "amendment would be futile because any decision on the legal issue would not be binding on the FDIC and FRB because they are not parties to the Omnibus Objections." *See* Bankruptcy Order at 2, annexed hereto as **Exhibit A**. The Bankruptcy Court then ordered WMILT to file this declaratory judgment action against the FDIC, FRB, and all claimants. *See id.*[22]

## IV. THE FDIC REGULATIONS

### A. 12 C.F.R. Part 359.2 (the Golden Parachute Regulations)

156. Each of the Individual Defendant's claims arising out of each of the respective contracts and benefits plans, as the case may be, are barred by the Golden Parachute Regulations.

---

[22] Discovery with respect to the underlying litigation in the Bankruptcy Court remains ongoing, but no trial date has been set.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA 98101
Tel. 206-516-3880

157.    The Golden Parachute Regulations, a copy of which is annexed hereto as **Exhibit Q**, provide that "[n]o insured depository institution or depository institution holding company shall make or agree to make any golden parachute payment, except as provided in this part."  12 C.F.R. § 359.2.

158.    The Golden Parachute Regulations prohibit insured depository institutions, like WMB, and depository institution holding companies, like WMI, from making certain payments, absent specific regulatory approval, to an IAP[23] (*i.e.*, each of the named Individual Defendants) upon or after (or in contemplation of) the termination of the IAP's employment or affiliation with the depository institution or holding company, where the requirement to make such payments is triggered by or contingent on the termination of the IAP and such entity is in financial distress at the time of such termination.

159.    The purpose of the Golden Parachute Regulations is to, among other things, "prevent the improper disposition of institution assets and to protect the financial soundness of insured depository institutions, depository institution holding companies, and the federal deposit insurance funds," and to prevent windfall payments to those who may be responsible for, or who participated in risky business activities that contributed to, the troubled condition or failure of financial institutions.  *See* Regulation of Golden Parachute and Other Benefits Which May Be Subject to Misuse, Final Rule, 61 Fed. Reg. 5927-27 (Feb. 15, 1996).

160.    The Golden Parachute Regulations define what constitutes a "golden parachute payment" in a five-part test as: (1) "any payment (or any agreement to make any payment) in the nature of compensation by any insured depository institution [such as WMB] or an affiliated depository institution holding company [such as WMI]"; (2) "for the benefit of any current or former IAP" (such as the named Individual Defendants); (3) which

---

[23] Pursuant to 12 C.F.R. § 359.1(h)(1), "institution affiliated party" means, inter alia, "[a]ny director, officer, employee . . . of, or agent for, an insured depository institution holding company."

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

obligation is contingent on, or by its terms is payable on or after, the termination of such party's primary employment or affiliation with the institution or holding company; (4) is received on or after, or is made in contemplation of certain enumerated Distress Events (as defined below), including, among other things, the insolvency of the insured depository institution or depository institution holding company or the appointment of a receiver; and (5) the termination is at a time when the entity satisfies a Distress Event. *See* 12 C.F.R. § 359.1(f).

161.    In particular, a payment constitutes a prohibited "golden parachute payment" if the payment is made or the agreement is received on or after, or is made in contemplation of any of the following events (each a "<u>Distress Event</u>" and, collectively, the "<u>Distress Events</u>"):

- The insolvency (or similar event) of the depository institution or the bankruptcy or insolvency (or similar event) of the depository institution holding company, *see* 12 C.F.R. § 359.1(f)(1)(ii)(A);

- The appointment of a receiver or conservator for the insured depository institution, *see* 12 C.F.R. § 359.1(f)(1)(ii)(B);

- A determination by the appropriate federal banking agency that the depository institution or its holding company is in a "troubled condition," *see* 12 C.F.R. § 359.1(f)(1)(ii)(C);

- The depository institution or the depository institution holding company is assigned a composite rating of 4 or 5 by the appropriate federal banking agency, *see* 12 C.F.R. § 359.1(f)(1)(ii)(D); or

- The insured depository institution is subject to a proceeding to terminate or suspend deposit insurance, *see* 12 C.F.R. § 359.1(f)(1)(ii)(E).

162.    On or around September 18, 2008, WMB experienced a Distress Event when it was assigned in writing a composite regulatory CAMELS Rating of 4. *See* the FDIC Determination, a copy of which is annexed hereto as **Exhibit B**; 12 C.F.R. § 359.1(f)(1)(ii)(D).    Moreover, an entity with a composite CAMELS Rating of "4" is

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

officially designated as "troubled." *See* 12 C.F.R. § 359.1(f)(1)(ii)(C); 12 C.F.R. § 303.101(c); *see also* the FDIC Determination, a copy of which is annexed hereto as **Exhibit B**.

163. Shortly thereafter, on September 25, 2008, WMB experienced another Distress Event when, by order number 2008-36, the OTS seized WMB and appointed the FDIC Receiver as receiver for WMB. *See* 12 C.F.R. § 359.1(f)(1)(ii)(B). Immediately after its appointment, the FDIC Receiver sold substantially all of the assets of WMB to JPMC pursuant to the Purchase and Assumption Agreement.

164. The following day, on September 26, 2008, each of the Debtors experienced a Distress Event when they filed petitions for relief under chapter 11 of the Bankruptcy Code. *See* § 359.1(f)(1)(ii)(A).

165. As described more fully in paragraph 171 *infra*, and as set forth in the FDIC Determination, the FDIC has found that a Distress Event occurred because, *inter alia*, FDIC records show that WMB was assigned a composite "4" rating, and, therefore, officially designated "troubled," as of September 18, 2008, and WMI filed for Chapter 11 bankruptcy on September 25, 2008. *See* the FDIC Determination, a copy of which is annexed hereto as **Exhibit B**. The FDIC further found that the agreements and plans at issue fall within the scope of the Golden Parachute Regulations and WMILT is prohibited from making payments pursuant to the agreements or plans without prior regulatory approval. *Id.*

**B.      12 C.F.R. § 163.39 (the Automatic Termination Regulation)**

166. As this Court has found previously, certain of the contracts and benefit plans that give rise to certain of the Individual Defendants' claims automatically terminated upon the appointment of the FDIC as the receiver for WMB pursuant to the Automatic Termination Regulation.

167. The Automatic Termination Regulation provides that an employment contract between a savings association and its officers and other employees must provide

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

that, "[i]f the savings association is in default [as defined in section 3(x)(1) of the FDIA], all obligations under the contract shall terminate as of the date of default . . ." *See* 12 C.F.R. § 163.39(b)(4) (a copy of which is annexed hereto as **Exhibit R**). Such regulation is incorporated into employment agreements between the parties regardless of whether it is expressly set forth in the written document. *See Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011) (explaining that 12 C.F.R. § 563.39(b)(5), now 12 C.F.R. § 163.39, will be implied in employment contracts of insured institutions to the extent they are not expressly included in such contracts), *aff'd*, 492 Fed. App'x. 796 (9th Cir. 2012). Thus, as this Court in *Williams* found, under the Automatic Termination Regulation, any employment contract obligation between a savings association and its employees, such as the contracts for which the Individual Defendants assert WMILT is vicariously liable, automatically terminates upon the date of default of the savings association. *See Williams v. FDIC*, No. 09-504 (RAJ) at 8.

168.    Like the Golden Parachute Regulations, the Automatic Termination Regulation seeks to prevent employees of a failed or failing financial institution from receiving a windfall at the expense of creditors and depositors.

## V.    THE FDIC DETERMINATION THAT THE GOLDEN PARACHUTE REGULATIONS PROHIBIT PAYMENT TO INDIVIDUAL DEFENDANTS

169.    In an effort to resolve the outstanding claims necessary to close the Debtors' chapter 11 cases, WMILT executed stipulations (the "Settlement Agreements") with thirty-two (32) individual former employees (the "Settling Claimants") to settle their respective Employee Claims, which Settlement Agreements are, by their terms, expressly subject to the prior approval by the FDIC and FRB of the payments contemplated thereunder.

170.    On May 30, 2013, WMILT submitted a request to the FDIC with respect to the thirty-two (32) Settlement Agreements, seeking a determination as to whether the Golden Parachute Regulations applied to certain contracts and benefits plans subject

thereto (the "May 30 Letter").  Specifically, WMILT sought a determination as to whether the Golden Parachute Regulations applied to payments made pursuant to:

- the WMB CIC Agreements;
- certain WMB Retention Bonus Agreements;
- the Cash Long Term Incentive Agreements;
- the WaMu Severance Plan; and
- the Equity Incentive Plan.

171.    As discussed *supra* in paragraph 165, and as set forth in the FDIC Determination, the FDIC determined that (i) a Distress Event (as defined above) had occurred, (ii) any payments made to the Settling Claimants pursuant to the above-referenced agreements were subject to the Golden Parachute Regulation,[24] and (iii) such payments are prohibited absent specific, individual, case-by-case regulatory approval.  *See* FDIC Determination, a copy of which is annexed hereto as **Exhibit B**.

172.    Additionally, the FDIC stated that WMILT must file a formal application prior to making any golden parachute payments pursuant to:

- the Confidential Executive Separation Agreement;
- the ETRIP; and
- the EOSP.

173.    Moreover, with respect to all eight (8) above-referenced plans and agreements, the FDIC advised WMILT that, absent prior regulatory approval from the FDIC and FRB, "any current or future settlements of golden parachute payments would result in a violation of Part 359 and potential civil money penalties."  *Id.*

174.    The Court should give deference to the FDIC Determination.  *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984); *Bear Lake Watch, Inc. v. FERC*, 324 F.3d 1071, 1073 (9th Cir. 2003) (noting "deference to an agency's reasonable interpretation of a statutory provision where Congress has left the question to the

---

[24] The FDIC Determination is annexed hereto as **Exhibit B**.

AMENDED COMPLAINT                             61

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

agency's discretion"). Indeed, the Ninth Circuit grants substantial deference to an agency's interpretation of its own regulations. *See Forest Guardians v. U.S. Forest Serv.*, 329 F.3d 1089, 1097 (9th Cir. 2003) ("substantial deference"); *Wards Cove Packing Corp. v. Nat'l Marine Fisheries Serv.*, 307 F.3d 1214, 1218 (9th Cir. 2002) ("high degree of deference" if interpretation is not plainly erroneous or inconsistent with regulation).

175.   Consistent with the FDIC Determination and WMILT's obligations under the Settlement Agreements, on August 14, 2013, WMILT filed a formal application (the "<u>Application</u>") with the FDIC seeking authorization to pay the agreed upon amounts to each of the Settling Claimants pursuant to the Settlement Agreements.

176.   Contemporaneously with the Application, WMILT submitted a letter to the FDIC, dated August 14, 2013, requesting an expedited determination as to whether the Golden Parachute Regulations applied to the balance of the agreements and benefits plans referenced herein that were the subject of potential future settlements between WMILT and certain other Individual Defendants.

177.   In particular, WMILT sought a determination as to whether the Golden Parachute Regulations would apply to payments made pursuant to:

- the WMI CIC Agreements;
- certain WMI Retention Bonus Agreements and WMB Retention Bonus Agreements;
- the Confidential Executive Separation Agreement;
- the ETRIP;
- the Executive Officer Severance Plan; and
- the Providian Agreements.

178.   Acknowledging its limitations, at a hearing on August 22, 2013, the Bankruptcy Court denied WMILT's Motion to Amend its claims objections to assert the Federal Regulations as a defense to the Employee Claims on grounds that, *inter alia*, the "amendment would be futile because any decision [by the Bankruptcy Court] on the legal issue would not be binding on the FDIC and FRB because they are not parties to the

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA 98101
Tel. 206-516-3880

Omnibus Objections." *See* Bankruptcy Order at 2. However, as an alternative approach to resolving the threshold question of law, the Bankruptcy Court simultaneously ordered WMILT to file this "declaratory judgment action (naming the FDIC, FRB, and all claimants) seeking a determination [as to] whether WMILT is precluded by [the Golden Parachute Regulations and Automatic Termination Regulation] or any other similar provision from paying any of the claimants if their claims are allowed." *Id.*

AMENDED COMPLAINT

63

## COUNT I

*(As to Defendants: the FDIC, the FRB, Susan C. Allison, Edward F. Bach, Todd H. Baker, Melba Ann Bartels, Robert N. Batt, Sean Becketti, Henry J. Berens, Bruce W. Bivert, Anthony Joseph Bozzuti, Alfred Brooks, Curt Brouwer, John M. Browning, Gregory G. Camas, Kimberly A. Cannon, Gregory Alan Carlisle, Thomas W. Casey, Daryl D. David, Mary Beth Davis, Andrew J. Eschenbach, William Finzer, Stephen Fortunato, Brian T. Foster, Keith O. Fukui, Debora D. Horvath, Matthew Gaspard, Michele S. Grau-Iversen, Robert C. Hill, Jeffrey Jones, Rajiv Kapoor, Kenneth E. Kido, Suzanne R. Lehrberger, Ronald M. Lowery, Marc Malone, Michelle McCarthy, John P. McMurray, Randy Melby, Rachelle M. Mileur, Thomas E. Morgan, John H. Murphy, Michael Reynoldson, Laura C. Rogers Rodrigues, Luis P. Rodriguez, Stephen J. Rotella, Janquelin F. Schrag, David Schneider, Patricia Schulte, Chandan Sharma, Genevieve Smith, Jacob E. Sorenson, Steven Kenneth Stearns, Mitchell Stevens, Richard Strauch, Jane Suchan, Craig E. Tall, Andrew Tauber, Radha Thompson, Ann Tierney, David A. Tomlinson, Anthony F. Vuoto, Bruce Weber, Jeffrey P. Weinstein, Stephen E. Whittaker, Robert J. Williams, Jr., and Michael R. Zarro)*

### Declaratory Judgment that Any Payments Made by WMILT to Individual Defendants Pursuant to the CIC Agreements Are Subject to the Golden Parachute Regulations

179.   Plaintiff, WMILT, incorporates by reference the allegations of paragraphs 1 through 178 of the Complaint as if set forth herein.

180.   An actual controversy exists between the parties as the FDIC has determined that any payments made pursuant to the WMB CIC Agreements are subject to the Golden Parachute Regulations and that WMILT is prohibited from making such payments without prior regulatory approval; yet, certain Individual Defendants with WMB and WMI CIC Agreements have disputed the applicability of the Golden Parachute Regulations and continue to seek payments pursuant to the CIC Agreements in Bankruptcy Court.[25]

181.   On or around September 18, 2008, WMB experienced a Distress Event when it was assigned in writing a composite regulatory CAMELS Rating of 4.[26]   *See* 12 C.F.R. § 359.1(f)(1)(ii)(C)-(D).

---

[25] As noted *supra* at paragraphs 123-24 herein, both forms of CIC Agreement contain the same definition of "change in control" and are otherwise substantively similar in all relevant respects.

[26] See *supra* at paragraphs 161-62.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA 98101
Tel. 206-516-3880

182.     Shortly thereafter, on September 25, 2008, WMB experienced another Distress Event when, by order number 2008-36, the OTS seized WMB and appointed the FDIC Receiver as receiver for WMB.  *See* 12 C.F.R. § 359.1(f)(1)(ii)(B).  Immediately after its appointment, the FDIC Receiver sold substantially all of the assets of WMB to JPMC pursuant to the Purchase and Assumption Agreement.

183.     The following day, on September 26, 2008, each of the Debtors experienced a Distress Event when they filed petitions for relief under chapter 11 of the Bankruptcy Code.  *See* 12 C.F.R. § 359.1(f)(1)(ii)(A).

184.     As defined by the Golden Parachute Regulations, WMB was an insured depository institution, and WMI was its affiliated depository institution holding company at the time the Individual Defendants' claims are alleged to have arisen.  *See* 12 C.F.R. §§ 359.1(b), 359.1(g).  Accordingly, WMI and WMILT, as successor in interest thereto, are subject to the restrictions of the Golden Parachute Regulations.  Specifically, any payment made by WMILT pursuant to the various CIC Agreements to any Individual Defendant named in Count I would constitute a payment in the nature of compensation by an insured depository institution and/or an affiliated depository institution holding company. *See* FDIC Determination (a copy of which is annexed as **Exhibit B**).

185.     Each Individual Defendant named in Count I is a former employee and/or officer of WMB or WMI, as applicable.  Thus, each Individual Defendant named in Count I is an IAP within the meaning of 12 C.F.R. § 359.1(h).  *See* 12 C.F.R. § 359.1(h). Therefore, any payments made by WMILT to the Individual Defendants pursuant to the CIC Agreements would be for the benefit of a former IAP.

186.     By the terms of the CIC Agreements, payment pursuant to such agreements is contingent on and/or payable on or after the termination of each respective Individual Defendant's primary employment with WMB and/or WMI, as applicable.

AMENDED COMPLAINT                           65

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

187. In their Employee Claims, the Individual Defendants have alleged that they were terminated as a result of one or more of the Distress Events. In fact, each of the Individual Defendants' employment relationship or affiliation with WMI or WMB, as applicable, was terminated in connection with, and at a time when the applicable entity satisfied one or more of the Distress Events. Thus, any payment made pursuant to the CIC Agreements would necessarily be received on or after a Distress Event, including, but not limited to, the Bank Seizure and WMI's bankruptcy petition.

188. Declaratory relief is necessary because, although the FDIC has indicated in the FDIC Determination that the Golden Parachute Regulations apply to certain agreements and plans at issue and WMILT has asserted the defense of the Golden Parachute Regulation, certain Individual Defendants disagree and claim that the Golden Parachute Regulations do not apply. Moreover, as the FDIC has made clear, any entity that makes payments pursuant to any of the agreements or plans at issue without prior regulatory approval may be subject to civil money penalties.

189. WMILT requests a declaratory judgment that:

    (a)    any payments made by WMILT to the above-named Individual Defendants pursuant to the CIC Agreements and the CIC Agreements themselves are subject to the Golden Parachute Regulations;

    (b)    WMILT is prohibited from making such payments absent regulatory approval from the FDIC and FRB; and

    (c)    the Individual Defendants are prohibited from receiving such payments from WMILT absent regulatory approval from the FDIC and FRB.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

## COUNT II

*(As to Defendants: the FDIC, the FRB, Edward F. Bach, Todd H. Baker, Melba Ann Bartels, Henry J. Berens, Bruce W. Bivert, Robert C. Bjorklund, Anthony Joseph Bozzuti, Carey M. Brennan, Curt Brouwer, Kimberly A. Cannon, Daryl D. David, Mary Beth Davis, Jake D. Domer, William Finzer, Brian T. Foster, Peter Freilinger, Michele S. Grau-Iversen, Robert C. Hill, Jeffrey Jones, Kenneth E. Kido, Debora D. Horvath, Michelle McCarthy, Susan McCarthy, John P. McMurray, Rachelle M. Mileur, Thomas E. Morgan, Casey Nault, Michael Reynoldson, Patricia Roberts, David Schneider, Chandan Sharma, Genevieve Smith, Jacob E. Sorenson, Steven F. Stein, Richard Strauch, Jane Suchan, David A. Tomlinson, Anthony F. Vuoto, Bruce Weber, Jeffrey P. Weinstein, Stephen E. Whittaker, Robert J. Williams, Jr, John Woods, Weijia Wu, and Michael R. Zarro)*

### Declaratory Judgment that Any Payments Made by WMILT to Individual Defendants Pursuant to the Retention Bonus Agreements Are Subject to the Golden Parachute Regulations

190. Plaintiff, WMILT, incorporates by reference the allegations of paragraphs 1 through 178 of the Complaint as if set forth herein.

191. An actual controversy exists between the parties as the FDIC has determined that any payments made pursuant to certain of the WMB Retention Bonus Agreements are subject to the Golden Parachute Regulations and that WMILT is prohibited from making such payments without prior regulatory approval; yet, certain Individual Defendants with WMB and WMI Retention Bonus Agreements have disputed the applicability of the Golden Parachute Regulations and continue to seek payments pursuant to the Retention Bonus Agreements in Bankruptcy Court.[27]

192. On or around September 18, 2008, WMB experienced a Distress Event when it was assigned in writing a composite regulatory CAMELS Rating of 4.[28] *See* 12 C.F.R. § 359.1(f)(1)(ii)(C)-(D).

---

[27] As noted at paragraph 130 herein, both forms of the Retention Bonus Agreement reference the same definition of "change in control" and are otherwise substantively similar in all relevant respects.

[28] See *supra* at paragraphs 161-62.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA 98101
Tel. 206-516-3880

193.     Shortly thereafter, on September 25, 2008, WMB experienced another Distress Event when, by order number 2008-36, the OTS seized WMB and appointed the FDIC Receiver as receiver for WMB.  *See* 12 C.F.R. § 359.1(f)(1)(ii)(B).  Immediately after its appointment, the FDIC Receiver sold substantially all of the assets of WMB to JPMC pursuant to the Purchase and Assumption Agreement.

194.     The following day, on September 26, 2008, each of the Debtors experienced a Distress Event when they filed petitions for relief under chapter 11 of the Bankruptcy Code.  *See* 12 C.F.R. § 359.1(f)(1)(ii)(A).

195.     As defined by the Golden Parachute Regulations, WMB was an insured depository institution, and WMI was its affiliated depository institution holding company at the time the Individual Defendants' claims are alleged to have arisen.  *See* 12 C.F.R. §§ 359.1(b), 359.1(g).  Accordingly, WMI and WMILT, as successor in interest thereto, are subject to the restrictions of the Golden Parachute Regulations.  Specifically, any payment made by WMILT pursuant to the various Retention Bonus Agreements to any Individual Defendant named in Count II would constitute a payment in the nature of compensation by an insured depository institution and/or an affiliated depository institution holding company.  *See* FDIC Determination (a copy of which is annexed as **Exhibit B**).

196.     Each Individual Defendant named in Count II is a former employee and/or officer of WMB or WMI, as applicable.  Thus, each Individual Defendant named in Count II is an IAP within the meaning of 12 C.F.R. § 359.1(h).  *See* 12 C.F.R. § 359.1(h).  Therefore, any payments made by WMILT to the Individual Defendants pursuant to the Retention Bonus Agreements would be for the benefit of a former IAP.

197.     By the terms of the Retention Bonus Agreements, payment pursuant to such agreements is contingent on and/or payable on or after the termination of each respective Individual Defendant's primary employment with WMB and/or WMI, as applicable.

198.     In their Employee Claims, the Individual Defendants have alleged that they were terminated as a result of one or more of the Distress Events.  In fact, each of the Individual Defendants' employment relationship or affiliation with WMI or WMB, as applicable, was terminated in connection with, and at a time when the applicable entity satisfied one or more of the Distress Events.  Thus, any payment made pursuant to the Retention Bonus Agreements would necessarily be received on or after a Distress Event, including, but not limited to, the Bank Seizure and WMI's bankruptcy petition.

199.     Declaratory relief is necessary because, although the FDIC has indicated in the FDIC Determination that the Golden Parachute Regulations apply to certain agreements and plans at issue and WMILT has asserted the defense of the Golden Parachute Regulation, certain Individual Defendants disagree and claim that the Golden Parachute Regulations do not apply.  Moreover, as the FDIC has made clear, any entity that makes payments pursuant to any of the agreements or plans at issue without prior regulatory approval may be subject to civil money penalties.

200.     WMILT requests a declaratory judgment that:

(a)     any payments made by WMILT to the above-named Individual Defendants pursuant to the Retention Bonus Agreements are subject to the Golden Parachute Regulations;
(b)     WMILT is prohibited from making such payments absent regulatory approval from the FDIC and FRB; and
(c)     the Individual Defendants are prohibited from receiving such payments from WMILT absent regulatory approval from the FDIC and FRB.

AMENDED COMPLAINT                69

## COUNT III

*(As to Defendants: the FDIC, the FRB, Susan C. Allison, Marc Malone, Michelle McCarthy, John P. McMurray, Chandan Sharma, Mitchell Stevens, Richard Strauch, Andrew Tauber, Radha Thompson, and Ann Tierney)*

**Declaratory Judgment that Any Payments Made by WMILT to Individual Defendants Pursuant to the Cash Long Term Incentive Agreements Are Subject to the Golden Parachute Regulations**

201.    Plaintiff, WMILT, incorporates by reference the allegations of paragraphs 1 through 178 of the Complaint as if set forth herein.

202.    An actual controversy exists between the parties as the FDIC has determined that any payments made pursuant to the Cash Long Term Incentive Agreements are subject to the Golden Parachute Regulations and that WMILT is prohibited from making such payments without prior regulatory approval; yet, certain Individual Defendants with Cash Long Term Incentive Agreements have disputed the applicability of the Golden Parachute Regulations and continue to seek payments pursuant to Cash Long Term Incentive Agreements in Bankruptcy Court.

203.    On or around September 18, 2008, WMB experienced a Distress Event when it was assigned in writing a composite regulatory CAMELS Rating of 4.[29]  *See* 12 C.F.R. § 359.1(f)(1)(ii)(C)-(D).

204.    Shortly thereafter, on September 25, 2008, WMB experienced another Distress Event when, by order number 2008-36, the OTS seized WMB and appointed the FDIC Receiver as receiver for WMB.  *See* 12 C.F.R. § 359.1(f)(1)(ii)(B).  Immediately after its appointment, the FDIC Receiver sold substantially all of the assets of WMB to JPMC pursuant to the Purchase and Assumption Agreement.

---

[29] See *supra* at paragraphs 161-62.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

205.    The following day, on September 26, 2008, the Debtors experienced a Distress Event when they filed petitions for chapter 11 bankruptcy protection.  *See* 12 C.F.R. § 359.1(f)(1)(ii)(A).

206.    As defined by the Golden Parachute Regulations, WMB was an insured depository institution, and WMI was its affiliated depository institution holding company at the time the Individual Defendants' claims are alleged to have arisen.  *See* 12 C.F.R. §§ 359.1(b), 359.1(g).   Accordingly, WMI and WMILT, as successor in interest thereto, are subject to the restrictions of the Golden Parachute Regulations.  Specifically, any payment made by WMILT pursuant to the various Cash Long Term Incentive Agreements to any Individual Defendant named in Count III would constitute a payment in the nature of compensation by an insured depository institution and/or an affiliated depository institution holding company.  *See* FDIC Determination (a copy of which is annexed as **Exhibit B**).

207.    Each Individual Defendant named in Count III is a former employee and/or officer of WMB or WMI, as applicable.  Thus, each Individual Defendant named in Count III is an IAP within the meaning of 12 C.F.R. § 359.1(h).  *See* 12 C.F.R. § 359.1(h).  Therefore, any payments made by WMILT to the Individual Defendants pursuant to the Cash Long Term Incentive Agreements would be for the benefit of a former IAP.

208.    By the terms of the Cash Long Term Incentive Agreements, payment pursuant to such agreements is contingent on and/or payable on or after the termination of each respective Individual Defendant's primary employment with WMB and/or WMI, as applicable.

209.    In their Employee Claims, the Individual Defendants have alleged that they were terminated as a result of one or more of the Distress Events.  In fact, each of the Individual Defendants' employment relationship or affiliation with WMI or WMB, as applicable, was terminated in connection with, and at a time when the applicable entity satisfied one or more of the Distress Events.  Thus, any payment made pursuant to the

AMENDED COMPLAINT                              71

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

Retention Bonus Agreements would necessarily be received on or after a Distress Event, including, but not limited to, the Bank Seizure and WMI's bankruptcy petition.

210.    Declaratory relief is necessary because, although the FDIC has indicated in the FDIC Determination that the Golden Parachute Regulations apply to certain agreements and plans at issue and WMILT has asserted the defense of the Golden Parachute Regulation, certain Individual Defendants disagree and claim that the Golden Parachute Regulations do not apply.  Moreover, as the FDIC has made clear, any entity that makes payments pursuant to any of the agreements or plans at issue without prior regulatory approval may be subject to civil money penalties.

211.    WMILT requests a declaratory judgment that:

(a)    any payments made by WMILT to the above-named Individual Defendants pursuant to the Cash Long Term Incentive Agreements are subject to the Golden Parachute Regulations;

(b)    WMILT is prohibited from making such payments absent regulatory approval from the FDIC and FRB; and

(c)    the Individual Defendants are prohibited from receiving such payments from WMILT absent regulatory approval from the FDIC and FRB.

AMENDED COMPLAINT                    72

## COUNT IV

*(As to Defendants: the FDIC, the FRB, Susan C. Allison, Sean Becketti, Henry J. Berens, Robert C. Bjorklund, Anthony Joseph Bozzuti, Gary P. Brady, Kimberly A. Cannon, Mary Beth Davis, Duane Duck, Camille Everett, Michele S. Grau-Iversen, Robert C. Hill, Rajiv Kapoor, Marc Malone, Thomas E. Morgan, John H. Murphy, Casey Nault, Michael Reynoldson, Laura C. Rogers Rodrigues, Luis P. Rodriguez, Chandan Sharma, Scott Shaw, Genevieve Smith, Richard Strauch, Radha Thompson, Ann Tierney, David A. Tomlinson, Stephen E. Whittaker, Weijia Wu, and Michael R. Zarro)*

**Declaratory Judgment that Any Payments Made by WMILT to Individual Defendants Pursuant to the WaMu Severance Plan Are Subject to the Golden Parachute Regulations**

212.     Plaintiff, WMILT, incorporates by reference the allegations of paragraphs 1 through 178 of the Complaint as if set forth herein.

213.     An actual controversy exists between the parties as the FDIC has determined that any payments made pursuant to the WaMu Severance Plan are subject to the Golden Parachute Regulations and that WMILT is prohibited from making such payments without prior regulatory approval; yet, certain Individual Defendants party to the WaMu Severance Plan have disputed the applicability of the Golden Parachute Regulations and continue to seek payments pursuant to the WaMu Severance Plan in Bankruptcy Court.

214.     On or around September 18, 2008, WMB experienced a Distress Event when it was assigned in writing a composite regulatory CAMELS Rating of 4.[30]   *See* 12 C.F.R. § 359.1(f)(1)(ii)(C)-(D).

215.     Shortly thereafter, on September 25, 2008, WMB experienced another Distress Event when, by order number 2008-36, the OTS seized WMB and appointed the FDIC Receiver as receiver for WMB.   *See* 12 C.F.R. § 359.1(f)(1)(ii)(B).   Immediately after its appointment, the FDIC Receiver sold substantially all of the assets of WMB to JPMC pursuant to the Purchase and Assumption Agreement.

---

[30] See *supra* at paragraphs 161-62.

AMENDED COMPLAINT                    73

216.   The following day, on September 26, 2008, each of the Debtors experienced a Distress Event when they filed petitions for relief under chapter 11 of the Bankruptcy Code. *See* 12 C.F.R. § 359.1(f)(1)(ii)(A).

217.   As defined by the Golden Parachute Regulations, WMB was an insured depository institution, and WMI was its affiliated depository institution holding company at the time the Individual Defendants' claims are alleged to have arisen. *See* 12 C.F.R. §§ 359.1(b), 359.1(g).   Accordingly, WMI and WMILT, as successor in interest thereto, are subject to the restrictions of the Golden Parachute Regulations.  Specifically, any payment made by WMILT pursuant to the WaMu Severance Plan to any Individual Defendant named in Count IV would constitute a payment in the nature of compensation by an insured depository institution and/or an affiliated depository institution holding company. *See* FDIC Determination (a copy of which is annexed as **Exhibit B**).

218.   Each Individual Defendant named in Count IV is a former employee and/or officer of WMB or WMI, as applicable.  Thus, each Individual Defendant named in Count IV is an IAP within the meaning of 12 C.F.R. § 359.1(h).  *See* 12 C.F.R. § 359.1(h).  Therefore, any payments made by WMILT to the Individual Defendants pursuant to the WaMu Severance Plan would be for the benefit of a former IAP.

219.   By the terms of the WaMu Severance Plan, payment pursuant to such agreements is contingent on and/or payable on or after the termination of each respective Individual Defendant's primary employment with WMB and/or WMI, as applicable.

220.   In their Employee Claims, the Individual Defendants have alleged that they were terminated as a result of one or more of the Distress Events.  In fact, each of the Individual Defendants' employment relationship or affiliation with WMI or WMB, as applicable, was terminated in connection with, and at a time when the applicable entity satisfied one or more of the Distress Events.  Thus, any payment made pursuant to the WaMu

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

Severance Plan would necessarily be received on or after a Distress Event, including, but not limited to, the Bank Seizure and WMI's bankruptcy petition.

221. Declaratory relief is necessary because, although the FDIC has indicated in the FDIC Determination that the Golden Parachute Regulations apply to certain agreements and plans at issue and WMILT has asserted the defense of the Golden Parachute Regulation, certain Individual Defendants disagree and claim that the Golden Parachute Regulations do not apply. Moreover, as the FDIC has made clear, any entity that makes payments pursuant to any of the agreements or plans at issue without prior regulatory approval may be subject to civil money penalties.

222. WMILT requests a declaratory judgment that:

(a) any payments made by WMILT to the above-named Individual Defendants pursuant to the WaMu Severance Plan are subject to the Golden Parachute Regulations;

(b) WMILT is prohibited from making such payments absent regulatory approval from the FDIC and FRB; and

(c) the Individual Defendants are prohibited from receiving such payments from WMILT absent regulatory approval from the FDIC and FRB.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA 98101
Tel. 206-516-3880

## COUNT V

*(As to Defendants: the FDIC, the FRB, Susan C. Allison, Edward F. Bach, Todd H. Baker, Melba Ann Bartels, Robert N. Batt, David Beck, Sean Becketti, Henry J. Berens, Bruce W. Bivert, Robert C. Bjorklund, Anthony Joseph Bozzuti, Carey M. Brennan, Alfred Brooks, Curt Brouwer, John M. Browning, Gregory G. Camas, Kimberly A. Cannon, Gregory Alan Carlisle, Thomas W. Casey, Daryl D. David, Mary Beth Davis, Jake D. Domer, Duane Duck, Andrew J. Eschenbach, Camille Everett, William Finzer, Stephen Fortunato, Brian T. Foster, Peter Freilinger, Keith O. Fukui, Matthew Gaspard, Michele S. Grau-Iversen, Tammy Harrington, Robert C. Hill, Debora D. Horvath, Jeffrey Jones, Rajiv Kapoor, Kenneth E. Kido, Suzanne R. Lehrberger, Ronald M. Lowery, Marc Malone, Michelle McCarthy, Susan McCarthy, John P. McMurray, Randy Melby, Joe Anthony Melo, Rachelle M. Mileur, Thomas E. Morgan, John H. Murphy, Michael Reynoldson, Patricia Roberts, Laura C. Rogers Rodrigues, Luis P. Rodriguez, Stephen J. Rotella, Foad Said, David Schneider, Janquelin F. Schrag, Patricia Schulte, Sharma Chandan, Scott Shaw, Genevieve Smith, Jacob E. Sorenson, Steven Kenneth Stearns, Steven F. Stein, Mitchell Stevens, Richard Strauch, Jane Suchan, Andrew Tauber, Radha Thompson, Ann Tierney, David A. Tomlinson, Benjamin Turk, Anthony F. Vuoto, Bruce Weber, Stephen E. Whittaker, Robert J. Williams, Jr., John F. Woods, Weijia Wu, and Michael R. Zarro)*

**Declaratory Judgment that Any Payments Made by WMILT to Individual Defendants Pursuant to the Equity Incentive Plan Are Subject to the Golden Parachute Regulations**

223.    Plaintiff, WMILT, incorporates by reference the allegations of paragraphs 1 through 178 of the Complaint as if set forth herein.

224.    An actual controversy exists between the parties as the FDIC has determined that any payments made pursuant to the Equity Incentive Plan are subject to the Golden Parachute Regulations and that WMILT is prohibited from making such payments without prior regulatory approval; yet, certain Individual Defendants party to the Equity Incentive Plan have disputed the applicability of the Golden Parachute Regulations and continue to seek payments pursuant to the Equity Incentive Plan in Bankruptcy Court.

225.    On or around September 18, 2008, WMB experienced a Distress Event when it was assigned in writing a composite regulatory CAMELS Rating of 4.[31]   *See* 12 C.F.R. § 359.1(f)(1)(ii)(C)-(D).

---

[31] See *supra* at paragraphs 161-62.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

226.     Shortly thereafter, on September 25, 2008, WMB experienced another Distress Event when, by order number 2008-36, the OTS seized WMB and appointed the FDIC Receiver as receiver for WMB.  *See* 12 C.F.R. § 359.1(f)(1)(ii)(B).  Immediately after its appointment, the FDIC Receiver sold substantially all of the assets of WMB to JPMC pursuant to the Purchase and Assumption Agreement.

227.     The following day, on September 26, 2008, each of the Debtors experienced a Distress Event when they filed petitions for relief under chapter 11 of the Bankruptcy Code.  *See* 12 C.F.R. § 359.1(f)(1)(ii)(A).

228.     As defined by the Golden Parachute Regulations, WMB was an insured depository institution, and WMI was its affiliated depository institution holding company at the time the Individual Defendants' claims are alleged to have arisen.  *See* 12 C.F.R. §§ 359.1(b), 359.1(g).  Accordingly, WMI and WMILT, as successor in interest thereto, are subject to the restrictions of the Golden Parachute Regulations.  Specifically, any payment made by WMILT pursuant to the Equity Incentive Plan to any Individual Defendant named in Count V would constitute a payment in the nature of compensation by an insured depository institution and/or an affiliated depository institution holding company.  *See* FDIC Determination (a copy of which is annexed as **Exhibit B**).

229.     Each Individual Defendant named in Count V is a former employee and/or officer of WMB or WMI, as applicable.  Thus, each Individual Defendant named in Count V is an IAP within the meaning of 12 C.F.R. § 359.1(h).  *See* 12 C.F.R. § 359.1(h).  Therefore, any payments made by WMILT to the Individual Defendants pursuant to the Equity Incentive Plan would be for the benefit of a former IAP.

230.     By the terms of the Equity Incentive Plan, payment pursuant to such agreements is contingent on and/or payable on or after the termination of each respective Individual Defendant's primary employment with WMB and/or WMI, as applicable.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

231.     In their Employee Claims, the Individual Defendants have alleged that they were terminated as a result of one or more of the Distress Events.  In fact, each of the Individual Defendants' employment relationship or affiliation with WMI or WMB, as applicable, was terminated in connection with, and at a time when the applicable entity satisfied one or more of the Distress Events.  Thus, any payment made pursuant to the Equity Incentive Plan would necessarily be received on or after a Distress Event, including, but not limited to, the Bank Seizure and WMI's bankruptcy petition.

232.     Declaratory relief is necessary because, although the FDIC has indicated in the FDIC Determination that the Golden Parachute Regulations apply to certain agreements and plans at issue and WMILT has asserted the defense of the Golden Parachute Regulation, certain Individual Defendants disagree and claim that the Golden Parachute Regulations do not apply.  Moreover, as the FDIC has made clear, any entity that makes payments pursuant to any of the agreements or plans at issue without prior regulatory approval may be subject to civil money penalties.

233.     WMILT requests a declaratory judgment that:

(a)     any payments made by WMILT to the above-named Individual Defendants pursuant to the Equity Incentive Plan are subject to the Golden Parachute Regulations;

(b)     WMILT is prohibited from making such payments absent regulatory approval from the FDIC and FRB; and

(c)     the Individual Defendants are prohibited from receiving such payments from WMILT absent regulatory approval from the FDIC and FRB.

AMENDED COMPLAINT                    78

## COUNT VI

*(As to Defendants: the FDIC, the FRB, Alfred Brooks, Thomas W. Casey, Daryl D. David, Debora D. Horvath, John P. McMurray, Stephen J. Rotella, David Schneider, Craig E. Tall, and Anthony F. Vuoto)*

**Declaratory Judgment that Any Payments Made by WMILT to Individual Defendants Pursuant to the ETRIP Are Subject to the Golden Parachute Regulations**

234.    Plaintiff, WMILT, incorporates by reference the allegations of paragraphs 1 through 178 of the Complaint as if set forth herein.

235.    An actual controversy exists between the parties as the FDIC has determined that any payments made pursuant to the ETRIP are subject to the Golden Parachute Regulations and WMILT is prohibited from making such payments without prior regulatory approval; yet, certain Individual Defendants party to the ETRIP have disputed the applicability of the Golden Parachute Regulations and continue to seek payments pursuant to the ETRIP in Bankruptcy Court.

236.    On or around September 18, 2008, WMB experienced a Distress Event when it was assigned in writing a composite regulatory CAMELS Rating of 4.[32]  *See* 12 C.F.R. § 359.1(f)(1)(ii)(C)-(D).

237.    Shortly thereafter, on September 25, 2008, WMB experienced another Distress Event when, by order number 2008-36, the OTS seized WMB and appointed the FDIC Receiver as receiver for WMB.  *See* 12 C.F.R. § 359.1(f)(1)(ii)(B).  Immediately after its appointment, the FDIC Receiver sold substantially all of the assets of WMB to JPMC pursuant to the Purchase and Assumption Agreement.

238.    The following day, on September 26, 2008, each of the Debtors experienced a Distress Event when they filed petitions for relief under chapter 11 of the Bankruptcy Code.  *See* § 359.1(f)(1)(ii)(A).

---

[32] See *supra* at paragraphs 161-62.

AMENDED COMPLAINT                    79

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

239.     As defined by the Golden Parachute Regulations, WMB was an insured depository institution, and WMI was its affiliated depository institution holding company at the time the Individual Defendants' claims are alleged to have arisen.  *See* 12 C.F.R. §§ 359.1(b), 359.1(g).   Accordingly, WMI and WMILT, as successor in interest thereto, are subject to the restrictions of the Golden Parachute Regulations.  Specifically, any payment made by WMILT pursuant to the ETRIP to any Individual Defendant named in Count VI would constitute a payment in the nature of compensation by an insured depository institution and/or an affiliated depository institution holding company.   *See* FDIC Determination (a copy of which is annexed as **Exhibit B**).

240.     Each Individual Defendant named in Count VI is a former employee and/or officer of WMB or WMI, as applicable.  Thus, each Individual Defendant named in Count VI is an IAP within the meaning of 12 C.F.R. § 359.1(h).  *See* 12 C.F.R. § 359.1(h). Therefore, any payments made by WMILT to the Individual Defendants pursuant to the ETRIP would be for the benefit of a former IAP.

241.     By the terms of the ETRIP, payment pursuant to such agreements is contingent on and/or payable on or after the termination of each respective Individual Defendant's primary employment with WMB and/or WMI, as applicable.

242.     In their Employee Claims, the Individual Defendants have alleged that they were terminated as a result of one or more of the Distress Events.  In fact, each of the Individual Defendants' employment relationship or affiliation with WMI or WMB, as applicable, was terminated in connection with, and at a time when the applicable entity satisfied one or more of the Distress Events.  Thus, any payment made pursuant to the ETRIP would necessarily be received on or after a Distress Event, including, but not limited to, the Bank Seizure and WMI's bankruptcy petition.

243.     Declaratory relief is necessary because, although the FDIC has indicated in the FDIC Determination that the Golden Parachute Regulations apply to certain

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

agreements and plans at issue and WMILT has asserted the defense of the Golden Parachute Regulation, certain Individual Defendants disagree and claim that the Golden Parachute Regulations do not apply. Moreover, as the FDIC has made clear, any entity that makes payments pursuant to any of the agreements or plans at issue without prior regulatory approval may be subject to civil money penalties.

244.     WMILT requests a declaratory judgment that:

(a)     any payments made by WMILT to the above-named Individual Defendants pursuant to the ETRIP are subject to the Golden Parachute Regulations;

(b)     WMILT is prohibited from making such payments absent regulatory approval from the FDIC and FRB; and

(c)     the Individual Defendants are prohibiting from receiving such payments from WMILT absent regulatory approval from the FDIC and FRB.

## COUNT VII

*(As to Defendants: the FDIC, the FRB, Todd H. Baker, Alfred Brooks, Thomas W. Casey, Daryl D. David, Debora D. Horvath, John P. McMurray, Stephen J. Rotella, David Schneider, Anthony F. Vuoto, and Robert J. Williams, Jr.)*

**Declaratory Judgment that Any Payments Made by WMILT to Individual Defendants Pursuant to the WaMu Executive Officer Severance Plan Are Subject to the Golden Parachute Regulations**

245.     Plaintiff, WMILT, incorporates by reference the allegations of paragraphs 1 through 178 of the Complaint as if set forth herein.

246.     An actual controversy exists between the parties as the FDIC has determined that any payments made pursuant to the WaMu Executive Officer Severance Plan are subject to the Golden Parachute Regulations and WMILT is prohibited from making such payments without prior regulatory approval; yet, certain Individual Defendants party to the WaMu Executive Officer Severance Plan have disputed the applicability of the Golden Parachute Regulations and continue to seek payments pursuant to the WaMu Executive Officer Severance Plan in Bankruptcy Court.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA 98101
Tel. 206-516-3880

247.     On or around September 18, 2008, WMB experienced a Distress Event when it was assigned in writing a composite regulatory CAMELS Rating of 4.[33]   *See* 12 C.F.R. § 359.1(f)(1)(ii)(C)-(D).

248.     Shortly thereafter, on September 25, 2008, WMB experienced another Distress Event when, by order number 2008-36, the OTS seized WMB and appointed the FDIC Receiver as receiver for WMB.   *See* 12 C.F.R. § 359.1(f)(1)(ii)(B).   Immediately after its appointment, the FDIC Receiver sold substantially all of the assets of WMB to JPMC pursuant to the Purchase and Assumption Agreement.

249.     The following day, on September 26, 2008, each of the Debtors experienced a Distress Event when they filed petitions for relief under chapter 11 of the Bankruptcy Code.   *See* § 359.1(f)(1)(ii)(A).

250.     As defined by the Golden Parachute Regulations, WMB was an insured depository institution, and WMI was its affiliated depository institution holding company at the time the Individual Defendants' claims are alleged to have arisen.   *See* 12 C.F.R. §§ 359.1(b), 359.1(g).   Accordingly, WMI and WMILT, as successor in interest thereto, are subject to the restrictions of the Golden Parachute Regulations.   Specifically, any payment made by WMILT pursuant to the WaMu Executive Officer Severance Plan to any Individual Defendant named in Count VII would constitute a payment in the nature of compensation by an insured depository institution and/or an affiliated depository institution holding company.   *See* FDIC Determination (a copy of which is annexed as **Exhibit B**).

251.     Each Individual Defendant named in Count VII is a former employee and/or officer of WMB or WMI, as applicable.   Thus, each Individual Defendant named in Count VII is an IAP within the meaning of 12 C.F.R. § 359.1(h).   *See* 12 C.F.R. § 359.1(h).

---

[33] See *supra* at paragraphs 161-62.

AMENDED COMPLAINT                                   82

Therefore, any payments made by WMILT to the Individual Defendants pursuant to the WaMu Executive Officer Severance Plan would be for the benefit of a former IAP.

252.     By the terms of the WaMu Executive Officer Severance Plan, payment pursuant to such agreements is contingent on and/or payable on or after the termination of each respective Individual Defendant's primary employment with WMB and/or WMI, as applicable.

253.     In their Employee Claims, the Individual Defendants have alleged that they were terminated as a result of one or more of the Distress Events.  In fact, each of the Individual Defendants' employment relationship or affiliation with WMI or WMB, as applicable, was terminated in connection with, and at a time when the applicable entity satisfied one or more of the Distress Events.  Thus, any payment made pursuant to the WaMu Executive Officer Severance Plan would necessarily be received on or after a Distress Event, including, but not limited to, the Bank Seizure and WMI's bankruptcy petition.

254.     Declaratory relief is necessary because, although the FDIC has indicated in the FDIC Determination that the Golden Parachute Regulations apply to certain agreements and plans at issue and WMILT has asserted the defense of the Golden Parachute Regulation, certain Individual Defendants disagree and claim that the Golden Parachute Regulations do not apply.  Moreover, as the FDIC has made clear, any entity that makes payments pursuant to any of the agreements or plans at issue without prior regulatory approval may be subject to civil money penalties.

255.     WMILT requests a declaratory judgment that:

(a)     any payments made by WMILT to the above-named Individual Defendants pursuant to the WaMu Executive Officer Severance Plan are subject to the Golden Parachute Regulations;

(b)     WMILT is prohibited from making such payments absent regulatory approval from the FDIC and FRB; and

(c)     the Individual Defendants are prohibiting from receiving such payments from WMILT absent regulatory approval from the FDIC and FRB.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

## COUNT VIII

*(As to Defendants: the FDIC, the FRB, and John Michael Browning)*

**Declaratory Judgment that Any Payments Made by WMILT to Defendant John Michael Browning Pursuant to the Confidential Executive Separation Agreement Are Subject to the Golden Parachute Regulations**

256.     Plaintiff, WMILT, incorporates by reference the allegations of paragraphs 1 through 178 of the Complaint as if set forth herein.

257.     An actual controversy exists between the parties as the FDIC has determined that any payments made pursuant to the Confidential Executive Separation Agreement are subject to the Golden Parachute Regulations and WMILT is prohibited from making such payments without prior regulatory approval; yet, the Individual Defendant with the Confidential Executive Separation Agreement has disputed the applicability of the Golden Parachute Regulations and continues to seek payments pursuant to the Confidential Executive Separation Agreement in Bankruptcy Court.

258.     On or around September 18, 2008, WMB experienced a Distress Event when it was assigned in writing a composite regulatory CAMELS Rating of 4.[34]  *See* 12 C.F.R. § 359.1(f)(1)(ii)(C)-(D).

259.     Shortly thereafter, on September 25, 2008, WMB experienced another Distress Event when, by order number 2008-36, the OTS seized WMB and appointed the FDIC Receiver as receiver for WMB.  *See* 12 C.F.R. § 359.1(f)(1)(ii)(B).  Immediately after its appointment, the FDIC Receiver sold substantially all of the assets of WMB to JPMC pursuant to the Purchase and Assumption Agreement.

260.     The following day, on September 26, 2008, each of the Debtors experienced a Distress Event when they filed petitions for relief under chapter 11 of the Bankruptcy Code.  *See* § 359.1(f)(1)(ii)(A).

---

[34] See *supra* at paragraphs 161-62.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

261.    As defined by the Golden Parachute Regulations, WMB was an insured depository institution, and WMI was its affiliated depository institution holding company at the time the Individual Defendant's claims are alleged to have arisen.  *See* 12 C.F.R. §§ 359.1(b), 359.1(g).  Accordingly, WMI and WMILT, as successor in interest thereto, are subject to the restrictions of the Golden Parachute Regulations.  Specifically, any payment made by WMILT pursuant to the Confidential Executive Separation Agreement to the Individual Defendant named in Count VIII would constitute a payment in the nature of compensation by an insured depository institution and/or an affiliated depository institution holding company.  *See* FDIC Determination (a copy of which is annexed as **Exhibit B**).

262.    The Individual Defendant named in Count VIII is a former employee and/or officer of WMB.  Thus, the Individual Defendant named in Count VIII is an IAP within the meaning of 12 C.F.R. § 359.1(h).  *See* 12 C.F.R. § 359.1(h).  Therefore, any payments made by WMILT to the Individual Defendant pursuant to the Confidential Executive Separation Agreement would be for the benefit of a former IAP.

263.    By the terms of the Confidential Executive Separation Agreement, payment pursuant to such agreement is contingent on and/or payable on or after the termination of the respective Individual Defendant's primary employment with WMB.

264.    In their Employee Claims, the Individual Defendants have alleged that they were terminated as a result of one or more of the Distress Events.  In fact, each of the Individual Defendants' employment relationship or affiliation with WMI or WMB, as applicable, was terminated in connection with, and at a time when the applicable entity satisfied one or more of the Distress Events.  Thus, any payment made pursuant to the Confidential Executive Separation Agreement would necessarily be received on or after a Distress Event, including, but not limited to, the Bank Seizure and WMI's bankruptcy petition.

AMENDED COMPLAINT                    85

265.    Declaratory relief is necessary because, although the FDIC has indicated in the FDIC Determination that the Golden Parachute Regulations apply to certain agreements and plans at issue and WMILT has asserted the defense of the Golden Parachute Regulation, certain Individual Defendants disagree and claim that the Golden Parachute Regulations do not apply.  Moreover, as the FDIC has made clear, any entity that makes payments pursuant to any of the agreements or plans at issue without prior regulatory approval may be subject to civil money penalties.

266.    WMILT requests a declaratory judgment that:

(a)    any payments made by WMILT to the above-named Individual Defendant pursuant to the Confidential Executive Separation Agreement are subject to the Golden Parachute Regulations;

(b)    WMILT is prohibited from making such payments absent regulatory approval from the FDIC and FRB; and

(c)    the Individual Defendant is prohibited from receiving such payments from WMILT absent regulatory approval from the FDIC and FRB.

## <u>COUNT IX</u>

*(As to Defendants: the FDIC, the FRB, Mary Beth Davis, Michele S. Grau-Iversen, Robert C. Hill, Laura C. Rogers Rodrigues, Luis P. Rodriguez, Richard Strauch, David A. Tomlinson, and Stephen E. Whittaker)*

**Declaratory Judgment that Any Payments Made by WMILT to Individual Defendants Pursuant to the Providian Agreements Are Subject to the Golden Parachute Regulations**

267.    Plaintiff, WMILT, incorporates by reference the allegations of paragraphs 1 through 178 of the Complaint as if set forth herein.

268.    An actual controversy exists between the parties as any payments made pursuant to the Providian Agreements are subject to the Golden Parachute Regulations and WMILT is prohibited from making such payments without prior regulatory approval; yet, certain Individual Defendants with Providian Agreements have disputed the applicability

AMENDED COMPLAINT                    86

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

of the Golden Parachute Regulations and continue to seek payments pursuant to the Providian Agreements in Bankruptcy Court.

269.     On or around September 18, 2008, WMB experienced a Distress Event when it was assigned in writing a composite regulatory CAMELS Rating of 4.[35]  *See* 12 C.F.R. § 359.1(f)(1)(ii)(C)-(D).

270.     Shortly thereafter, on September 25, 2008, WMB experienced another Distress Event when, by order number 2008-36, the OTS seized WMB and appointed the FDIC Receiver as receiver for WMB.  *See* 12 C.F.R. § 359.1(f)(1)(ii)(B).  Immediately after its appointment, the FDIC Receiver sold substantially all of the assets of WMB to JPMC pursuant to the Purchase and Assumption Agreement.

271.     The following day, on September 26, 2008, each of the Debtors experienced a Distress Event when they filed petitions for relief under chapter 11 of the Bankruptcy Code.  *See* § 359.1(f)(1)(ii)(A).

272.     As defined by the Golden Parachute Regulations, WMB was an insured depository institution, and WMI was its affiliated depository institution holding company at the time the Individual Defendants' claims are alleged to have arisen.  *See* 12 C.F.R. §§ 359.1(b), 359.1(g).  Accordingly, WMI and WMILT, as successor in interest thereto, are subject to the restrictions of the Golden Parachute Regulations.  Specifically, any payment made by WMILT pursuant to the various Providian Agreements to any Individual Defendant named in Count IX would constitute a payment in the nature of compensation by an insured depository institution and/or an affiliated depository institution holding company. *See* FDIC Determination (a copy of which is annexed as **Exhibit B**).

273.     Each Individual Defendant named in Count IX is a former employee and/or officer of WMB or WMI, as applicable.  Thus, each Individual Defendant named in

---

[35] See *supra* at paragraphs 161-62.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

Count IX is an IAP within the meaning of 12 C.F.R. § 359.1(h). *See* 12 C.F.R. § 359.1(h). Therefore, any payments made by WMILT to the Individual Defendants pursuant to the Providian Agreements would be for the benefit of a former IAP.

274.    By the terms of the Providian Agreements, payment pursuant to such agreements is contingent on and/or payable on or after the termination of each respective Individual Defendant's primary employment with WMB and/or WMI, as applicable.

275.    In their Employee Claims, the Individual Defendants have alleged that they were terminated as a result of one or more of the Distress Events. In fact, each of the Individual Defendants' employment relationship or affiliation with WMI or WMB, as applicable, was terminated in connection with, and at a time when the applicable entity satisfied one or more of the Distress Events. Thus, any payment made pursuant to the Providian Agreements would necessarily be received on or after a Distress Event, including, but not limited to, the Bank Seizure and WMI's bankruptcy petition.

276.    Declaratory relief is necessary because, although the FDIC has indicated in the FDIC Determination that the Golden Parachute Regulations apply to certain agreements and plans at issue and WMILT has asserted the defense of the Golden Parachute Regulation, certain Individual Defendants disagree and claim that the Golden Parachute Regulations do not apply. Moreover, as the FDIC has made clear, any entity that makes payments pursuant to any of the agreements or plans at issue without prior regulatory approval may be subject to civil money penalties.

277.    WMILT requests a declaratory judgment that:

(a)    any payments made by WMILT to the above-named Individual Defendants pursuant to the Providian Agreements are subject to the Golden Parachute Regulations;

(b)    WMILT is prohibited from making such payments absent regulatory approval from the FDIC and FRB; and

(c)    The Individual Defendants are prohibited receiving such payments from WMILT absent regulatory approval from the FDIC and FRB.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

## COUNT X

*(As to Defendants: the FDIC, the FRB, and Stephen J. Rotella)*

**Declaratory Judgment that Any Payments Made by WMILT to Individual Defendant Stephen J. Rotella Pursuant to the Rotella CIC Agreement on Account of Alternate or Contingent Claims Are Subject to the Golden Parachute Regulations**

278.    Plaintiff, WMILT, incorporates by reference the allegations of paragraphs 1 through 178 of the Complaint as if set forth herein.

279.    An actual controversy exists between the parties as the FDIC has determined that any payments made pursuant to the WMB CIC Agreements are subject to the Golden Parachute Regulations and that WMILT is prohibited from making such payments without prior regulatory approval; yet, Defendant Rotella continues to seek payments pursuant to the Rotella CIC Agreement in Bankruptcy Court.[36]

280.    On or around September 18, 2008, WMB experienced a Distress Event when it was assigned in writing a composite regulatory CAMELS Rating of 4.[37]  *See* 12 C.F.R. § 359.1(f)(1)(ii)(C)-(D).

281.    Shortly thereafter, on September 25, 2008, WMB experienced another Distress Event when, by order number 2008-36, the OTS seized WMB and appointed the FDIC Receiver as receiver for WMB.  *See* 12 C.F.R. § 359.1(f)(1)(ii)(B).  Immediately after its appointment, the FDIC Receiver sold substantially all of the assets of WMB to JPMC pursuant to the Purchase and Assumption Agreement.

282.    The following day, on September 26, 2008, each of the Debtors experienced a Distress Event when they filed petitions for relief under chapter 11 of the Bankruptcy Code.  *See* § 359.1(f)(1)(ii)(A).

---

[36] The Rotella CIC Agreement contains the same definition of "change in control" as contained in the WMB CIC Agreements and is otherwise substantively similar in all relevant respects.

[37] See *supra* at paragraphs 161-62.

AMENDED COMPLAINT                    89

283.     As defined by the Golden Parachute Regulations, WMB was an insured depository institution, and WMI was its affiliated depository institution holding company at the time Defendant Rotella's claims is alleged to have arisen.  *See* 12 C.F.R. §§ 359.1(b), 359.1(g).  Accordingly, WMI and WMILT, as successor in interest thereto, are subject to the restrictions of the Golden Parachute Regulations.  Specifically, any payment made by WMILT pursuant to the Rotella CIC Agreement to Defendant Rotella would constitute a payment in the nature of compensation by an insured depository institution and/or an affiliated depository institution holding company.  *See* FDIC Determination (a copy of which is annexed as **Exhibit B**).

284.     Defendant Rotella is a former employee and officer of WMB.  Thus, Defendant Rotella is an IAP within the meaning of 12 C.F.R. § 359.1(h).  *See* 12 C.F.R. § 359.1(h).  Therefore, any payments made by WMILT to Defendant Rotella pursuant to the Rotella CIC Agreement would be for the benefit of a former IAP.

285.     By the terms of the Rotella CIC Agreement, payment pursuant to such agreement is contingent on and/or payable on or after the termination of Defendant Rotella's primary employment with WMI.

286.     Defendant Rotella has alleged that he was terminated in connection with one or more of the Distress Events.   In fact, Defendant Rotella's employment relationship or affiliation with WMI or WMB, as applicable, was terminated in connection with, and at a time when the applicable entity satisfied one or more of the Distress Events.  Thus, any payment made pursuant to the Rotella CIC Agreement would necessarily be received on or after a Distress Event, including, but not limited to, the Bank Seizure and WMI's bankruptcy petition.

287.     Declaratory relief is necessary because, although the FDIC has indicated in the FDIC Determination that the Golden Parachute Regulations apply to certain agreements and plans at issue and WMILT has asserted the defense of the Golden Parachute

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

Regulation, certain Individual Defendants disagree and claim that the Golden Parachute Regulations do not apply. Moreover, as the FDIC has made clear, any entity that makes payments pursuant to any of the agreements or plans at issue without prior regulatory approval may be subject to civil money penalties.

288.   WMILT requests a declaratory judgment that:

(a)   any payments made by WMILT to the above-named Individual Defendant pursuant to the Rotella CIC Agreement are subject to the Golden Parachute Regulations;

(b)   WMILT is prohibited from making such payments absent regulatory approval from the FDIC and FRB; and

(c)   Defendant Rotella is prohibited from receiving such payments from WMILT absent regulatory approval from the FDIC and FRB.

## COUNT XI

*(As to Defendants: the FDIC, the FRB, and Gary P. Brady)*

**Declaratory Judgment that Any Payments Made by WMILT to Individual Defendant Gary P. Brady Pursuant to the Change in Control Terms of the Deferred Signing Bonus Within the Brady Offer Letter Are Subject to the Golden Parachute Regulations**

289.   Plaintiff, WMILT, incorporates by reference the allegations of paragraphs 1 through 178 of the Complaint as if set forth herein.

290.   An actual controversy exists between the parties as the FDIC has determined that any payments made pursuant to the WMB CIC Agreements are subject to the Golden Parachute Regulations and that WMILT is prohibited from making such payments without prior regulatory approval. Yet, Defendant Brady continues to seek payments pursuant to the Brady Offer Letter, which incorporates the prohibited WMB CIC Agreement language, in Bankruptcy Court.[38]

---

[38] The Brady Offer Letter explicitly incorporates the same definition of "change in control" as contained in the WMB CIC Agreements.

AMENDED COMPLAINT                        91

291.     On or around September 18, 2008, WMB experienced a Distress Event when it was assigned in writing a composite regulatory CAMELS Rating of 4.[39]  *See* 12 C.F.R. § 359.1(f)(1)(ii)(C)-(D).

292.     Shortly thereafter, on September 25, 2008, WMB experienced another Distress Event when, by order number 2008-36, the OTS seized WMB and appointed the FDIC Receiver as receiver for WMB.  *See* 12 C.F.R. § 359.1(f)(1)(ii)(B).  Immediately after its appointment, the FDIC Receiver sold substantially all of the assets of WMB to JPMC pursuant to the Purchase and Assumption Agreement.

293.     The following day, on September 26, 2008, each of the Debtors experienced a Distress Event when they filed petitions for relief under chapter 11 of the Bankruptcy Code.  *See* § 359.1(f)(1)(ii)(A).

294.     As defined by the Golden Parachute Regulations, WMB was an insured depository institution, and WMI was its affiliated depository institution holding company at the time Defendant Brady's claims is alleged to have arisen.  *See* 12 C.F.R. §§ 359.1(b), 359.1(g).  Accordingly, WMI and WMILT, as successor in interest thereto, are subject to the restrictions of the Golden Parachute Regulations.  Specifically, any payment made by WMILT pursuant to the Brady Offer Letter to Defendant Brady would constitute a payment in the nature of compensation by an insured depository institution and/or an affiliated depository institution holding company.  *See* FDIC Determination (a copy of which is annexed as **Exhibit B**).

295.     Defendant Brady is a former employee of WMB.  Thus, Defendant Brady is an IAP within the meaning of 12 C.F.R. § 359.1(h).  *See* 12 C.F.R. § 359.1(h).  Therefore, any payments made by WMILT to Defendant Brady pursuant to the Brady Offer Letter would be for the benefit of a former IAP.

---

[39] See *supra* at paragraphs 161-62.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

296.     By the terms of the Brady Offer Letter, payment pursuant to such agreement is contingent on and/or payable on or after the termination of Defendant Brady's primary employment with WMB.

297.     Defendant Brady has alleged that he was terminated in connection with one or more of the Distress Events.  In fact, Defendant Brady's employment relationship or affiliation with WMI or WMB, as applicable, was terminated in connection with, and at a time when the applicable entity satisfied one or more of the Distress Events.  Thus, any payment made pursuant to the Brady Offer Letter would necessarily be received on or after a Distress Event, including, but not limited to, the Bank Seizure and WMI's bankruptcy petition.

298.     Declaratory relief is necessary because, although the FDIC has indicated in the FDIC Determination that the Golden Parachute Regulations apply to certain agreements and plans at issue and WMILT has asserted the defense of the Golden Parachute Regulation, certain Individual Defendants disagree and claim that the Golden Parachute Regulations do not apply.  Moreover, as the FDIC has made clear, any entity that makes payments pursuant to any of the agreements or plans at issue without prior regulatory approval may be subject to civil money penalties.

299.     WMILT requests a declaratory judgment that:

(a)     any payments made by WMILT to the above-named Individual Defendant pursuant to the Brady Offer Letter are subject to the Golden Parachute Regulations;

(b)     WMILT is prohibited from making such payments absent regulatory approval from the FDIC and FRB; and

(c)     Defendant Brady is prohibited from receiving such payments from WMILT absent regulatory approval from the FDIC and FRB.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

## COUNT XII

*(As to Defendants: the FDIC, the FRB, Susan C. Allison, Edward F. Bach, Melba Ann Bartels, Robert N. Batt, Sean Becketti, Henry J. Berens, Bruce W. Bivert, Anthony Joseph Bozzuti, Curt Brouwer, John M. Browning, Gregory G. Camas, Kimberly A. Cannon, Gregory Alan Carlisle, Gennadiy Darakhovskiy, Mary Beth Davis, Andrew J. Eschenbach, William Finzer, Stephen Fortunato, Brian T. Foster, Keith O. Fukui, Matthew Gaspard, Michele S. Grau-Iversen, Robert C. Hill, Jeffrey Jones, Rajiv Kapoor, Kenneth E. Kido, Suzanne R. Lehrberger, Ronald M. Lowery, Marc Malone, Michelle McCarthy, Randy Melby, Rachelle M. Mileur, Thomas E. Morgan, John H. Murphy, Michael Reynoldson, Laura C. Rogers Rodrigues, Luis P. Rodriguez, Janquelin F. Schrag, Patricia Schulte, Chandan Sharma, Genevieve Smith, Jacob E. Sorenson, Steven Kenneth Stearns, Mitchell Stevens, Richard Strauch, Jane Suchan, Andrew Tauber, Radha Thompson, Ann Tierney, David A. Tomlinson, Bruce Weber, Jeffrey P. Weinstein, Stephen E. Whittaker, and Michael R. Zarro)*

## Declaratory Judgment that the WMB CIC Agreement was Automatically Terminated Pursuant to 12 C.F.R. § 163.39

300.    Plaintiff, WMILT, incorporates by reference the allegations of paragraphs 1 through 178 of the Complaint as if set forth herein.

301.    An actual controversy exists between WMILT and the Individual Defendants listed in Count XII as the United States Court of Appeals for the Ninth Circuit and the FDIC have already determined that the WMB CIC Agreements automatically terminated on September 25, 2008 as a result of the Bank Seizure; yet, the above-named Individual Defendants continue to maintain that WMILT is liable for the obligations thereunder.

302.    WMB was a federal savings association chartered pursuant to the Home Owners' Loan Act, 12 U.S.C. §§ 1461-70, and as such, was subject to the regulations issued thereunder, including 12 C.F.R. § 163.39.

303.    The Individual Defendants named in Count XII are former employees of WMB and each entered into a WMB CIC Agreement.

304.    The WMB CIC Agreements set forth the material terms and conditions of each Individual Defendants' employment, and therefore, are employment contracts for the

AMENDED COMPLAINT                    94

purposes of 12 C.F.R. § 163.39(b), as that term is defined in the OTS Examination Handbook, § 310.44.

305.    On September 25, 2008, by order number 2008-36, the director of the OTS determined, among other things, that WMB was "in an unsafe or unsound condition to transact business" and accordingly appointed the FDIC Receiver as receiver for WMB. As a result of the Bank Seizure on September 25, 2008, WMB was in default, as that term is defined in section 3(x)(1) of the FDIA.

306.    As a result of the default, the WMB CIC Agreements entered into between WMB and the Individual Defendants listed in Count XII automatically terminated on September 25, 2008.

307.    WMILT requests a declaratory judgment that:

(a)    the WMB CIC Agreements automatically terminated on September 25, 2008; and

(b)    WMILT is not liable for any obligations arising thereunder.

## COUNT XIII

*(As to Defendants: the FDIC, the FRB, Edward F. Bach, Melba Ann Bartels, Henry J. Berens, Bruce W. Bivert, Robert C. Bjorklund, Anthony Joseph Bozzuti, Carey M. Brennan, Curt Brouwer, Kimberly A. Cannon, Mary Beth Davis, Jake D. Domer, William Finzer, Brian T. Foster, Peter Freilinger, Michele S. Grau-Iversen, Robert C. Hill, Jeffrey Jones, Kenneth E. Kido, Michelle McCarthy, Susan McCarthy, Rachelle M. Mileur, Thomas E. Morgan, Casey Nault, Michael Reynoldson, Patricia Roberts, Chandan Sharma, Genevieve Smith, Jacob E. Sorenson, Steven F. Stein, Richard Strauch, Jane Suchan, David A. Tomlinson, Bruce Weber, Jeffrey P. Weinstein, Stephen E. Whittaker, John F. Woods, Weijia Wu, and Michael R. Zarro)*

**Declaratory Judgment that the WMB Retention Bonus Agreements Were Automatically Terminated Pursuant to 12 C.F.R. § 163.39**

308.    Plaintiff, WMILT, incorporates by reference the allegations of paragraphs 1 through 178 of the Complaint as if set forth herein.

309.    An actual controversy exists between WMILT and the Individual Defendants listed in Count XIII as the United States Court of Appeals for the Ninth Circuit

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

1   and the FDIC have already determined that the WMB Retention Bonus Agreements

2   automatically terminated on September 25, 2008 as a result of the Bank Seizure; yet, the

3   above-named Individual Defendants continue to maintain that WMILT is liable for the

4   obligations thereunder.

5           310.    WMB was a federal savings association chartered pursuant to the

6   Home Owners' Loan Act, 12 U.S.C. §§ 1461-70, and as such, was subject to the regulations

7   issued thereunder, including 12 C.F.R. § 163.39.

8           311.    The Individual Defendants named in Count XIII are former employees

9   of WMB and each entered into a WMB Retention Bonus Agreement.

10          312.    Each WMB Retention Bonus Agreement sets forth the material terms

11  and conditions of each Individual Defendants' employment, and therefore, are employment

12  contracts for the purposes of 12 C.F.R. § 163.39(b), as that term is defined in the OTS

13  Examination Handbook, § 310.44.

14          313.    On September 25, 2008, by order number 2008-36, the director of the

15  OTS determined, among other things, that WMB was "in an unsafe or unsound condition to

16  transact business" and accordingly appointed the FDIC Receiver as receiver for WMB.  As a

17  result of the Bank Seizure on September 25, 2008, WMB was in default, as that term is

18  defined in section 3(x)(1) of the FDIA.

19          314.    As a result of the default, the WMB Retention Bonus Agreements

20  entered into between WMB and the Individual Defendants listed in Count XIII automatically

21  terminated on September 25, 2008.

22          315.    WMILT requests a declaratory judgment that:

23          (a)     the WMB Retention Bonus Agreements automatically
                    terminated on September 25, 2008; and
24          (b)     WMILT is not liable for any obligations arising thereunder.

25

26

AMENDED COMPLAINT                              96

## COUNT XIV

*(As to Defendants: the FDIC, the FRB, Susan C. Allison, Sean Becketti, Henry J. Berens, Robert C. Bjorklund, Anthony Joseph Bozzuti, Gary P. Brady, Kimberly A. Cannon, Mary Beth Davis, Duane Duck, Camille Everett, Michele S Grau-Iversen, Robert C. Hill, Rajiv Kapoor, Marc Malone, Thomas E. Morgan, John H. Murphy, Casey Nault, Michael Reynoldson, Laura C. Rogers Rodrigues, Luis P. Rodriguez, Chandan Sharma, Scott Shaw, Genevieve Smith, Richard Strauch, Radha Thompson, Ann Tierney, David A. Tomlinson, Stephen E. Whittaker, Weijia Wu, and Michael R. Zarro)*

**Declaratory Judgment that the WaMu Severance Plan was Automatically Terminated Pursuant to 12 C.F.R. § 163.39**

316. Plaintiff, WMILT, incorporates by reference the allegations of paragraphs 1 through 178 of the Complaint as if set forth herein.

317. An actual controversy exists between WMILT and the Individual Defendants listed in Count XIV as the United States Court of Appeals for the Ninth Circuit and the FDIC have already determined that the WaMu Severance Plan automatically terminated on September 25, 2008 as a result of the Bank Seizure; yet, the above-named Individual Defendants continue to maintain that WMILT is liable for the obligations thereunder.

318. WMB was a federal savings association chartered pursuant to the Home Owners' Loan Act, 12 U.S.C. §§ 1461-70, and as such, was subject to the regulations issued thereunder, including 12 C.F.R. § 163.39.

319. The Individual Defendants named in Count XIV are former employees of WMB and each entered into a WaMu Severance Plan.

320. The WaMu Severance Plan sets forth the material terms and conditions of each Individual Defendants' employment, and therefore, are employment contracts for the purposes of 12 C.F.R. § 163.39(b), as that term is defined in the OTS Examination Handbook, § 310.44.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA 98101
Tel. 206-516-3880

321.     On September 25, 2008, by order number 2008-36, the director of the OTS determined, among other things, that WMB was "in an unsafe or unsound condition to transact business" and accordingly appointed the FDIC Receiver as receiver for WMB.  As a result of the Bank Seizure on September 25, 2008, WMB was in default, as that term is defined in section 3(x)(1) of the FDIA.

322.     As a result of the default, the WaMu Severance Plan entered into between WMB and the Individual Defendants listed in Count XIV automatically terminated on September 25, 2008.

323.     WMILT requests a declaratory judgment that:

(a)     the WaMu Severance Plan automatically terminated on September 25, 2008; and

(b)     WMILT is not liable for any obligations arising thereunder.

## COUNT XV

*(As to Defendants: the FDIC, the FRB, Robert C. Boxberger, Mary Beth Davis, Michele S. Grau-Iversen, Robert C. Hill, Robert G. Merritt, Michael Rapaport, Laura C. Rogers Rodrigues, Luis P. Rodriguez, Daniel Shanks, Richard Strauch, Jose O. N. Tagunicar, David A. Tomlinson, John Webber, Stephen E. Whittaker, and Kathy H. Yeu)*

**Declaratory Judgment that the Providian Agreements Were Automatically Terminated Pursuant to 12 C.F.R. § 163.39**

324.     Plaintiff, WMILT, incorporates by reference the allegations of paragraphs 1 through 178 of the Complaint as if set forth herein.

325.     An actual controversy exists between WMILT and the Individual Defendants listed in Count XV as the Providian Agreements automatically terminated on September 25, 2008 as a result of the Bank Seizure; yet, the above-named Individual Defendants continue to maintain that WMILT is liable for the obligations thereunder.

326.     WMB was a federal savings association chartered pursuant to the Home Owners' Loan Act, 12 U.S.C. §§ 1461-70, and as such, was subject to the regulations issued thereunder, including 12 C.F.R. § 163.39.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

327.    The Individual Defendants named in Count XV are former employees of WMB and each entered into a Providian Agreement.

328.    The Providian Agreements set forth the material terms and conditions of each Individual Defendants' employment, and therefore, are employment contracts for the purposes of 12 C.F.R. § 163.39(b), as that term is defined in the OTS Examination Handbook, § 310.44.

329.    On September 25, 2008, by order number 2008-36, the director of the OTS determined, among other things, that WMB was "in an unsafe or unsound condition to transact business" and accordingly appointed the FDIC Receiver as receiver for WMB.  As a result of the Bank Seizure on September 25, 2008, WMB was in default, as that term is defined in section 3(x)(1) of the FDIA.

330.    As a result of the default, the Providian Agreements entered into between WMB and the Individual Defendants listed in Count XV automatically terminated on September 25, 2008.

331.    WMILT requests a declaratory judgment that:

(a)    the Providian Agreements automatically terminated on September 25, 2008; and

(b)    WMILT is not liable for any obligations arising thereunder.

## COUNT XVI

*(As to Defendants: the FDIC, the FRB, and Gary P. Brady)*

**Declaratory Judgment that the Deferred Signing Bonus Automatically Terminated Pursuant to 12 C.F.R. § 163.39**

332.    Plaintiff, WMILT, incorporates by reference the allegations of paragraphs 1 through 178 of the Complaint as if set forth herein.

333.    An actual controversy exists between WMILT and the Individual Defendant listed in Count XVI as the deferred signing bonus within the Brady Offer Letter

AMENDED COMPLAINT                           99

Case 1:14-cv-01097-GMS   Document 33   Filed 05/29/15   Page 100 of 108 PageID #:
Case 2:13-cv-01706-RAJ   Document 23   Filed 11/05/13   Page 100 of 103
446

automatically terminated on September 25, 2008 as a result of the Bank Seizure.  Yet, the above-named Individual Defendant continues to maintain that WMILT is liable for the obligations thereunder.

334.    WMB was a federal savings association chartered pursuant to the Home Owners' Loan Act, 12 U.S.C. §§ 1461-70, and as such, was subject to the regulations issued thereunder, including 12 C.F.R. § 163.39.

335.    The Individual Defendant named in Count XVI is a former employee of WMB and entered into an employment agreement.

336.    The Brady Offer Letter sets forth the material terms and conditions of the Individual Defendant's employment, and therefore, is an employment contract for the purposes of 12 C.F.R. § 163.39(b), as that term is defined in the OTS Examination Handbook, § 310.44.

337.    On September 25, 2008, by order number 2008-36, the director of the OTS determined, among other things, that WMB was "in an unsafe or unsound condition to transact business" and accordingly appointed the FDIC Receiver as receiver for WMB.  As a result of the Bank Seizure on September 25, 2008, WMB was in default, as that term is defined in section 3(x)(1) of the FDIA.

338.    As a result of the default, the WMB CIC Agreements entered into between WMB and the Individual Defendant listed in Count XVI automatically terminated on September 25, 2008.

339.    WMILT requests a declaratory judgment that:

(a)     the deferred signing bonus within the Brady Offer Letter automatically terminated on September 25, 2008; and

(b)     WMILT is not liable for any obligations arising thereunder.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

Case 1:14-cv-01097-GMS  Document 33  Filed 05/29/15  Page 101 of 108 PageID #:
Case 2:13-cv-00706-RAJ  Document 23  Filed 11/05/13  Page 101 of 103
447

# COUNT XVII

*(As to Defendants: the FDIC, the FRB Robert N. Batt, Sean Becketti, Mary Beth Davis, Brian T. Foster, Keith O. Fukui, Michelle S. Grau-Iversen, Robert C. Hill, Rajiv Kapoor, Kenneth E. Kido, Ronald M. Lowery, Randy Melby, Michelle McCarthy, John H. Murphy, Janquelin F. Schrag, Jacob E. Sorensen, Mitchell Stevens, Jane Suchan, Andrew Tauber, Radha Thompson, Ann Tierney, Bruce Weber, Jeffrey P. Weinstein, and Stephen E. Whittaker)*

**Declaratory Judgment that the Individual Defendants Listed in Count XV Are Barred by the Doctrines of *Res Judicata* and Collateral Estoppel from Asserting Claims Based on the WMB CIC Agreement Against WMILT**

340.    Plaintiff, WMILT, incorporates by reference the allegations of paragraphs 1 through 178 of the Complaint as if set forth herein.

341.    An actual controversy exists between WMILT and the Individual Defendants listed in Count XVII as the United States Court of Appeals for the Ninth Circuit has already determined that the WMB CIC Agreement automatically terminated on September 25, 2008 as a result of the Bank Seizure; yet, the above named Individual Defendants continue to maintain that WMILT is liable for the obligations thereunder.

342.    The Individual Defendants named in Count XVII filed administrative claims with the FDIC Receiver seeking payments allegedly owed under the WMB CIC Agreement.   After the FDIC Receiver denied the administrative claims, the Individual Defendants named in Count XVII appealed to the Western District of Washington (the "Williams Action").  *See Williams v. FDIC*, No. 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011), *aff'd*, 492 Fed. App'x. 796 (9th Cir. 2012).  The FDIC Receiver filed a motion to dismiss the Williams Action by asserting that the "Automatic Termination Regulation" rendered the various employment contracts unenforceable against the FDIC Receiver.

343.    On August 30, 2011, the Western District Court of Washington granted the FDIC Receiver's motion to dismiss, and the decision was upheld on appeal to the United States Court of Appeals for the Ninth Circuit.  *See Williams* 492 Fed. App'x. 796.

AMENDED COMPLAINT                        101

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

344. The Individual Defendants named in Count XVII had a full and fair opportunity in the Williams Action to litigate the issue of whether the WMB CIC Agreement automatically terminated pursuant to 12 C.F.R. § 163.39.

345. The issue of whether the WMB CIC Agreement automatically terminated pursuant to 12 C.F.R. § 163.39 was actually litigated in the Williams Action.

346. The Individual Defendants named in Count XVII lost the issue as a result of a final judgment in the Williams Action.

347. The Individual Defendants named in Count XVII was a party in the Williams Action.

348. WMILT requests a declaratory judgment that:

    (a)    the above-named Individual Defendants are barred by the doctrines of *res judicata* and collateral estoppel from asserting claims based on the WMB CIC Agreement against WMILT; and

    (b)    WMILT is not liable for any obligations arising thereunder.

## COUNT XVIII

*(As to Defendants: the FDIC, the FRB, Sean Becketti, Robert C. Bjorklund, Mary Beth Davis, Camille Everett, Michelle S. Grau-Iversen, Robert C. Hill, Rajiv Kapoor, John H. Murphy, Scott Shaw, Radha Thompson, Ann Tierney, and Stephen E. Whittaker)*

**Declaratory Judgment that the Individual Defendants Listed in Count XVI Are Barred by the Doctrines of *Res Judicata* and Collateral Estoppel from Asserting Claims Based on the WaMu Severance Plan Against WMILT**

349. Plaintiff, WMILT, incorporates by reference the allegations of paragraphs 1 through 178 of the Complaint as if set forth herein.

350. An actual controversy exists between WMILT and the Individual Defendants listed in Count XVIII as the United States Court of Appeals for the Ninth Circuit has already determined that the WaMu Severance Plan automatically terminated on September 25, 2008 as a result of the Bank Seizure; yet, the above-named Individual Defendants continue to maintain that WMILT is liable for the obligations thereunder.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA 98101
Tel. 206-516-3880

Case 1:14-cv-01097-GMS  Document 23  Filed 05/29/15  Page 103 of 108 PageID #:
Case 2:13-cv-01706-RAJ  Document 25  Filed 11/05/13  Page 103 of 103
449

351.   The Individual Defendants named in Count XVIII filed administrative claims with the FDIC Receiver seeking payments allegedly owed under the WaMu Severance Plan.  After the FDIC Receiver denied the administrative claims, the Individual Defendants named in Count XVIII appealed to the Western District of Washington.  *See Williams v. FDIC*, 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011), *aff'd*, 492 Fed. App'x. 796 (9th Cir. 2012).  The FDIC Receiver filed a motion to dismiss the Williams Action by asserting that the "Automatic Termination Regulation" rendered the various employment contracts unenforceable against the FDIC Receiver.

352.   On August 30, 2011, the Western District Court of Washington granted the FDIC Receiver's motion to dismiss, and the decision was upheld on appeal to the United States Court of Appeals for the Ninth Circuit.  *See Williams*, 492 Fed. App'x. 796.

353.   The Individual Defendants named in Count XVIII had a full and fair opportunity to litigate the issue of whether the WaMu Severance Plan automatically terminated pursuant to 12 C.F.R. § 163.39 in the Williams Action.

354.   The issue of whether the WaMu Severance Plan automatically terminated pursuant to 12 C.F.R. § 163.39 was actually litigated in the Williams Action.

355.   The Individual Defendants named in Count XVIII lost the issue as a result of a final judgment in the Williams Action.

356.   The Individual Defendants named in Count XVIII was a party in the Williams Action.

357.   WMILT requests a declaratory judgment that:

(a)   the above-named Individual Defendants are barred by the doctrines of *res judicata* and collateral estoppel from asserting claims based on the WaMu Severance Plan against WMILT; and

(b)   WMILT is not liable for any obligations arising thereunder.

AMENDED COMPLAINT                    103

Case 1:14-cv-01097-GMS Document 33 Filed 05/29/15 Page 104 of 108 PageID #:
450
Case 2:13-cv-00706-RAJ Document 234 Filed 11/05/13 Page 104 of 103

## COUNT XIX

*(As to Defendants: the FDIC, the FRB, Robert C. Bjorklund, Mary Beth Davis, Jake D. Domer, Brian T. Foster, Peter Freilinger, Michelle S. Grau-Iversen, Robert C. Hill, Kenneth E. Kido, Michelle McCarthy, Jacob E. Sorensen, Jane Suchan, Bruce Weber, Jeffrey P. Weinstein, and Stephen E. Whittaker)*

**Declaratory Judgment that the Individual Defendants Listed in Count XVII Are Barred by the Doctrines of *Res Judicata* and Collateral Estoppel from Asserting Claims Based on the WMB Retention Bonus Agreement Against WMILT**

358.    Plaintiff, WMILT, incorporates by reference the allegations of paragraphs 1 through 178 of the Complaint as if set forth herein.

359.    An actual controversy exists between WMILT and the Individual Defendants listed in Count XIX as the United States Court of Appeals for the Ninth Circuit has already determined that the WMB Retention Bonus Agreement automatically terminated on September 25, 2008 as a result of the Bank Seizure; yet, the above-named Individual Defendants continue to maintain that WMILT is liable for the obligations thereunder.

360.    The Individual Defendants named in Count XIX filed administrative claims with the FDIC Receiver seeking payments allegedly owed under the WMB Retention Bonus Agreement.  After the FDIC Receiver denied the administrative claims, the Individual Defendants named in Count XIX appealed to the Western District of Washington.  *See Williams v. FDIC*, 09-504 (RAJ) (W.D. Wash. Aug. 30, 2011), *aff'd*, 492 Fed. App'x. 796 (9th Cir. 2012).  The FDIC Receiver filed a motion to dismiss the Williams Action by asserting that the "Automatic Termination Regulation" rendered the various employment contracts unenforceable against the FDIC Receiver.

361.    On August 30, 2011, the Western District Court of Washington granted the FDIC Receiver's motion to dismiss, and the decision was upheld on appeal to the United States Court of Appeals for the Ninth Circuit.  *See* Williams, 492 Fed. App'x. 796.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

Case 1:14-cv-01097-GMS  Document 33  Filed 05/29/15  Page 105 of 108 PageID #:
Case 2:13-cv-01706-RAJ  Document 23  Filed 11/05/13  Page 105 of 103
451

362.    The Individual Defendants named in Count XIX had a full and fair opportunity to litigate the issue of whether the WMB Retention Bonus Agreement automatically terminated pursuant to 12 C.F.R. § 163.39 in the Williams Action.

363.    The issue of whether the WMB Retention Bonus Agreement automatically terminated pursuant to 12 C.F.R. § 163.39 was actually litigated in the Williams Action.

364.    The Individual Defendants named in Count XIX lost the issue as a result of a final judgment in the Williams Action.

365.    The Individual Defendants named in Count XIX was a party in the Williams Action.

366.    WMILT requests a declaratory judgment that:

(a)    the above-named Individual Defendants are barred by the doctrines of *res judicata* and collateral estoppel from asserting claims based on the WMB Retention Bonus Agreement against WMILT; and

(b)    WMILT is not liable for any obligations arising thereunder.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA  98101
Tel. 206-516-3880

## **PRAYER FOR RELIEF**

Plaintiff respectfully requests the Court to grant the following relief:

1.  An order declaring that the CIC Agreements, and any payments made by WMILT to Individual Defendants pursuant thereto are subject to the Golden Parachute Regulations, and that WMILT is prohibited from making such payments without first obtaining regulatory approval from the FDIC and FRB;

2.  An order declaring that the WaMu Severance Plan, and any payments made by WMILT to Individual Defendants pursuant thereto are subject to the Golden Parachute Regulations, and WMILT is prohibited from making such payments without first obtaining regulatory approval from the FDIC and FRB;

3.  An order declaring that the Retention Bonus Agreements, and any payments made by WMILT to Individual Defendants pursuant thereto are subject to the Golden Parachute Regulations, and WMILT is prohibited from making such payments without first obtaining regulatory approval from the FDIC and FRB;

4.  An order declaring that the Cash Long Term Incentive Agreements, and any payments made by WMILT to Individual Defendants pursuant thereto are subject to the Golden Parachute Regulations, and WMILT is prohibited from making such payments without first obtaining regulatory approval from the FDIC and FRB;

5.  An order declaring that the Equity Incentive Plan, and any payments made by WMILT to Individual Defendants pursuant thereto are subject to the Golden Parachute Regulations, and WMILT is prohibited from making such payments without first obtaining regulatory approval from the FDIC and FRB;

6.  An order declaring that the ETRIP, and any payments made by WMILT to Individual Defendants pursuant thereto are subject to the Golden Parachute Regulations, and WMILT is prohibited from making such payments without first obtaining regulatory approval from the FDIC and FRB;

7.  An order declaring that the WaMu Executive Officer Severance Plan, and any payments made by WMILT to Individual Defendants pursuant thereto are subject to the Golden Parachute Regulations, and WMILT is prohibited from making such payments without first obtaining regulatory approval from the FDIC and FRB;

8.  An order declaring that the Confidential Executive Separation Agreement, and any payments made by WMILT to Individual Defendant John Michael Browning pursuant thereto are subject to the Golden Parachute Regulations, and WMILT is prohibited from making such payments without first obtaining regulatory approval from the FDIC and FRB;

AMENDED COMPLAINT 106

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA 98101
Tel. 206-516-3880

Case 1:14-cv-01097-GMS Document 33 Filed 05/29/15 Page 107 of 108 PageID #:
Case 2:13-cv-00706-RAJ Document 23 Filed 11/05/13 Page 107 of 108
453

9.    An order declaring that the Providian Agreements, and any payments made by WMILT to Individual Defendants pursuant thereto are subject to the Golden Parachute Regulations, and WMILT is prohibited from making such payments without first obtaining regulatory approval from the FDIC and FRB;

10.    An order declaring that the Stephen J. Rotella WMI CIC Agreement, and any payments made by WMILT to Stephen J. Rotella pursuant thereto, including any alternate or contingent claims, are subject to the Golden Parachute Regulations, and WMILT is prohibited from making such payments without first obtaining regulatory approval from the FDIC and FRB;

11.    An order declaring that the deferred signing bonus within the Brady Offer Letter, and any payments made by WMILT to Gary P. Brady pursuant thereto are subject to the Golden Parachute Regulations, and WMILT is prohibited from making such payments without first obtaining regulatory approval from the FDIC and FRB;

12.    An order declaring that the WMB CIC Agreements were automatically terminated on September 25, 2008 by operation of 12 C.F.R. § 163.39;

13.    An order declaring that the WMB Retention Bonus Agreements were automatically terminated on September 25, 2008 by operation of 12 C.F.R. § 163.39;

14.    An order declaring that the WaMu Severance Plan was automatically terminated on September 25, 2008 by operation of 12 C.F.R. § 163.39;

15.    An order declaring that the Providian Agreements were automatically terminated on September 25, 2008 by operation of 12 C.F.R. § 163.39;

16.    An order declaring that the deferred signing bonus within the Brady Offer Letter was automatically terminated on September 25, 2008 by operation of 12 C.F.R. § 163.39;

17.    An order declaring that the Individual Defendants named in Count XIV are barred by the doctrines of *res judicata* and collateral estoppel from asserting claims against WMILT based on the WMB CIC Agreement;

18.    An order declaring that the Individual Defendants named in Count XV are barred by the doctrines of *res judicata* and collateral estoppel from asserting claims against WMILT based on the WaMu Severance Plan;

19.    An order declaring that the Individual Defendants named in Count XVI are barred by the doctrines of *res judicata* and collateral estoppel from asserting claims against WMILT based on the WMB Retention Bonus Agreement; and

20.    Such other relief as the Court deems just and proper.

Susman Godfrey
1201 Third Ave. Suite 3800
Seattle, WA 98101
Tel. 206-516-3880

**WHEREFORE**, Plaintiff, WMILT, prays that the Court enter judgment on behalf of Plaintiff, WMILT, and against Defendants, the FDIC, the FRB and the Individual Defendants, and award Plaintiff, WMILT, all requested relief.

Dated:   Seattle, Washington
         November 5, 2013

By: _/s/ Edgar G. Sargent_____

By: _/s/ Justin A. Nelson_____

Edgar G. Sargent, Esq. #28283
Justin A. Nelson, Esq. #31864
SUSMAN GODFREY
1201 3rd Ave. Suite #3800
Seattle, Washington  98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
E-mail: esargent@susmangodfrey.com
E-mail: jnelson@susmangodfrey.com

– and –

By: _/s/ Brian S. Rosen_____

By: _/s/ John P. Mastando III_____

Brian S. Rosen, Esq. #2011534 (admitted *pro hac vice*)
John P. Mastando III, Esq. #2827483 (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
E-mail: brian.rosen@weil.com
E-mail: john.mastando@weil.com

*Attorneys for Plaintiff WMI Liquidating Trust*

AMENDED COMPLAINT        108