**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| WMI LIQUIDATING TRUST, | |
| Plaintiff, | |
| v. | Civil Action No. 1:14-cv-1097 (GMS) |
| FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, *et al.*, | Re: Docket No. 50 |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF WMI LIQUIDATING
TRUST'S MOTION FOR JUDGMENT ON THE PLEADINGS ON COUNT I OF
<u>CERTAIN EMPLOYEE DEFENDANTS' COUNTERCLAIMS</u>**

RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Marcos A. Ramos (No. 4450)
Amanda R. Steele (No. 5530)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

and

WEIL, GOTSHAL & MANGES LLP
Brian S. Rosen (admitted *pro hac vice*)
John P. Mastando III (admitted *pro hac vice*)
Cheryl A. James (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for Plaintiff WMI Liquidating Trust*

Dated: June 28, 2016

## TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDINGS ................................................................2

    A.    Pending Motions to Dismiss Against the Amended Complaint ............................3

    B.    Counterclaims at Issue in This Motion .................................................................4

    C.    Related Proceedings Under the Administrative Procedure Act..............................5

SUMMARY OF ARGUMENT ...........................................................................................9

STATEMENT OF FACTS .................................................................................................10

    A.    The Debtors' Chapter 11 Filings.........................................................................10

    B.    The Golden Parachute Regulations......................................................................11

    C.    WMILT's Efforts To Resolve The Employee Claims..........................................12

LEGAL STANDARD.........................................................................................................13

ARGUMENT .....................................................................................................................14

I.    PURSUANT TO THE GOVERNING STATUTES AND REGULATIONS, WMILT IS A "COVERED COMPANY" ...........................................................14

    A.    The Plain Meaning of the Golden Parachute Statute Empowers the FDIC to Regulate Post-Petition Entities Such as WMILT .............................................14

    B.    Congress Intended the FDIC to Promulgate Regulations That Apply to Post-Petition Entities Such as WMILT..............................................................15

    C.    A Federal District Court has Already Ruled that WMILT is a Covered Company, Confirmed that the FDIC has Jurisdiction Over WMILT, and Affirmed that WMILT is Prohibited From Making Any Payments to Claimants .............................................................................................................17

CONCLUSION...................................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bogia v. Colvin*,
   No. 13-CV-1793-LPS, 2015 WL 1419118 (D. Del. Mar. 25, 2015) ......................................18

*CityFed Fin. Corp. v. Office of Thrift Supervision*,
   58 F.3d 738 (D.C. Cir. 1995) ....................................................................................... 16-17

*D.C. v. Gallagher*,
   734 A.2d 1087 (D.C. 1999) ...............................................................................................15

*FlatWorld Interactives LLC v. Samsung Elecs. Co.*,
   No. 12-CV-804-LPS, 2014 WL 7464143 (D. Del. Dec. 31, 2014) ........................................18

*Hill v. Commerce Bancorp*,
   No. 09–3685 (RBK), 2012 WL 694639 (D. N.J. Mar. 1 2012), *aff'd sub nom Hill
   v. TD Bank, NA*, 2014 WL 4746238 (3d Cir. Sept. 24, 2014) ...........................................14, 16

*Jablonski v. Pan Am. World Airways, Inc.*,
   863 F.2d 289 (3d Cir. 1988).................................................................................................13

*Magten Asset Mgmt. Corp. v. Paul Hastings Janofsky & Walker LLP*,
   No. CIV.A.04-1256, 2007 WL 129003 (D. Del. Jan. 12, 2007)..............................................13

*In re Netbank, Inc.*,
   No. 07-BK-04295-JAF, 2010 WL 5296952 (Bankr. M.D. Fla. Mar. 11, 2010).....................17

*Shamrock Holdings, Inc. v. Arenson*,
   456 F. Supp. 2d 599 (D. Del. 2006).................................................................................. 13-14

*Square Ring, Inc. v. Doe-1*,
   No. 09-CV-563 (GMS), 2015 WL 307840 (D. Del. Jan. 23, 2015) ......................................18

*In re Washington Mut., Inc.*,
   442 B.R. 314 (Bankr. D. Del. 2011) ...................................................................................15

*WMI Liquidating Trust v. Fed. Deposit Ins. Corp.*,
   110 F. Supp. 3d 44 (D.D.C. 2015) ...................................................................................6, 17

**Statutes and Regulations**

5 U.S.C. §§ 701, *et seq.*............................................................................................................6

11 U.S.C. § 502(b)(7) ...............................................................................................................7, 8

12 U.S.C. § 1813 .................................................................................................................... 9, 15

12 U.S.C. § 1821 .................................................................................................................... 17

12 U.S.C. § 1828(k) ....................................................................................................... *passim*

12 U.S.C. § 1841 .................................................................................................................... 12

12 C.F.R. § 163.39 ................................................................................................................. 12

12 C.F.R. § 359 .............................................................................................................. *passim*

RLF1 14714207V.1

Plaintiff WMI Liquidating Trust ("WMILT" or "Plaintiff"), as a successor in interest to

Washington Mutual, Inc. ("WMI"), a former multiple savings and loan holding company that

owned, among other subsidiaries, WMI Investment Corp. (together with WMI, the "Debtors")

and Washington Mutual Bank ("WMB"), by and through its undersigned counsel, Richards,

Layton & Finger, P.A. and Weil, Gotshal & Manges LLP, hereby files its memorandum of law in

support of WMILT's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) (the

"Motion") on (a) Count I of the Counterclaims of Defendants Todd H. Baker, Sean Becketti,

Anthony Joseph Bozzuti, Alfred Brooks, Gregory C. Camas, Thomas W. Casey, Deborah D.

Horvath, Rajiv Kapoor, Marc Malone, John P. McMurray, Thomas E. Morgan, Stephen J.

Rotella, David Schneider, Genevieve Smith, Radha Thompson, Ann Tierney and Robert J.

Williams, Jr. (collectively, the "Baker Defendants") against WMILT (the "Baker Defendants'

Counterclaims") [W.D. Wash. D.I. 173],[1] (b) Count I of the Counterclaims of Defendant Craig

E. Tall ("Defendant Tall") against WMILT [W.D. Wash. D.I. 146], (c) Count I of the

Counterclaims of Defendant Susan Allison ("Defendant Allison") against WMILT [W.D. Wash.

D.I. 171], (d) Count I of the Counterclaims of Defendant Jeffrey Jones ("Defendant Jones")

---

[1] For ease of reference, the six dockets relating to this action are referred to as follows: the docket in the above-captioned proceeding is referred to as [D. Del. D.I.]; the docket of the declaratory judgment action that was initially filed by WMILT in the United States District Court for the Western District of Washington (the "Washington District Court"), *WMI Liquidating Trust v. FDIC*, Case No. 2:13-cv-01706-RAJ (W.D. Wash.) is referred to as [W.D. Wash. D.I.]; the docket of the Debtors' chapter 11 cases, *In re Washington Mutual, Inc.*, Case No. 08-12229 (MFW) (Bankr. D. Del.) (the "Bankruptcy Court") is referred to as [Bankr. D.I.]; the docket for the adversary proceeding, *WMI Liquidating Trust v. FDIC*, Adv. Pro. No. 14-50435-MFW (Bank. D. Del.), in the Bankruptcy Court is referred to as [Adv. Pro. D.I.]; the docket of the action WMILT commenced on October 29, 2014 in the United States District Court for the District of Columbia (the "D.C. District Court") pursuant to the Administrative Procedure Act, *WMI Liquidating Trust v. Fed. Deposit Ins. Corp.*, No. 14-cv- 01816-RBW (D.D.C. 2014) (the "First APA Action") is referred to as [D.D.C. First APA D.I.]; and the docket of the action WMILT commenced on May 13, 2015 in the D.C. District Court pursuant to the Administrative Procedure Act, *WMI Liquidating Trust v. Fed. Deposit Ins. Corp.*, No. 15-cv-731-RBW (D.D.C. 2015) (the "Second APA Action") is referred to as [D.D.C. Second APA D.I.].

against WMILT [W.D. Wash. D.I.172], (e) Count I of the Counterclaims of Defendant Robert Batt ("Defendant Batt") against WMILT [W.D. Wash. D.I. 174], (f) Count I of the Counterclaims of Defendant Patricia Schulte ("Defendant Schulte") against WMILT [W.D. Wash. D.I.175], (g) Count I of the Counterclaims of Defendant Scott Shaw ("Defendant Shaw") against WMILT [W.D. Wash. D.I. 176], (h) Count I of the Counterclaims of Defendant Steven Kenneth Stearns ("Defendant Stearns") against WMILT [W.D. Wash. D.I. 177], (i) Count I of the Counterclaims of Defendant Randy Melby ("Defendant Melby") against WMILT [W.D. Wash. D.I. 178], (j) Count I of the Counterclaims of Defendant Michelle McCarthy ("Defendant McCarthy") against WMILT [W.D. Wash. D.I. 179], (k) Count I of the Counterclaims of Defendant Jacob E. Sorenson ("Defendant Sorenson") against WMILT [Adv. Pro. D.I. 36], and (l) Count I of the Counterclaims of Defendant Keith O. Fukui ("Defendant Fukui" and together with the Baker Defendants and Defendants Tall, Allison, Jones, Batt, Schulte, Shaw, Stearns, Melby, McCarthy and Sorenson, the "Counterclaim Defendants")[2] against WMILT [Adv. Pro. D.I. 37].

## NATURE AND STAGE OF THE PROCEEDINGS

At the express directive of the Bankruptcy Court, WMILT commenced this action (the "Declaratory Judgment Action") by filing its initial complaint on September 20, 2013 in the United States District Court for the Western District of Washington (the "Washington District Court") [W.D. Wash. D.I. 1]. On November 5, 2013, WMILT filed its Amended Complaint.

---

[2] Count I of the Baker Defendants' Counterclaims seeks a declaratory judgment that "WMILT is Not a 'Covered Company' Under 12 U.S.C. § 1828(K) [and] The FDIC . . . ha[s] no Jurisdiction Over WMILT Thereunder." [W.D. Wash. D.I. 173]. Count I of each of the Counterclaim Defendants' Counterclaims is in substance identical to Count I of the Baker Defendants' Counterclaims and shall hereinafter be referred to collectively as the "Covered Company Counterclaim." For ease of reference, citations to factual allegations are taken from the Baker Defendants' Counterclaims [W.D. Wash. D.I. 173] and WMILT's Answer to the Baker Defendants' Counterclaims [W.D. Wash. D.I. 198] ("WMILT Answer").

[W.D. Wash. D.I. 23]. Upon the motion of the Baker Defendants [W.D. Wash. D.I. 113],[3] on

July 3, 2014, the Washington District Court transferred this action to the United States

Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").[4] [W.D. Wash. D.I.

277].

### A.     Pending Motions to Dismiss Against the Amended Complaint

On September 5, 2014, the Federal Deposit Insurance Corporation ("FDIC") and the

Board of Governors of the Federal Reserve System ("FRB") each filed a motion to dismiss the

Amended Complaint for, *inter alia*, failure to state a claim and lack of subject matter jurisdiction.

[Adv. Pro. D.I. 39, 42]. Additionally, several defendants also filed and/or joined two (2) separate

motions to dismiss the Amended Complaint for failure to state a claim. [Adv. Pro. D.I. 90,

102].[5] WMILT has opposed each of these pending motions to dismiss, which are all fully

briefed. [Adv. Pro. D.I. 104, 106, 112, 119]. Upon the stipulated motion of the FDIC, on March

---

[3] Thirty-one defendants joined in this motion. [W.D. Wash. D.I. 125, 131, 135, 140, 143, 147, 157, 166, 183, 184, 185, 196, 262, 264, 266, 271, 272, 276].

[4] Originally, the FDIC, the FRB, and Defendants John H. Murphy, Robert Bjorklund, Kimberly A. Canoon, Daryl D. David, Michael Reynoldson, Chandan Sharma, Robert G. Merritt, Robert C. Boxberger, Mary Beth Davis, Michele S. Grau-Iversen, Robert C. Hill, Michael Rapaport, Luis P. Rodriguez, Laura C. Rogers Rodrigues, Daniel Shanks, Richard Strauch, Jose O.N. Tagunicar, David A. Tomlinson, Anthony F. Vuoto, John Webber, Stephen E. Whittaker, Kathy H. Yeu, and Mitchell Stevens filed motions to dismiss the Amended Complaint, *see* [W.D. Wash. D.I. 65, 72, 121, 140, 143, 147, 167, 181], in the Washington District Court but all such motions were terminated pursuant to the Washington District Court's order transferring this action. *See* [W.D. Wash. D.I. 277]

[5] These two motions are: (i) the *Motion of Melba Ann Bartels, Kenneth E. Kido, John Murphy, Steven F. Stein, Mitchell Stevens, and Anthony Vuoto to Dismiss the Amended Complaint for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion to Strike Counts XII XIX of the Amended Complaint Pursuant to Fed. Rule Civ. P. 12(f)*; and (ii) the *Amended Motion by Defendants Robert Bjorklund, Kimberly A. Cannon, Daryl D. David, Michael Reynoldson, and Chandan Sharma to Dismiss Complaint under Fed. R. Civ. Pro. 12(b)(6), or in the Alternative, Motion to Strike Counts XII – XIX under Fed. R. Civ. Pro. 12(f)*. Certain Defendants also filed joinders to these motions to dismiss. [Adv. Pro. D.I. 101, 108].

RLF1 14714207V.1

19, 2015, this Court withdrew the reference to the Bankruptcy Court.  [D. Del. D.I. 9].

Accordingly, all four motions to dismiss the Amended Complaint are pending before this Court.

> **B.     Counterclaims at Issue in This Motion**

On January 21, 2014, the Baker Defendants, as well as Defendants Tall, Allison, Jones,

Batt, Schulte, Shaw, Stearns, Melby, and McCarthy filed their respective Answers to WMILT's

Amended Complaint as well as Counterclaims against WMILT and Cross-Claims against the

FDIC and the FRB.  [W.D. Wash. D.I.  146, 171, 172, 173, 174, 175, 176, 177, 178, 179].  On

September 5, 2014, Defendants Sorenson and Fukui each filed an Answer to WMILT's

Amended Complaint, Counterclaims against WMILT and Cross-Claims against the FDIC and

the FRB.  [Adv. Pro. D.I. 36, 37].

WMILT has filed Answers to each of the Counterclaim Defendants' Counterclaims

[W.D. Wash. D.I. No. 90, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206; Adv. Pro. D.I. 69,

70] and the FDIC also answered each of the Counterclaim Defendants' Cross-Claims.  [W.D.

Wash. D.I. No. 236, 237, 238; Adv. Pro. D.I. 79].[6]  The FRB filed motions to dismiss the Cross-

Claims filed by the Counterclaim Defendants [Adv. Pro. D.I. 44, 76], but has agreed to hold its

motions in abeyance pending the adjudication of this Motion.  *See* [D. Del. D.I. 47].

On January 7, 2015, Defendants Stephen J. Rotella and David Schneider moved for leave

to amend their respective Counterclaims against WMILT and Cross-Claims against the FDIC

and the FRB.  [Adv. Pro. D.I. 162].[7]  The FRB and the FDIC each opposed Defendants Rotella

and Schneider's Motion for Leave to Amend their Counterclaims [Adv. Pro. D.I. 163, 164].

Moreover, the FDIC requested that, should "leave to amend be granted, the parties' time to

---

[6] Defendant McCarthy and the FDIC and the FRB, stipulated to voluntarily dismiss the Cross-Claims brought against the FDIC and FRB.  [W.D. Wash. D.I. 116].

[7] This motion is pending before this Court.  However, the requested amendment does not affect the counterclaims at issue in this Motion.  *See* [Adv. Pro. D.I. 162].

respond to the amendment be extended until decision on the [pending] motion to stay."[8]  [Adv.

Pro. D.I. 164 at 2].  WMILT joined the FDIC's Opposition to the Motion to Amend with respect

to the deadline within which the parties must file responsive pleadings to the amended claims.

[Adv. Pro. D.I. 166 at 2].

> **C.     Related Proceedings Under the Administrative Procedure Act**

By letter, dated August 14, 2013 (the "First Payment Application"), WMILT sought

approval from the FDIC to pay certain claims filed by former employees and officers, as the case

may be, of WMI and WMB, for severance and other benefits arising (or purportedly arising) out

of their employment or affiliation with WMI or WMB (collectively, the "Employee Claims").

*See* [D.D.C. First APA D.I. 1] at ¶¶ 1, 2.  WMILT specifically requested permission from the

FDIC to make payments pursuant to agreements and executed stipulations (the "Settlement

Agreements") that WMILT had reached with thirty (30) individual former employees (the

"Settling Claimants") to settle their respective Employee Claims (the "Settled Claims").  *See id.*

at ¶ 7.  By letter, dated October 15, 2014, the FDIC denied the First Payment Application in its

entirety (the "First FDIC Determination"), thereby denying WMILT the required regulatory

approval to make payments pursuant to the Settlement Agreements (the "Settlement Payments").

*See id.* at ¶ 8.  The FDIC determined that WMILT is a covered company and is subject to the

Golden Parachute Regulations, as defined *infra* at 11, and that any payments made pursuant to

the contracts and plans that gave rise to the Settlement Agreements constituted "golden

parachute payments" prohibited by the Golden Parachute Regulations, absent regulatory

approval.  *See id.*  As a result, any payment WMILT made to the Settling Claimants pursuant to

---

[8] *See infra* note 9.

the Settlement Agreements "would result in a violation of [12 C.F.R. §] 359 and potential civil monetary penalties." *See id.* ¶ 6.

On October 29, 2014, WMILT commenced an action in the United States District Court for the District of Columbia (the "D.C. District Court") pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701, *et seq.* (the "APA"), seeking judicial review of final agency action by the FDIC (the "First APA Action"). [D.D.C. First APA D.I. 1].[9]  In its Complaint in the First APA Action, WMILT sought, *inter alia*, judicial review of the First FDIC Determination and requested a declaration that WMILT is subject to the Golden Parachute Regulations. [D.D.C. First APA D.I. 1].

On June 16, 2015, United States District Judge Walton, the presiding judge in the First APA Action, held that the Golden Parachute Regulations apply to WMILT, the FDIC did not act arbitrarily or capriciously in denying the First Payment Application and that WMILT is precluded from making certain payments to the Settling Claimants. *See WMI Liquidating Trust v. Fed. Deposit Ins. Corp.*, 110 F. Supp. 3d 44, 57-58 (D.D.C. 2015) (holding that WMILT is a "covered company" subject to the Golden Parachute Regulations and that the FDIC did not err in denying the First Payment Application except with respect to one Settling Claimant's bonus agreement).[10]  Additionally, the D.C. District Court held that a limited remand was appropriate so that the FDIC could clarify (i) whether the certifications that WMILT submitted pursuant to 12 C.F.R. § 359.4(a)(4) constituted an "*independent basis* for the wholesale rejection" of the First Payment Application, and (ii) the basis for the FDIC's denial of WMILT's Payment

---

[9] On November 6, 2014, the FDIC moved to stay this Action pending resolution of the First APA Action.  [Adv. Pro. D.I. 115, 116].  This motion is pending before this Court but is now moot because the First APA Action has been fully adjudicated and the case is now closed.

[10] *See* discussion *infra* Argument, Section I.A.

Application with respect to one Settling Claimant's bonus agreement.  *See id.* at 54.  On July 30, 2015, the FDIC issued a decision (the "Remand Decision") clarifying that (i) although not a basis for its denial of the First Payment Application, WMILT's failure to satisfy certain certification requirements under 12 C.F.R. § 359.4(a)(4) provides independent grounds to deny the First Payment Application and (ii) denial of any WMILT "golden parachute" payment to the one Settling Claimant at issue on remand was appropriate.  [Ex. A., D.D.C. First APA D.I. 41-1].  Following the issuance of the Remand Decision, WMILT and the FDIC stipulated and agreed that no further action by the Court was required with respect to the First APA Action.  [D.D.C. First APA D.I. 41].  On August 19, 2015, United States District Judge Walton entered a final order and judgment and closed the case.  [D.D.C. First APA D.I. 42].

In the interim, on March 23, 2015, WMILT submitted a second payment application to the FDIC and the FRB (the "Second Payment Application").  *See* [D.D.C. Second APA D.I. 1] ¶ 11.  Therein, WMILT sought a determination from the FDIC and the FRB as to whether WMILT could make payments above the *de minimis* threshold of the Golden Parachute Regulations.  Specifically, WMILT sought approval to make payments to: (a) the Settling Claimants in an amount greater than five thousand dollars ($5,000.00) but one dollar ($1.00) less than the amount set forth in the respective Settlement Agreement; and (b) the remaining thirty-eight (38) individual claimants (the "Non-Settling Claimants" and together with the Settling Claimants, the "Claimants") in an amount greater than five thousand dollars ($5,000.00) and up to the amounts to which their respective claims in the underlying Employee Claims proceedings are capped in accordance with section 502(b)(7) of title 11 of the United States Code (the

7

"Bankruptcy Code"). *See id.*[11]  By letter, dated May 1, 2015, the FDIC rendered its final agency determination denying the Second Payment Application in its entirety (the "Second FDIC Determination").  *See id.* at ¶ 13.  Therein, the Second FDIC Determination reiterated the FDIC's "previous administrative findings that WMILT, as successor in interest to WMI, is subject to regulation under Section 1828(k) and Part 359 as a 'covered company.'"  *Id.*  Further, the Second FDIC Determination emphasized and "specifically reject[ed] any contention that WMI's bankruptcy filing, wind-down, abandonment of WMB stock, and the creation of a liquidating trust, served to remove WMILT from the purview of Section 1828(k) and the Golden Parachute Regulations."  *Id.*  Accordingly, as a "covered company," WMILT would be barred from making any payments to either the Settling Claimants or the Non-Settling Claimants in any amount.  *See id.* at ¶ 14.  On May 13, 2015, WMILT commenced a second action against the FDIC under the APA in the United States District Court for the District of Columbia (the "Second APA Action").  *See WMI Liquidating Trust v. Fed. Deposit Ins. Corp.*, No. 1:15-cv-00731 (RBW) (D.D.C.).  [D.D.C. Second APA D.I. 1].  WMILT sought, *inter alia*, judicial review of final agency action by the FDIC denying the Second Payment Application.  [D.D.C. Second APA D.I. 1].  On April 15, 2016, United States District Judge Walton upheld the Second FDIC Determination (the "APA II Order") and held that the Golden Parachute Regulations apply to WMILT, the FDIC did not act arbitrarily or capriciously in denying the Second Payment Application and that WMILT is barred from making any payments to either the Settling Claimants or the Non-Settling Claimants in any amount.  *See* [D.D.C. Second APA D.I. 25].

---

[11] Pursuant to section 502(b)(7), an employee's claim for damages "resulting from the termination of an employment contract" will be allowed only up to an amount equal to the sum of the employee's annual compensation as of the petition or termination date (whichever is earlier).  *See* 11 U.S.C. § 502(b)(7).  In April 2014, the Bankruptcy Court held that the Employee Claims at issue here are subject to section 502(b)(7) and thus to the extent such claims are allowed, they will be capped consistent with that provision.

## SUMMARY OF ARGUMENT

1.      As the entity that assumed all of WMI's rights and obligations, and as has been determined twice by the Judge Walton, WMILT is a "covered company" and thus bound by the Golden Parachute Regulations as a matter of law.  Based on the pleadings alone, this Court can rule accordingly. WMI was indisputably a "bank holding company" under 12 U.S.C. § 1813, and thus a "depository institution holding company" under § 1828(k).  The Golden Parachute Regulations expressly contemplate that their intended target, the "covered company," may become insolvent and lose its status as a depository institution holding company after its bank goes into receivership.  *See* § 1828(k)(2)(B)(ii).  Thus, the term "covered company" must include any entity that was formerly a depository institution holding company which has become insolvent or lost control over its bank, or the successor to such a depository institution holding company, such as WMILT.  Indeed, courts have repeatedly rejected the proposition that a bank holding company filing for bankruptcy can escape from the scope of federal banking statutes just because it is no longer a "bank holding company" and thus make payments that would otherwise be prohibited.  Such an interpretation would eviscerate the Federal Deposit Insurance Act's (the "FDIA") restrictions by providing a safe harbor to officers and directors seeking to activate their golden parachutes through acquisition by another institution.

2.      Moreover, a federal district court has already determined that WMILT is a "covered company" and confirmed that the FDIC has jurisdiction over WMILT.  In the APA Actions, United States District Judge Walton explicitly examined the FDIC's decision-making authority and provided reasoned analysis to support his findings that the FDIC appropriately exercised its discretion and did not act in an arbitrary or capricious manner in finding that WMILT is a "covered company" and is barred from making payments on account of the Employee Claims.  *See* [D.D.C. Second APA D.I. 25 at 5] ("The Court cannot find . . . . that the

RLF1 14714207V.1

[FDIC's] rejection of the plaintiff's second payment application was arbitrary, capricious, or an abuse of discretion.").  Accordingly, this Court should grant WMILT's motion for judgment on the pleadings on the Covered Company Counterclaims and issue a declaratory judgment that WMILT is a Covered Company under 12 U.S.C. 1828(k) and that the FDIC has jurisdiction over WMILT.  Indeed, a contrary ruling would place WMILT in the untenable position of having received rulings from District Judge Walton that it is prohibited from paying any of the Settling or Non-Settling Claimants based on the FDIC's determinations, but also a separate ruling from this Court that the FDIC did not have jurisdiction over WMILT, and so the Golden Parachute Regulations do not prohibit WMILT from making such payments.

Accordingly, the Court should deny the Counterclaim Defendants' request for declaratory relief as to the Covered Company Counterclaims and grant WMILT's motion for judgment on the pleadings.

## STATEMENT OF FACTS

### A.    The Debtors' Chapter 11 Filings

On September 25, 2008, the Director of the Office of Thrift Supervision by Order No. 2008-36, appointed the FDIC as Receiver, which immediately took possession of the assets of WMB.  Baker Defendants' Counterclaims ¶ 3; WMILT Answer ¶ 3.  WMB was a wholly-owned subsidiary of WMI.  Baker Defendants' Counterclaims ¶ 3; WMILT Answer ¶ 3.

On September 26, 2008, the Debtors each filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code in the Bankruptcy Court, Case No. 08-12229 (MFW).  *See* Baker Defendants' Counterclaims ¶ 4; WMILT Answer ¶ 4; D. Del. Bnkr. D.I. 1.  Pursuant to an order, dated February 23, 2012 (the "Confirmation Order"), the Bankruptcy Court confirmed the Seventh Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, as modified (the "Seventh Amended Plan" or "Plan").  Baker Defendants'

Counterclaims ¶ 5; WMILT Answer ¶ 5.  Pursuant to the Seventh Amended Plan, the

Confirmation Order, and the Liquidating Trust Agreement adopted in connection therewith,

WMILT assumed all of WMI's rights and obligations, received certain assets and assumed the

exclusive responsibility to reconcile and litigate remaining disputed proofs of claim.  Baker

Defendants' Counterclaims ¶¶ 12, 16; WMILT Answer ¶¶ 12, 16; *see* WMI Liquidating Trust

Agreement, § 1.3 ("In connection with the receipt of the Liquidating Trust Assets, the

Liquidating Trust shall acquire and assume all of WMI's rights and obligations pursuant to

Section 2.4 of the Global Settlement Agreement, and WMI shall have no further liability or

obligations thereunder.").[12]

###### B.      The Golden Parachute Regulations

In 1990, Congress amended the FDIA to include Section 18(k) in order to prevent

windfall payments to those who may be responsible for, or who participated in, risky business

activities that contributed to the troubled condition or failure of financial institutions.  *See*

Regulation of Golden Parachutes and Other Benefits Which May Be Subject to Misuse, Final

Rule, 61 Fed. Reg. 5926-02, 5927 (Feb. 15, 1996).  Under Section 1828(k), Congress granted the

FDIC broad authority to regulate or prohibit certain severance payments defined as "golden

parachute payments," and directed the FDIC to "prescribe, by regulation, the factors to be

considered by the [FDIC]" in determining whether to prohibit or limit such payments by insured

depository institutions and their holding companies.  *See* 12 U.S.C. § 1828(k).  Pursuant to this

directive, the FDIC promulgated 12 C.F.R. § 359 *et seq.* (the "Golden Parachute Regulations").

The Golden Parachute Regulations prohibit, under certain circumstances, depository

institutions, like WMB, and depository institution holding companies, like WMI, from making

---

[12] *See* WMI Liquidating Trust Agreement (Mar. 12, 2012), *available at*
http://sec.gov/Archives/edgar/data/933136/000090951812000099/mm03-1212_8ke101.htm.

certain "golden parachute" payments to former employees absent approval from the FDIC and the entity's primary federal regulator, here, the FRB.[13]  Further, the Golden Parachute Regulations set forth certain procedures through which regulatory approval may be obtained once a payment has been determined to be a golden parachute and requires, among other things, that an application be filed with, and approved by, the FDIC.  *See* 12 C.F.R. §§ 359.2, 359.6.  As set forth *supra* at 5-8, WMILT submitted the First Payment Application and the Second Payment Application requesting such approval.

### C.   WMILT's Efforts To Resolve The Employee Claims

Counterclaim Defendants have pending disputed proofs of claim in the Bankruptcy Court.  *See* Baker Defendants' Counterclaims ¶ 18.  In February 2013, WMILT filed a motion seeking permission from the Bankruptcy Court to amend its prior-filed claims objections to Counterclaim Defendants' proofs of claim so as to assert the Golden Parachute Regulation and the Automatic Termination Regulation (together, the "Federal Regulations") as defenses to the Counterclaim Defendants' proofs of claim (the "Motion to Amend").  *See* Baker Defendants' Counterclaims ¶ 19; WMILT Answer ¶ 19.  The Counterclaim Defendants objected to WMILT's motion.  *See* Baker Defendants' Counterclaims ¶ 20; WMILT Answer ¶ 20.

On August 22, 2013, the Bankruptcy Court denied the Motion to Amend, *see* Baker Defendants' Counterclaims ¶ 20; WMILT Answer ¶ 20, but, recognizing that the underlying issues of the applicability of the Federal Regulations needed to be decided in an appropriate forum, ordered WMILT to file a declaratory judgment action, naming the FDIC, FRB, and the individual Defendants, seeking a determination whether WMILT is precluded by 12 U.S.C. § 1828(k), 12 C.F.R. § 163.39, 12 C.F.R. § 359 or any other similar provision from paying any of

---

[13] Pursuant to 12 U.S.C. § 1841, the FRB exercises regulatory authority over companies that own commercial banks, *i.e.*, bank holding companies like WMI.

the claimants if their claims are allowed by the Bankruptcy Court, whether after trial or approval

of a settlement.  Baker Defendants' Counterclaims ¶ 22; WMILT Answer ¶ 22; *see* Hr'g

Transcript 52:18-24 (Aug. 22, 2013) [Bankr. D. Del. D.I 11408] ("I will direct the trust to file a

declaratory act, a declaratory judgment action against the FDIC and Federal Reserve Board to

decide the statutory issue of whether if a claim is allowed in the bankruptcy court or a settlement

of an objection to a claim is approved by the bankruptcy court, it can be paid as a result or it

cannot be paid as a result of this statute.").

On September 20, 2013, WMILT filed this action, seeking, *inter alia*, a declaratory

judgment that "various golden parachute payments sought by the individual defendants are

prohibited by federal regulations, absent regulatory approval."  [W.D. Wash. D.I. 23] ¶ 1.  As set

forth *supra* at 4-5, the Counterclaim Defendants filed the counterclaims at issue in this Motion,

and WMILT has filed answers thereto.

## LEGAL STANDARD

A Rule 12(c) motion for judgment on the pleadings is proper where the moving party

establishes that no material issue of fact remains to be resolved and that it is entitled to judgment

as a matter of law.  *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988).

A motion for judgment on the pleadings is governed by the same standards that apply to a

motion to dismiss under Rule 12(b)(6).  *Magten Asset Mgmt. Corp. v. Paul Hastings Janofsky &*

*Walker LLP*, No. CIV.A.04-1256, 2007 WL 129003, at *2 (D. Del. Jan. 12, 2007).  Generally, a

court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in

the light most favorable to the nonmoving party," *Jablonski* at 290-91, but, the court "need not

adopt conclusory allegations or statements of law." *Shamrock Holdings, Inc. v. Arenson*, 456 F.

Supp. 2d 599, 604 (D. Del. 2006).  A motion for judgment on the pleadings is timely where the pleadings are "closed."  *See* Rule 12(c).[14]

## ARGUMENT

### I. PURSUANT TO THE GOVERNING STATUTES AND REGULATIONS, WMILT IS A "COVERED COMPANY"

#### A. The Plain Meaning of the Golden Parachute Statute Empowers the FDIC to Regulate Post-Petition Entities Such as WMILT

Counterclaim Defendants assert and, thus, admit in their Counterclaims that WMILT is a post-petition entity that assumed all of WMI's rights and obligations, received certain assets and assumed the exclusive responsibility to reconcile and litigate WMI's remaining disputed proofs of claim.  *See, e.g.*, Baker Defendants' Counterclaims ¶¶ 12, 16.  The operative statutory provision, 12 U.S.C. § 1828(k)(1), grants authority to the FDIC to "prohibit or limit, by regulation or order, any golden parachute payments," 12 U.S.C. § 1828(k)(1), including payments made by post-petition entities such as WMILT.  Indeed, an entity's covered company status does not disappear as a result of the institution or holding company filing for bankruptcy or being acquired.  *See Hill v. Commerce Bancorp*, No. 09–3685 (RBK), 2012 WL 694639, at *5 (D. N.J. Mar. 1 2012), *aff'd sub nom Hill v. TD Bank, NA*, 2014 WL 4746238 (3d Cir. Sept. 24, 2014) ("An interpretation according to which an entity's 'troubled' status is destroyed by its acquisition would eviscerate the FDIA's restrictions by providing a safe harbor to officers and directors seeking to activate their golden parachutes through acquisition by another institution").  Moreover, nothing in section 1828(k) limits the FDIC's authority to prohibit such golden parachute payments solely to those made by "covered companies" (defined as "any depository

---

[14]  Here, WMILT has answered the Counterclaim Defendants' Counterclaims and thus the counterclaims are ripe for resolution with respect to WMILT.  *See* W.D. Wash. D.I. 198, 237.

institution holding company . . . or any other company that controls an insured depository

institution").  12 U.S.C. § 1828(k)(1); § 1828(k)(5)(D).

### B. Congress Intended the FDIC to Promulgate Regulations That Apply to Post-Petition Entities Such as WMILT

Section 1828(k) clearly reflects Congress' intent that the FDIC promulgate Golden

Parachute Regulations that apply to post-petition entities such as WMILT, in its capacity as a

successor in interest to WMI.  *See D.C. v. Gallagher*, 734 A.2d 1087, 1091 (D.C. 1999) ("The

literal words of a statute . . . are not the sole index to legislative intent . . .  but rather are to be

read in the light of the purpose of the statute taken as a whole, and are to be given a sensible

construction and one that would not work an obvious injustice.") (citations omitted).  Section

1828(k) defines golden parachute payments as those made by banks or "covered companies" to

institution-affiliated parties ("IAPs"), 12 U.S.C. § 1828(k)(4)(A), which were "*received on or*

*after the date*" of *the insolvency of a covered company*, § 1828(k)(4)(A)(ii)(I), or the

*appointment of a receiver* for any insured depository institution, § 1828(k)(4)(A)(ii)(II)

(emphasis added).  *See* 12. U.S.C. § 1828(k)(2)(B)(i) and (ii) (noting factors that the FDIC may

consider in prohibiting such payments are "[w]hether there is a reasonable basis to believe that

[IAP] is substantially responsible" for "*the insolvency of* the depository institution or *covered*

*company*" or "the *appointment* of a . . . *receiver*") (emphasis added).

WMI was indisputably a "bank holding company" under 12 U.S.C. § 1813, *see In re*

*Washington Mut., Inc.*, 442 B.R. 314, 322 (Bankr. D. Del. 2011) ("WMI is a bank holding

company"), and thus a "depository institution holding company" under § 1828(k), and, therefore,

a "covered company" before WMI's chapter 11 filing.  After consummation of the Seventh

Amended Plan, WMILT assumed all of WMI's "rights and obligations," including, without

limitation, the obligation to reconcile all remaining proofs of claim.  *See* WMI Liquidating Trust

Agreement, § 1.3 ("In connection with the receipt of the Liquidating Trust Assets, the Liquidating Trust shall acquire and assume all of WMI's rights and obligations pursuant to Section 2.4 of the Global Settlement Agreement, and WMI shall have no further liability or obligations thereunder."). Accordingly, WMILT assumed all the rights and obligations of an "affiliated depository institution holding company" under 12 C.F.R. § 359.2(f)(1), including its obligations not to make prohibited golden parachute payments under 12 C.F.R. § 359.2.

Section 1828(k) expressly contemplates that its intended target, the "covered company," may become insolvent and lose its status as a depository institution holding company after its bank goes into receivership. *See* § 1828(k)(2)(B)(ii). Thus, the term "covered company" must include any entity that was formerly a depository institution holding company which has become insolvent or lost control over its bank, or the successor to such a bank holding company, such as WMILT. Accordingly, as successor to WMI and in furtherance of its responsibility to resolve the Debtors' chapter 11 cases and reconcile disputed claims, WMILT has no greater rights or ability to make golden parachute payments absent regulatory approval than did WMI.

Courts have repeatedly rejected the proposition that a bank holding company filing for bankruptcy can escape from the scope of federal banking statutes just because it is no longer a "bank holding company." *See Hill*, 2012 WL 694639, at *5-7. In *Hill*, the court rejected, as "untenable," the former bank executive's argument that a golden parachute payment was permissible because the bank was no longer "troubled" since it had been acquired by another entity and ceased to function as a bank because "[a]n interpretation according to which an entity's 'troubled' status is destroyed by its acquisition would eviscerate the FDIA's restrictions by providing a safe harbor to officers and directors seeking to activate their golden parachutes through acquisition by another institution." *Id.*; *see also CityFed Fin. Corp. v. Office of Thrift*

16

*Supervision*, 58 F.3d 738, 744 (D.C. Cir. 1995) (collecting cases) (a safe harbor "would allow an institution and its individual officers to ignore regulations, statutes and agreements and commit flagrant violations, and yet retain immunity from cease and desist actions if the violations were sufficiently severe to warrant prompt imposition of receivership") (citation omitted); *In re Netbank, Inc.*, 07-BK-04295-JAF, 2010 WL 5296952, at \*2, 4 (Bankr. M.D. Fla. Mar. 11, 2010) (emphasizing that it was an undisputed fact that "Debtor [was] a depository institution holding company governed by 12 U.S.C. § 1821 and C.F.R. § 359" and "[e]ntities such as the Debtor (a depository institution holding company) are prohibited from making golden parachute payments under applicable non-bankruptcy law") (citing 12 C.F.R. § 359.2).

Accordingly, WMILT, as successor to WMI, is a "covered company" subject to the Golden Parachute Regulations, just as WMI was, over which the FDIC has jurisdiction.

### C.    A Federal District Court has Already Ruled that WMILT is a Covered Company, Confirmed that the FDIC has Jurisdiction Over WMILT, and Affirmed that WMILT is Prohibited From Making Any Payments to Claimants

In the APA Actions, WMILT sought a determination as to whether WMILT is bound by the FDIC's determinations that WMILT is precluded from paying any amounts to either the Settling Claimants or Non-Settling Claimants. *See* [D.D.C. First APA D.I. 1; D.D.C. Second APA D.I. 1]. In APA Action I, United States District Judge Walton explicitly examined the decision-making authority of the FDIC and determined that WMILT is a "covered company" such that the Golden Parachute Regulations apply thereto, and held that the FDIC did not act arbitrarily or capriciously in denying the First Payment Application. *See WMI Liquidating Trust*, 110 F. Supp. 3d at 54-55. In APA Action II, United States District Judge Walton again held that WMILT is a "covered company" such that the Golden Parachute Regulations apply thereto, and reviewed whether the FDIC had properly exercised its decision-making authority in denying the

Second Payment Application.  *See* [D.D.C. Second APA D.I. 25 at 5] ("The Court cannot find . . . . that the [FDIC's] rejection of the plaintiff's second payment application was arbitrary, capricious, or an abuse of discretion.").  Judge Walton then found that WMILT could not make payments, in *any* amounts, on account of the Claimants' (whether Non-Settling Claimants or Settling Claimants) proofs of claim.  *See id.*  Despite Judge Walton's ruling expressly approving the FDIC decisions, the Counterclaim Defendants assert in the Counterclaims that the FDIC has no jurisdiction over WMILT whatsoever, and thus a declaratory judgment should issue that "WMILT is Not a 'Covered Company' Under 12 U.S.C. § 1828(k)" and that "The FDIC . . . ha[s] no Jurisdiction Over WMILT Thereunder."  *See* Baker Defendants Counterclaims.  Given Judge Walton's clear rulings to the contrary, such a declaratory judgment plainly cannot issue.

District Judge Walton carefully examined whether the FDIC properly exercised its authority and placed the reasoning for that ruling in two comprehensive opinions.  At the very least, his ruling should be persuasive in this Court, if not dispositive.  *See Bogia v. Colvin*, No. 13-CV-1793-LPS, 2015 WL 1419118, at *9 (D. Del. Mar. 25, 2015) (noting that cases in other district courts cited by defendant "are persuasive authority"); *Square Ring, Inc. v. Doe-1*, 09-CV-563 (GMS), 2015 WL 307840, at *5 (D. Del. Jan. 23, 2015) (relying on district court decisions from other circuits to support applicability of statutory safe harbor to corporation); *FlatWorld Interactives LLC v. Samsung Elecs. Co.*, No. 12-CV-804-LPS, 2014 WL 7464143, at *1 (D. Del. Dec. 31, 2014) (finding persuasive the United States District Court for the Northern District of California's claim construction ruling in a case involving the same patent at issue).  This Court need look no further than the pleadings themselves and take judicial notice of Judge Walton's decision to make this determination.  Indeed, a contrary ruling from this Court would place WMILT in the untenable position of having received rulings from District Judge Walton that

WMILT is prohibited from paying any of the Settling or Non-Settling Claimants based on the FDIC's determinations, but also a separate ruling from this Court that the FDIC had no jurisdiction over WMILT, and so the Golden Parachute Regulations do not prohibit WMILT from making such payments.  Accordingly, this Court should grant WMILT's Motion for Judgment on the Pleadings on the Covered Company Counterclaim, and issue a declaratory judgment that "WMILT is a Covered Company under 12 U.S.C. § 1828(k) and that the FDIC has Jurisdiction over WMILT."

19

## CONCLUSION

For the foregoing reasons, WMILT respectfully requests that this Court grant WMILT's

Motion for Judgment on the Pleadings on the Covered Company Counterclaims and issue a

declaration that WMILT is a covered company under 12 U.S.C. § 1828(k) and the FDIC has

jurisdiction over WMILT.

Dated: June 28, 2016
      Wilmington, Delaware

                                                    _____

Mark D. Collins (No. 2981)
Marcos A. Ramos (No. 4450)
Amanda R. Steele (No. 5530)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

– and –

Brian S. Rosen, Esq.
John P. Mastando III, Esq.
Cheryl A. James, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for WMI Liquidating Trust*

20